# EXHIBIT B

```
 1   UNITED STATES DISTRICT COURT

 2   EASTERN DISTRICT OF NEW YORK

 3   -------------------------------------------------

 4   TAKIESHA REID,

 5

 6            Plaintiff,

 7    -vs-                        INDEX NO. 20 CV 3926(FB)(PK)

 8   THE CITY OF NEW YORK,
     GREGORY HOWARD,
 9   JOHN AND JANE DOES 1-5,

10
              Defendants.
11
     -------------------------------------------------
12            **EXAMINATION BEFORE TRIAL OF GREGORY HOWARD**

13                    **APPEARING REMOTELY FROM**

14                    **NEW YORK CITY, NEW YORK**

15

16

17               Wednesday, October 26th, 2022

18                  10:00 p.m. - 12:10 p.m.

19                     pursuant to notice

20

21   REPORTED BY:

22   Kelly Hairston, Notary Public

23   APPEARING REMOTELY FROM ERIE COUNTY, NEW YORK


                      **CONFIDENTIAL PORTIONS REDACTED**
```

**R E M O T E   A P P E A R A N C E S**

APPEARING FOR THE PLAINTIFF:

    **VIK PAWAR LAW, PLLC,**
    BY: **VIK PAWAR, ESQ.,**
    20 Vesey Street, Suite 1410,
    New York, New York 10007,
    (212) 571-0805.

APPEARING FOR THE DEFENDANT DETECTIVE GREGORY HOWARD:

    **LAW OFFICES OF PETER TILL,**
    BY: **PETER W. TILL, ESQ.,**
    105 Morris Avenue,
    Springfield Township, New Jersey 07081,
    (973) 258-0064.

APPEARING FOR THE DEFENDANT CITY OF NEW YORK:

    **NEW YORK CITY LAW DEPARTMENT,**
    **FEDERAL LITIGATION DIVISION,**
    **ASSISTANT CORPORATION COUNSEL,**
    BY: **JEFFREY FRANK, ESQ.,**
    100 Church Street,
    New York, New York, 10007,
    (212) 356-3541.

# I N D E X

**WITNESS**　　　　　　**EXAMINATION**　　　　　　　　**PAGE**

Gregory Howard

　　　　　　by Mr. Pawar　　　　　　　　　04

　　　　　　by Mr. Frank　　　　　　　　　96

　　　　　　by Mr. Pawar　　　　　　　　　98

**EXHIBITS**

**NUMBER**　　　　　　**DESCRIPTION**　　　　　　　　**PAGE**

**NO EXHIBITS WERE MARKED**

1  **REPORTED REMOTELY FROM NEW YORK CITY, NEW YORK**
2  THE REPORTER:  Will the attorneys participating in
3  this deposition acknowledge that I will administer the
4  oath remotely, and consent to waive any objections to
5  this manner of reporting?
6  Please indicate your agreement by stating your name,
7  who you represent and your agreement on the record,
8  starting with the noticing attorney.
9  MR. PAWAR:  Vik Pawar for the plaintiff.  Yes, I
10  consent.
11  MR. TILL:  Peter Till for Mr. -- for Detective
12  Howard.  Yes, we consent.
13  MR. FRANK:  Jeffrey Frank for the City of New York.
14  We consent.
15
16  **DETECTIVE GREGORY HOWARD,**
17  having been first duly sworn, was examined and
18  testified as follows:
19
20                    EXAMINATION
21  BY MR. PAWAR:
22  Q. Detective Howard, my name is Vik Pawar.  I represent
23  plaintiff Takiesha Reid.  You and I have never met

1  Q. So it's fair to say that for three years from 2017 to
2     2020 approximately, you were a third grade in the
3     detective bureau; correct?
4  A. Yes.
5  Q. And what was your assignment during that -- those three
6     years?
7  A. From 2017 to 2019, I was in the 120 Detective Squad.
8  Q. And as part of the detective squad, were you involved
9     in any special assignments?
10 A. No special assignments.
11 Q. So you did everything from investigation of crime to
12    domestic violence, like, the gamut?
13 A. Yes.
14 Q. When did you start becoming involved with confidential
15    informants?
16 A. October 2017.
17 Q. So before you -- it's fair to say you got promoted to
18    third grade before October 2017; correct?
19 A. Yes.
20 Q. And that was at the 120th Precinct?
21 A. Yes.
22 Q. And when you were a police officer, what precinct was
23    that, 122?

