# EXHIBIT D

```
                                                                  1

 1    UNITED STATES DISTRICT COURT

 2    EASTERN DISTRICT OF NEW YORK

 3    -------------------------------------------------

 4    TAKIESHA REID,

 5

 6            Plaintiff,

 7     -vs-                          INDEX NO. 20 CV 3926(FB)(PK)

 8    THE CITY OF NEW YORK,
      GREGORY HOWARD,
 9    JOHN AND JANE DOES 1-5,

10
              Defendants.
11
      -------------------------------------------------
12         EXAMINATION BEFORE TRIAL OF CHRISTOPHER BANNON

13                   APPEARING REMOTELY FROM

14                   NEW YORK CITY, NEW YORK

15

16

17              Wednesday, October 26th, 2022

18                 1:30 p.m. - 1:59 p.m.

19                    pursuant to notice

20

21    REPORTED BY:

22    Kelly Hairston, Notary Public

23    APPEARING REMOTELY FROM ERIE COUNTY, NEW YORK
```

```
 1
 2           R E M O T E    A P P E A R A N C E S
 3
 4      APPEARING FOR THE PLAINTIFF:
 5                  VIK PAWAR LAW, PLLC,
                    BY:  VIK PAWAR, ESQ.,
 6                  20 Vesey Street, Suite 1410,
                    New York, New York 10007,
 7                  (212) 571-0805.
 8
        APPEARING FOR THE DEFENDANT DETECTIVE GREGORY HOWARD:
 9
                    LAW OFFICES OF PETER TILL,
10                  BY:  PETER W. TILL, ESQ.,
                    105 Morris Avenue,
11                  Springfield Township, New Jersey
                    07081,
12                  (973) 258-0064.
13      APPEARING FOR THE DEFENDANT CITY OF NEW YORK:
14                  NEW YORK CITY LAW DEPARTMENT,
                    FEDERAL LITIGATION DIVISION,
15                  ASSISTANT CORPORATION COUNSEL,
                    BY:  JEFFREY FRANK, ESQ.,
16                  100 Church Street,
                    New York, New York, 10007,
17                  (212) 356-3541.
18
19
20
21
22
23
```

1                           **I N D E X**

2

3    **WITNESS              EXAMINATION                    PAGE**

4    **Christopher Bannon**

5                    **by Mr. Pawar                       04**

6                    **by Mr. Frank                       21**

7                    **by Mr. Pawar                       24**

8

9

10

11                          **EXHIBITS**

12   **NUMBER              DESCRIPTION                    PAGE**

13

14              **NO EXHIBITS WERE MARKED**

**REPORTED REMOTELY FROM NEW YORK CITY, NEW YORK**

THE REPORTER: Do the attorneys continue their consent to the remote swearing of the witness?

MR. TILL: On behalf the Defendant Howard, we do.

MR. FRANK: On behalf of Defendant City of New York, we do.

**CHRISTOPHER BANNON,**

One Edgewater Plaza, Staten Island, New York, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. PAWAR:

Q. How long have you been employed with the NYPD?

A. I am in my 25th year with the NYPD.

Q. Whatever happened to 20 and out?

A. Still going, still going.

Q. My name is Vik Pawar. I'm an attorney for a plaintiff by the name of Takiesha Reid who has brought a lawsuit against the City of New York and Detective Gregory Howard. So I'm going to ask you some questions with respect to the City and with respect to Mr. Howard. To

1        that again.
2
3    BY MR. PAWAR:
4    Q. Sure.  So you said to your knowledge Detective Howard
5        was not brought up on any -- or there were no
6        allegations against him.  There was no internal affairs
7        investigation against him and there were no
8        substantiated allegations against him; correct?
9    A. Yes, to my knowledge.  Those are all unknowns.
10   Q. Okay.  So if something is unknown, you would not
11       necessarily tell a subordinate that you need to go get
12       retrained or I'm going to have to discipline you or I'm
13       going to have to add an added layer of supervision; is
14       that fair to say?
15          MR. FRANK:  Objection, you can answer.
16          THE WITNESS:  Yes, that's fair to say.  If I have no
17       knowledge of it, then obviously there would be no
18       repercussions or any additional training to anything.
19
20   BY MR. PAWAR:
21   Q. Would there be some -- I suppose there would be an
22       intermediary as you testified that it may get to you if
23       there was an allegation, but sometimes it may not.  So

