UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
:
TAKISHA REID,                                                        :
:
:
:
        Plaintiff,                                                   :
:
    -against-                                                        :     **DECISION & ORDER**
:     1:20-CV-3926 (PK)
THE CITY OF NEW YORK, NYPD OFFICER                                   :
GREGORY HOWARD, and JOHN AND JANE                                    :
DOES 1-5,                                                            :
:
:
:
        Defendants.                                                  :
:
-------------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Takisha Reid ("Plaintiff") brought this action against the City of New York (the "City"), New York City Police Department ("NYPD") Officer Gregory Howard ("Howard"), and John and Jane Does 1-5 (the "John Doe Defendants") (collectively, "Defendants"), based on allegations that Howard sexually assaulted her while she was serving under Howard's supervision as a confidential informant for the NYPD.[2]  Plaintiff brings claims against Howard pursuant to 42 U.S.C. § 1983 for violating her Fourth and Fourteenth Amendment unlawful seizure and substantive due process rights (First Cause of Action), and under state common law for committing assault and battery (Fifth Cause of Action) and intentionally and negligently inflicting distress (Seventh Cause of Action); she also asserts

---

[2] Plaintiff purported to name the NYPD as a defendant, but because the NYPD is a non-suable entity, *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("the NYPD is a non-suable agency of the City")), the Clerk of Court is respectfully directed to amend the caption to remove the NYPD, as set forth above.

*respondeat superior* liability (Eleventh Cause of Action) against the City for Howard's state law torts.[3] (*See* "Compl.," Dkt. 1.)

Both Howard and the City filed Motions for Summary Judgment. ("City's Motion," Dkt. 75; "Howard's Motion," Dkt. 81.) The parties have consented to magistrate judge jurisdiction. (*See* Dkt. 58.) For the reasons stated herein, Howard's Motion is denied and the City's Motion is granted.

## FACTUAL BACKGROUND

In considering a motion for summary judgment, the Court must resolve all ambiguities and credit all factual inferences that could rationally be drawn in favor of the party opposing summary judgment. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). The following facts are drawn from the statements of undisputed facts submitted by the parties pursuant to Local Civil Rule 56.1 (Plaintiff's Statement of Undisputed Facts ("Plaintiff SOUF"), Dkt. 83; Howard's Statement of Undisputed Facts ("Howard SOUF"), Dkt. 81-8; City's Statement of Undisputed Facts ("City SOUF"), Dkt. 78) and from materials incorporated by reference into these statements, including the transcripts of Plaintiff's deposition testimony ("Reid Tr.," Dkt. 81-6) and Howard's deposition testimony ("Howard Tr.," Dkt. 81-7).

Plaintiff first met Howard in October 2017, when she went to the precinct in Staten Island where he worked as an NYPD officer to make a complaint against a man who assaulted her son. (Howard SOUF ¶ 15; Reid Tr. at 26:11-27:20.) After Plaintiff told him that she was aware of a gun in her residence, Howard registered her as a confidential informant for the NYPD. (City SOUF ¶ 1; Howard SOUF ¶ 16; Plaintiff SOUF ¶ 3.) In that capacity, Plaintiff made two reports of guns,

---

[3] Plaintiff brought seven additional causes of action, which she has since voluntarily dismissed: retaliation; supervisory liability; denial of equal protection or gender-based discrimination; harassment; New York State and New York City human rights laws violations; negligent screening, training, hiring, and retention; and negligence. (*See* Dkt. 84 at 1.)

receiving $1,500.00 each time from "Crime Stoppers," a unit of the NYPD.  (Howard SOUF ¶ 24; Plaintiff SOUF ¶ 13.)

It is undisputed that while Plaintiff was serving as an informant, Howard met with her in person multiple times.  (City SOUF ¶ 4; Plaintiff SOUF ¶ 5.)