1   A. The 120th.
2   Q. 120th.  So when you got promoted from -- when you got
3      promoted to a third grade detective, did you undergo
4      any sort of training when it comes to confidential
5      informants?
6   A. No.
7   Q. So you testified that October 17th is when you started
8      first -- you know what I mean by a CI; right?
9   A. Yes.
10  Q. Okay.  So I'm just going to use the word CI, just so --
11     so October 17th is the first time you started dealing
12     with a CI?
13  A. Yes.
14  Q. And your testimony is that you received no training
15     prior to that?
16  A. No, we have a patrol guide.
17  Q. And did you read the patrol guide?
18  A. At that time, no.
19  Q. So what was your first encounter with the CI in October
20     2017?
21  A. With Ms. Reid?
22  Q. Well, was Ms. Reid your first CI?
23  A. First and only.

1  Q. Can you spell that last name, please?
2  A. P-a-r-i-s-i, and Sergeant Fong, F-o-n-g.
3  Q. So these two individuals from IAB told you to
4     deactivate this new lady who was the CI?
5  A. Yes.
6  Q. And it's because of an arrest that they became aware of
7     or you don't know?
8  A. I do not know what the reason is.
9  Q. Do you know if this CI made any complaint against
10    you?
11 A. That I know of, no.
12 Q. What is your relationship with Lieutenant Bannon?
13 A. My relationship with Lieutenant Bannon?
14 Q. Yes.
15 A. He was my supervisor.
16 Q. From what years?
17 A. He was my detective supervisor and my special
18    operations supervisor. So probably about 7 years he
19    was my supervisor.
20 Q. While you were -- he was supervisor when you were a
21    police officer?
22 A. Yes.
23 Q. And when did he stop supervising you?

1  A. I forwarded it to my lieutenant and spoke to him and
2     said that she had a gun in the house and what would you
3     want to do about it?  And they told me to go ahead, run
4     with it and figure out a way to sign her up and get the
5     gun.
6  Q. All right.  So prior to this -- prior to her telling
7     you about this gun, you had no -- any sort of knowledge
8     about her being a truthful informant; correct?
9  A. Correct.
10 Q. So when your lieutenant said -- which lieutenant was
11    it, Brennan?
12 A. Bannon.
13 Q. Bannon, I'm sorry.  And he said to go run with it;
14    right, and to sign her up?
15 A. Yes.
16 Q. So what steps did you take to sign her up?
17 A. Paperwork.
18 Q. What type of paperwork?
19 A. CI registration paperwork.  Paperwork, background check
20    on her, running her history, if she had any open
21    cases.
22 Q. Anything else?
23 A. That's all.

1  activity, what type of responsibilities do you have?
2     MR. TILL:  Objection as to form.  Go ahead and
3  answer the question.
4     THE WITNESS:  I do not know because most
5  confidential informants are doing illegal activity.
6
7  BY MR. PAWAR:
8  Q. So you personally would not do anything about the fact
9     that a CI was engaging in illegal activity?
10 A. To my knowledge, no.
11 Q. Who is the person who supervised your contacts with the
12    CI?
13 A. It would be Lieutenant Bannon.
14 Q. And what type of supervision did he give you when it
15    came to contacting the CI?
16 A. It was just told read the patrol guide and that was
17    it.
18 Q. And did he make sure that the patrol guide was -- that
19    you read the patrol guide?
20 A. I do not know.
21 Q. Well, what would you do after you read the patrol
22    guide, would you sign an affidavit saying I read the
23    patrol guide?

1  A. No.
2  Q. I'm halfway through, I think.  Can we take a --
3     Detective Howard, you want to take a 5, 10 minute
4     break?
5         MR. TILL:  5 minutes will be fine.
6         MR. PAWAR:  So come back in 5 minutes.
7         (Brief pause in proceedings.)
8
9  BY MR. PAWAR:
10 Q. Detective Howard, have you ever been arrested?
11 A. No.
12 Q. Did the department, the NYPD, accuse you of sexual
13    misconduct?
14 A. No.
15 Q. Did they ever discipline you for sexual misconduct?
16 A. No.
17 Q. Did they ever train you after there were allegations
18    made about sexual misconduct?
19 A. No.
20 Q. Did they ever enhance your supervision while somebody
21    was making an allegation about sexual misconduct?
22 A. I was put on probationary dismissal for a year.
23 Q. What year was that?