1    is it fair to say if there was an allegation and it
2    never got to you, that somewhere in the middle is when
3    it, got for lack of a better term, shit-canned?
4        MR. FRANK:  Objection to form.  You can answer if
5    you understand the question.
6        THE WITNESS:  Basically it depends upon, like,
7    whatever the allegation might be, you know.  And then
8    obviously certain allegations, whatever they may be, go
9    to different agencies within the NYPD, whether it be
10   CCRB, IAB.  You know, certain things wouldn't reach,
11   depending on what it is, wouldn't reach my level.
12
13   BY MR. PAWAR:
14   Q. So to reach your level then, you have no reason to
15      think that Howard -- I'm sorry, Detective Howard needed
16      extra supervision; correct?
17   A. Correct.
18   Q. And in the same vein, you would have no reason to
19      believe that Detective Howard needed to be disciplined
20      or retrained because you personally did not know
21      anything about it; correct?
22   A. Correct.
23       MR. PAWAR:  Can we go off the record for a second.

1       me ask you this.
2
3    BY MR. PAWAR:
4    Q. Is it fair to say that you supervised Detective Howard
5       for approximately 3 to 4 years?
6    A. Yes.
7    Q. Okay.  And what type of supervision did you conduct
8       for -- or how did you supervise Detective Howard?
9    A. What do you mean how -- what do you mean how?  Like --
10   Q. Well, you know that Detective Howard was in charge of,
11      at some point or the other, confidential informants;
12      right?
13   A. He wasn't in charge -- he wasn't in charge of --
14   Q. But he was engaging -- I'm sorry, he was engaging with
15      CIs; correct?
16         MR. FRANK:  Objection, you can answer.
17         THE WITNESS:  Yes.
18
19   BY MR. PAWAR:
20   Q. And how did your job as a supervisor, how did you do
21      your job as a supervisor supervising what Detective
22      Howard was -- how Detective Howard was conducting
23      himself?

1       MR. FRANK:  Just A few follow-up questions and I
2    think we're done unless, Vik, you have anything else
3    after that.
4       MR. TILL:  I have one housekeeping matter.
5       MR. FRANK:  Sure, go for it.
6       MR. TILL:  After you're done.
7       MR. FRANK:  Okay.
8
9                        EXAMINATION
10   BY MR. FRANK:
11   Q. Lieutenant Bannon, you said earlier you didn't have any
12      independent knowledge of allegations against Detective
13      Howard.  Did you eventually learn that there were
14      disciplinary allegations against him?
15   A. No.
16   Q. Okay.  In preparing for today's deposition, did you
17      learn about anything, any allegations brought by the
18      plaintiff Takiesha Reid against him?
19   A. What do you mean --
20   Q. In preparing for today's deposition, did you learn, did
21      you come to learn about the allegations that plaintiff
22      Takiesha Reid is making against Detective Howard in
23      this case?

1  A. Yes.
2  Q. And how?
3  A. My consultation with you.
4  Q. Okay.  And before learning about this case and your
5     consultation with me, did you have any knowledge of
6     those allegations?
7  A. No.
8  Q. Did you have any knowledge of similar allegations
9     against Detective Howard?
10 A. No.
11 Q. In your time supervising Detective Howard, did you have
12    any reason to suspect that he was mishandling
13    confidential informants?
14 A. No.
15 Q. Are detectives in the precinct for their entire tour or
16    do they sometimes leave the precinct as part of their
17    jobs as detectives?
18 A. Obviously yes, as part of their job as detectives,
19    depending on cases they -- yes, they frequently go into
20    the field to, you know, conduct interviews, video
21    canvasses, things of that nature.
22 Q. And do you track their whereabouts every time the
23    detective goes into the field?

```
1    STATE OF NEW YORK)
                ) ss.
2    COUNTY OF ERIE  )

3
     I, Kelly S. Hairston, Notary Public, in and for the County
4    of Erie, State of New York, do hereby certify:

5
        That the witness whose testimony appears hereinbefore
6    was, before the commencement of their testimony, duly
     sworn to testify the truth, the whole truth and nothing
7    but the truth; that said testimony was taken pursuant to
     notice at the time and place as herein set forth; that
8    said testimony was taken down by me and thereafter
     transcribed into typewriting, and I hereby certify the
9    foregoing testimony is a full, true and correct
     transcription of my shorthand notes so taken.
10

11      I further certify that I am neither counsel for nor
     related to any party to said action, nor in any way
12   interested in the outcome thereof.

13
        IN WITNESS WHEREOF, I have hereunto subscribed my
14   name and affixed my seal this 15th day of November, 2022.

15

16   /s/ Kelly Hairston
     _____
17   Kelly S. Hairston
     Notary Public,
18   State of New York, County of Erie
     My commission expires 08/29/2026.
19

20

21

22

23
```