Plaintiff alleges that during several of these meetings, Howard coerced her into having sex with him in his car.  (*See, e.g.*, Reid Tr. at 54:3-25.)  Plaintiff testified that during the first encounter in April 2018, Howard grabbed her and kissed her when she wasn't expecting it and that she "didn't fight him off because [she] froze and [] was scared, and it all happened so fast"; she also noted that Howard was "trying to get [her] drunk" beforehand, that he "pushed himself" on her, and that she "couldn't move."  (*Id.* at 41:1-7, 52:18-23.)  She testified that during the second encounter, which occurred on May 25, 2018 at 5:00 a.m., Howard picked her up and drove her to her house without "any boxer shorts on."  (*Id.* at 46:8-10.)  It was clear that "[h]e had been drinking all night," and when they parked outside her house, he "put [her] head down" to perform oral sex on him in his car.  (*Id.* at 46:10-14.)  Plaintiff also mentions a third encounter without providing further details.  (*Id.* at 45:23-25.)

Plaintiff testified that after these incidents, Howard threatened to expose her if she told anyone about them, asking her how she would like it if he told people she had informed on them.  (*Id.* at 51:10-52:1, 55:25, 67:12-21.)  Plaintiff also testified that Howard told her that the NYPD "had his back."  (*Id.* at 67:12-21.)

Howard denies making these threats.  At his deposition, he initially testified that he had never had sexual relations with Plaintiff (Howard SOUF ¶ 36; Howard Tr. at 43:14-17), but he subsequently invoked his Fifth Amendment privilege and refused to answer further questions regarding any meetings with Plaintiff in person and whether he had sexual encounters with her.  (Plaintiff SOUF ¶ 6; Howard Tr. at 43:22-47:5, 56:7-59:19.)

Plaintiff filed a complaint against Howard with the Civilian Complaint Review Board, which was referred to the NYPD's Internal Affairs Bureau ("IAB") on June 9, 2018. (City SOUF ¶¶ 7-8; *see also* IAB Records at 8 (ECF pagination), Dkt. 76-1.) Plaintiff was deactivated as a confidential informant on August 29, 2018. (City SOUF ¶ 12; Howard SOUF ¶ 29.)

A report of the IAB's interview with Plaintiff contains a summary of her statement, including that she stated she had sex with Howard on multiple occasions and that she "explained that the sex was consensual, but she felt vulnerable due to Det. Howard's position and authority as a police officer." (*Id.*; Howard SOUF ¶¶ 41, 43; IAB Records at 8 (ECF pagination).) When questioned at her deposition about this characterization of the sex as "consensual," Plaintiff testified, "I said it was consensual because I didn't fight him off." (Reid Tr. at 55:14-15.) Nevertheless, she felt coerced to have sex with Howard due to his threats as well as his position of authority and his ability to betray her status as a confidential informant. (*Id.* at 51:10-52:1, 52:18-23, 55:14-25, 67:12-21.) She testified, "Just because he didn't physically hold me down and beat me up[] doesn't mean he didn't rape me. . . . He threatened to out me to people. What was I supposed to do[?] . . . I was scared because he knew. I was his informant." (*Id.* at 55:16-56:2.) She also testified, "Just because I didn't fight him off, I didn't kick him in the neck or scratch him, doesn't mean he didn't rape me because he did when he didn't take no for an answer." (*Id.* at 56:21-24.)

Howard admitted meeting Plaintiff near the two locations where she stated they had sex, but told the IAB that they met to discuss Plaintiff's personal matters on one of these occasions and to discuss NYPD business on the other. (IAB Records at 8-9 (ECF pagination).) Howard also admitted that he communicated with Plaintiff after she was deactivated as an informant. (*Id.*)

The IAB found Howard guilty of failing to provide written reports regarding his interactions with a confidential informant, meeting with a confidential informant without his supervisor present, and maintaining a personal relationship with a confidential informant after the informant had been

4

deactivated. (City SOUF ¶ 15; *see also* IAB Records at 2, 9, 13-15 (ECF pagination).) It recommended that he be dismissed from the NYPD, with his dismissal to be held in abeyance for one year, and that he be compelled to forfeit forty-five of his vacation days. (City SOUF ¶ 16; Plaintiff SOUF ¶ 7; *see also* IAB Records at 2, 17-18 (ECF pagination).)