1  A. 2021.  It was December 2020 to January 2021.

2  Q. And what was that punishment for?

3  A. For the IAB investigation from Ms. Reid.

4  Q. And was she making allegations that you had a sexual

5     relationship with her?

6  A. Yes.

7  Q. And you denied it?

8  A. Yes.

9  Q. And the department didn't believe you, fair to say?

10       MR. TILL:  Say that again, what was that?  The

11    department what?

12

13  BY MR. PAWAR:

14  Q. The department didn't believe you, is that fair to

15    say?

16  A. That the NYPD didn't believe me?

17       MR. TILL:  Objection as to form.  Did the department

18    believe you, what you said.  Objection as to form.  Go

19    ahead and answer.

20       THE WITNESS:  The department didn't believe anyone

21    that I know of.

22

23  BY MR. PAWAR:

1  A. Who did my annual review?

2  Q. Yes, or is that a quarterly review?

3  A. It's an annual review, but it would be Lieutenant
4     Bannon, Sergeant Heaps, Lieutenant Faron.  What was the
5     last year, 2000 what?

6  Q. It's okay.  Don't worry about it.

7     MR. PAWAR:  Other than the questions that we marked
8     for ruling and the information that I've requested
9     during this deposition, I have nothing further from
10    Detective Howard, unless there's some questions that I
11    may have to ask him after Mr. Frank is done.  Thank
12    you.

13    MR. FRANK:  Mr. Till, Detective Howard, do you need
14    a break or do you just want to go forward?  I should be
15    brief.

16    MR. TILL:  Let's go forward, please.

17

18                       EXAMINATION

19  BY MR. FRANK:

20  Q. Okay.  Good morning, Detective Howard.  Good afternoon
21     now, Detective Howard.  I just have a couple of
22     follow-up questions.  Earlier you mentioned that you
23     had phone calls with Ms. Reid; right?

1  A. Yes.
2  Q. Did you ever have text messages, exchange text messages
3     with Ms. Reid?
4  A. Yes.
5  Q. In what phone did you use to exchange those text
6     messages?
7  A. My phone.
8  Q. Your personal phone or your department phone?
9  A. My personal phone.  My department phone was broke.
10 Q. And do you still have the same personal phone?
11 A. Yes, I do.
12 Q. You still have those text messages?
13 A. No.
14 Q. Why not?
15 A. I've had two phones since then.
16 Q. I see.  So you don't have the same phone that you had
17    at the time you texted Ms. Reid?
18 A. No.
19 Q. Okay.  Would those text messages be backed up
20    anywhere?
21 A. Not on my phone.
22 Q. Earlier you also testified you met with Ms. Reid in
23    person on a street corner near her house; is that

1  STATE OF NEW YORK)
                ) ss.
2  COUNTY OF ERIE  )

3
   I, Kelly S. Hairston, Notary Public, in and for the County
4  of Erie, State of New York, do hereby certify:

5
        That the witness whose testimony appears hereinbefore
6  was, before the commencement of their testimony, duly
   sworn to testify the truth, the whole truth and nothing
7  but the truth; that said testimony was taken pursuant to
   notice at the time and place as herein set forth; that
8  said testimony was taken down by me and thereafter
   transcribed into typewriting, and I hereby certify the
9  foregoing testimony is a full, true and correct
   transcription of my shorthand notes so taken.
10

11      I further certify that I am neither counsel for nor
   related to any party to said action, nor in any way
12 interested in the outcome thereof.

13
        IN WITNESS WHEREOF, I have hereunto subscribed my
14 name and affixed my seal this 15th day of November, 2022.

15

16  _____
        Kelly Hairston
17  Kelly S. Hairston
    Notary Public,
18  State of New York, County of Erie
    My commission expires 08/29/2026.
19

20

21

22

23