Plaintiff began treating with a clinician at Jewish Family Service of Central New Jersey on July 22, 2019, shortly before the IAB issued its decision against Howard. In notes of a session with Plaintiff, the clinician described Howard as Plaintiff's "boyfriend" or "ex-boyfriend." (Howard SOUF ¶ 23; Plaintiff's Jewish Family Service clinical treatment records ("Treatment Records") at 4-5, Dkt. 81-3 (ECF pagination).) When questioned about this characterization of her relationship with Howard, Plaintiff testified, "I never said he was my boyfriend. I said we were in like a relationship, but he was never like my boyfriend." (Reid Tr. at 32:4-6.) She further explained that they were forming a relationship because "[h]e asked me to be his confidential informant." (*Id.* at 76:2-8.)

Plaintiff gave an interview to the New York Daily News around the time she filed the Complaint, in which she described the incidents with Howard and revealed that she was a confidential informant. (City SOUF ¶ 18; Howard SOUF ¶ 62.) Plaintiff testified that she reluctantly agreed to the interview and to have her photo published because her lawyer asked her to do so. (Reid Tr. at 59:4-60:4.) Since the events at issue, Plaintiff has been diagnosed with memory loss, depression, PTSD, and trauma. (Howard SOUF ¶ 8.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Rule 56(a) states:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

5

Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment' and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy*, 482 F.3d at 202 (quoting *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (citation omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original). A "dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

"It is the movant's burden to show that no genuine factual dispute exists . . . ." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003). Once the movant satisfies its burden, the party opposing summary judgment "must point to specific evidence in the record" demonstrating a genuine issue for trial and "cannot rest on allegations in the pleadings." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (abrogated on other grounds) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## DISCUSSION

### I. Howard's Arguments for Summary Judgment

#### A. *Whether Plaintiff's Claims Are So Unsubstantiated and Inconsistent They Cannot Be Believed*

Howard argues that Plaintiff's testimony is unsubstantiated by direct evidence and inconsistent to the point that no reasonable juror could credit her allegations. (Howard Mem. at 3-8.)

A Court may grant summary judgment where a plaintiff's testimony is "'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." *Jeffreys v. City of New York*, 426

F.3d 549, 555 (2d Cir. 2005). "At the summary judgment stage, a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Id.* at 554 (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)). "Where [a p]laintiff's entire claim rests on his own testimony, despite ample opportunity to supplement with additional factual information, and this testimony is contradicted by factual evidence, then [the p]laintiff has failed to meet his burden to come forth with significant probative evidence [to demonstrate] that a factual dispute does in fact exist." *Sagy v. City of New York*, No. 18-CV-1975 (HG), 2022 WL 6777602, at *7 (E.D.N.Y. Oct. 11, 2022) (third alteration in original; internal quotation marks omitted) (quoting *Phelps v. Szubinski*, 577 F. Supp. 2d 650, 662 (E.D.N.Y. 2008)). However, even "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete . . . the moving party still must meet the difficult burden of demonstrating that there is *no* evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Jeffreys*, 426 F.3d at 554 (emphasis added).

Howard points to purported inconsistencies between Plaintiff's allegations and written records, which describe her sexual encounters with Howard as "consensual" and Howard as her "boyfriend," to cast her testimony as so incredible that summary judgment is warranted. (Howard Mem. at 3.) The documentary evidence which Howards cites as contradicting Plaintiff's testimony, however, consists of other people's interpretations of statements Plaintiff made to them, not evidence based on objective observations, such as medical records or physical evidence. *See Jeffreys*, 426 F.3d at 553. Moreover, Plaintiff explained under oath that she said the sex was "consensual" only in the sense that she did not physically fight Howard off, and that she was "forming a relationship" with Howard as a confidential informant rather than any romantic relationship. These explanations are not so outrageous that no reasonable person could believe them.

Howard's other arguments are similarly meritless. He contends that Plaintiff's willingness to reveal herself as a confidential informant in a newspaper article contradicts her stated fear that she would be outed as a confidential informant by Howard (Howard Mem. at 6), but her granting the interview at the urging of her lawyer does not negate any fear she previously felt. Howard further contends that there is no "proof" that Howard betrayed Plaintiff's status as a confidential informant to others (*id.* at 5), but Plaintiff only alleges that Howard *threatened* to betray Plaintiff as a means of intimidating her, not that he ever carried out the threat. Finally, while Howard references Plaintiff's past as a sex worker and her prior criminal history (*id.* at 3, 6), he fails to show the relevance of this information to Plaintiff's allegations.

Because Howard has not shown that Plaintiff's claims and testimony are so replete with inconsistencies and improbabilities that no reasonable juror would credit them, a genuine factual dispute exists as to Plaintiff's claims, and summary judgment is denied on this basis.

### B. *Whether Howard Is Entitled to Qualified Immunity*

Howard argues that he is entitled to qualified immunity from liability for Plaintiff's § 1983 claims because Plaintiff cannot show that Howard violated any of Plaintiff's civil rights. (*Id.* at 11-13.)

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is an affirmative defense on which the defendant has the burden of proof." *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018).

"[T]he right to bodily integrity is a clearly established right protected by the Due Process Clause." *Masciotta v. Clarkstown Cent. Sch. Dist.*, 136 F. Supp. 3d 527, 542 (S.D.N.Y. 2015); *see also Votta ex rel. R.V. & J.V. v. Castellani*, 600 F. App'x 16, 18 (2d Cir. 2015) (referencing a "clearly established substantive due process right to bodily integrity"). This right may be violated by unwanted sexual

8

"touching or other egregious sexual contact." *Izzo v. City of New York*, 15-CV-07685 (RMB), 2016 WL 4097845, at *5 (S.D.N.Y. July 12, 2016).

As alleged by Plaintiff, Howard sexually assaulted her despite her having made clear that she did not want to have sex with him. "[N]o reasonable person could have believed" that such egregious sexual contact "would not violate clearly established rights." *Baker v. Gerould*, 598 F. Supp. 2d 357, 366 (W.D.N.Y. 2009).

Accordingly, Plaintiff has sufficiently shown that Howard violated her clearly established constitutional right, and Howard is not entitled to qualified immunity from suit under § 1983.

### C. *Whether Plaintiff Has Sufficiently Alleged Evil Motive or Intent*

Howard argues that Plaintiff cannot show that he acted with evil motive or intent, so her claims for punitive damages must be dismissed. (*Id.* at 18.)

For a plaintiff to recover punitive damages under 42 U.S.C. § 1983, the plaintiff must show that the defendant's conduct is "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Plaintiff's testimony that Howard coerced her into having sex with him by abusing his position of authority over her as a confidential informant on multiple occasions is sufficient for a jury to find that Howard acted with both evil intent and "reckless or callous indifference" to Plaintiff's federally protected rights. *See, e.g.*, *Mathie v. Fries*, 121 F.3d 808, 810, 815 (2d Cir. 1997) (upholding punitive damages award under § 1983 in a sexual assault case against a prison official, including for acts where physical coercion was not employed).

### D. *Additional Arguments*

Howard raises three additional arguments, which all challenge allegations Plaintiff does not make and are, thus, meritless.

Howard argues that merely negligent conduct is not enough to state a claim under § 1983. (Howard Mem. at 9-10.) Plaintiff has alleged, however, that Howard *deliberately* assaulted her, not merely negligently.

Howard argues that Plaintiff cannot prevail under 42 U.S.C. § 1985(3) because Plaintiff fails to show that Howard was part of a "conspiracy." (Howard Mem. at 13-14.) Plaintiff brings no § 1985 claim of conspiracy.

Finally, Howard argues that intemperate, insulting, profane, or threatening remarks do not reach the level of constitutional violations and are, therefore, not actionable. (Howard Mem. at 16-17.) Plaintiff, however, does not base any of her claims on remarks made by Howard. Rather, she references Howard's threat to expose her as a confidential informant only to show that she did not freely consent to sex with Howard. She does not assert that the threat itself violated her rights.

Accordingly, Howard fails to meet his burden for summary judgment.

## II.   The City's Arguments for Summary Judgment

Plaintiff seeks to hold the City liable for Howard's state law torts under the doctrine of *respondeat superior*. *See Palmer v. City of New York*, 564 F. Supp. 3d 221, 252 (E.D.N.Y. 2021).

"To state [a] claim for respondeat superior, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014). "[B]ecause the determination of whether a particular act was within the scope of [an employee's] employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." *Haybeck v. Prodigy Servs. Co.*, 944 F. Supp. 326, 329 (S.D.N.Y. 1996) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (Ct. of App. of N.Y., 1979)). "However, where a court takes as true all the facts alleged by plaintiff and concludes that the conduct

complained of cannot be considered as a matter of law within the scope of employment, then the court must dismiss the complaint for failure to state a claim." *Id.*

The City argues that even if all facts alleged by Plaintiff are accepted as true, the City would not be liable to Plaintiff as a matter of law because Howard acted outside of the scope of his employment in sexually assaulting Plaintiff. (City Mem. at 1.) *See, e.g.*, *Heindel v. Bowery Sav. Bank*, 525 N.Y.S.2d 428 (3d Dep't 1988) ("there is no respondeat superior liability for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business").

New York courts have consistently held that sexual assault and sexual misconduct do not further employers' business and are not within the scope of employment. *See, e.g.*, *Girden v. Sandals Intern.*, 262 F.3d 195, 205-06 (2d Cir. 2001) ("In many New York cases, courts have held as a matter of law that an employer was not responsible for a sexual assault committed by an employee because the attack was outside the scope of the employee's duties"); *Alsaud*, 12 F. Supp. 3d at 677 (collecting cases and noting that "[n]o decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault"); *Doe v. New York City Dep't of Educ.*, No. 21-CV-4332, 2023 WL 2574741, at *5 (E.D.N.Y. Mar. 20, 2023) ("it is well-settled in the Second Circuit that employers are not liable to plaintiffs for sexual assaults under a theory of respondeat superior since sexual misconduct is necessarily outside the scope of employment"); *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (collecting cases while noting that "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context").

Plaintiff states in conclusory fashion that "the facts are hotly contested" (Plaintiff's Response at 5, Dkt. 84), but does not address the City's contention that, even if *all* the facts asserted by Plaintiff are accepted as true, as a matter of law, Howard acted outside of the scope of his employment in

11

assaulting Plaintiff. Plaintiff notes that Howard had Plaintiff register as a confidential informant, that Howard had her complete paperwork in order to become a confidential informant, that Howard met Plaintiff at NYPD precincts while she was working as a confidential informant, and that the NYPD's "Crime Stoppers" program paid Plaintiff for her work as a confidential informant. (*Id.*) Although these actions were undertaken within the context of Howard's employment with the NYPD and furthered the City's interests, they do not bring Howard's sexual assault of Plaintiff within the scope of his employment.

Accordingly, summary judgment is granted as to Plaintiff's *respondeat superior* claim against the City for Howard's alleged sexual assault of Plaintiff.

## CONCLUSION

For the foregoing reasons, Howard's Motion for Summary Judgment is denied, and the City's Motion for Summary Judgment is granted.

        **SO ORDERED:**

        *Peggy Kuo*
        PEGGY KUO
        United States Magistrate Judge

Dated: Brooklyn, New York
    December 27, 2024