```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
TAKISHA REID,                                                       :
                                                                    :
                                Plaintiff,                          :
                                                                    :         MEMORANDUM &
             -against-                                              :         ORDER
                                                                    :
THE CITY OF NEW YORK and NYPD OFFICER                               :         20-CV-3926 (PK)
GREGORY HOWARD,                                                     :
                                                                    :
                                Defendants.                         :
                                                                    :
------------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

## BACKGROUND

Plaintiff brought this action against the City of New York (the "City") and New York City Police Department ("NYPD") Officer Gregory Howard, based on allegations that Mr. Howard sexually assaulted her while she was serving under his supervision as a confidential informant for the NYPD. (Compl., Dkt. 1.)

The Court has denied Mr. Howard's motion for summary judgment (Dkt. 81). *Reid v. City of New York*, No. 20-CV-3926 (PK), 2024 WL 5239204, at *7 (E.D.N.Y. Dec. 27, 2024).

As against the City, the Complaint asserted causes of action for negligent screening, training, hiring, and retention (Ninth Cause of Action or "Negligent Supervision Claim"), negligence (Tenth Cause of Action), and *respondeat superior* liability for Mr. Howard's state law torts (Eleventh Cause of Action). (Compl. ¶¶ 67-77.)

The City moved for summary judgment as to all claims asserted against it. (City's Motion for Summary Judgment ("City's MSJ"), Dkt. 75.) Plaintiff, through her counsel Vik Pawar, Esq. and Devon Radlin, Esq., opposed the City's summary judgment motion, but in doing so stated that Plaintiff "abandons" all causes of action against the City except for the *respondeat superior* claim and,

thus, did not make any argument defending these claims against the City's summary judgment motion.[1]  (Plaintiff's Memorandum in Opposition to the City's MSJ ("Plaintiff's Opposition to MSJ") at 1, Dkt. 84.)

The Court construed this statement as Plaintiff's voluntary dismissal of her Negligent Supervision Claim and negligence claim and considered only Plaintiff's *respondeat superior* claim against the City.  *Reid*, 2024 WL 5239204, at *1 n.2.  On this basis, the Court granted the City's summary judgment motion and dismissed all claims against it.  *Id.* at *7.  (*See also* Feb. 7, 2025 Partial Judgment ("Partial Judgment"), Dkt. 100.)

### A.  *Post-Summary Judgment Facts*

On January 23, 2025, Mr. Pawar and Ms. Radlin moved to withdraw as counsel for Plaintiff. ("Motion to Withdraw," Dkt. 90.)  On January 30, 2025, Plaintiff filed a letter stating that she no longer wished Mr. Pawar and Ms. Radlin to represent her.  (Dkt. 95.)  The Court granted the Motion to Withdraw.  (Feb. 6, 2025 Minute Entry.)

On February 28, 2025, Matthew Christiana, Esq. filed a notice of appearance as new counsel for Plaintiff.  (Dkt. 101.)

On April 29, 2025, Plaintiff moved to vacate the Partial Judgment pursuant to Rule 60(b) insofar as the Negligent Supervision Claim was dismissed against the City.  (Plaintiff's Motion to Vacate Order and Judgment ("Motion"), Dkt. 112; *see also* Plaintiff's Memorandum of Law ("Pl. Mem."), Dkt. 112-1; City's Memorandum of Law in Opposition ("City Opp."), Dkt. 120; Plaintiff's Reply Memorandum of Law ("Pl. Reply"), Dkt. 122.)  In support of the Motion, Plaintiff submitted a declaration stating that Mr. Pawar and Ms. Radlin "unilaterally and voluntarily dismissed" the

---

[1] Plaintiff also abandoned the following causes of action against Mr. Howard: retaliation (Second Cause of Action); supervisory liability (Third Cause of Action); denial of equal protection or gender-based discrimination (Fourth Cause of Action); harassment (Sixth Cause of Action); and New York State and New York City human rights laws violations (Eighth Cause of Action).  (*See* Plaintiff's Opposition at 1.)

Negligent Supervision Claim without her consent, and she would have never consented to the dismissal had she been consulted. (Plaintiff Decl. ¶¶ 5-6, Dkt. 112-3.) Mr. Christiana also submitted a declaration stating that, when he contacted Plaintiff on March 28, 2025, Plaintiff stated that she "was unaware that the [Negligent Supervision Claim] had been dismissed, and that she had never consented to the dismissal." (Christiana Decl. ¶ 12, Dkt. 112-2.)

Shortly after Plaintiff filed the Motion, the City filed a letter requesting, *inter alia*, "(1) a ruling that Plaintiff waived attorney-client privilege by placing at issue her former counsels' authority to act on her behalf," and "(2) permission to communicate with and obtain evidence from Plaintiff's former counsel as to the authority issue raised in the Motion . . . ." (Dkt. 114 at 2.) The Court denied the City's requests and instead directed Mr. Pawar to file "an affidavit detailing any communication he had with Plaintiff related to the voluntary dismissal of the [Negligent Supervision Claim]" and "any documents related to such communication." (May 19, 2025 Order.)

Mr. Pawar filed a declaration stating that he and Plaintiff "had an informed discussion and she fully understood the strategy [they] were employing in opposing certain portions of the summary judgment motion and not opposing other portions." (Pawar Decl. ¶ 4, Dkt. 116.) Mr. Pawar stated that he did not have any written communication with Plaintiff regarding the dismissal of the Negligent Supervision Claim. (Pawar Decl. ¶ 2.)

The Court then held an evidentiary hearing at which Mr. Pawar and Plaintiff testified. (July 14, 2025 Minute Entry; *see also* Evidentiary Hearing Transcript ("Tr."), Dkt. 125.)

### B.   Mr. Pawar's Testimony

In his testimony, Mr. Pawar described the "informed discussion" he had with Plaintiff by telephone:

> Ms. Reid is not a lawyer, and she's not a lawyer who does [42. U.S.C. §] 1983 work, and she was told about the various causes of action that the City had moved on, and she asked me, "What do you think would be the best strategy?"

3

> And I had told her that it would be a best strategy to just move forward with the responde[a]t superior claim and not the other claims because they were weak. They would not survive, so we should just put our best foot forward, and she said, "You're my lawyer. I agree with you, and do as you think [i]s best for the case."

(Tr. at 30:13-31:15.) Mr. Pawar does not remember what information he conveyed to Plaintiff regarding the pros and cons of her claims against the City, but "she was given her options, and [he] went with the option that she chose." (Tr. at 49:3-7.) Based on this conversation, Mr. Pawar believed he had the authority to withdraw the Negligent Supervision Claim. (Tr. at 45:8-14.)

When questioned about whether he discussed the merits of each claim with Plaintiff and sought her consent to abandon each claim, Mr. Pawar testified that he "went through" her causes of action and told her that she "should stick with the [*respondeat superior* claim] because it's the strongest one." (Tr. at 56:20-57:4.) According to Mr. Pawar, Plaintiff told him, "You're the lawyer. You . . . make the decision and . . . do . . . what you think is best." (Tr. at 57:4-6.)

When asked whether Plaintiff gave her "permission to go forward on the one and not the other claims," Mr. Pawar testified, "I'm not sure if she used those words exactly, but the understanding was that she agreed to the strategy, and I was going to go forward with what her and I discussed." (Tr. at 55:24-57:6, 59:23-60:5.)

In describing his proposed strategy to Plaintiff, Mr. Pawar did not use words such as "dismiss" or "abandon"; instead, he told her that he was "[n]ot opposing" the City's motion for summary judgment. (Tr. at 62:3-7.) Mr. Pawar did not tell Plaintiff the consequences of the strategy or what it meant to abandon a claim because "it was implied that she knew that if [they] weren't going to fight it, then it was going to go away." (Tr. at 60:6-12.)

Mr. Pawar's conversation with Plaintiff lasted no "more than 10 minutes." (Tr. at 44:8-18.) He did not memorialize this conversation or otherwise follow up in writing. (Tr. at 40:24-41:7.)

4

### C.  **Plaintiff's Testimony**

Plaintiff testified that Mr. Pawar did not keep her updated throughout the case, and she had to rely on the Court's electronic docket to receive case updates.[2] (Tr. at 73:25-75:1.) However, there was only limited information about the case, and she did not understand the information or the legal jargon. (Tr. at 75:5-11, 78:9-19.)

Plaintiff spoke to Mr. Pawar two days before he filed her opposition to the City's summary judgment motion. (Tr. at 79:7-9.) She testified, "I asked him what is a summary judgment, and what does that mean, and he just briefly told me, the City is asking to . . . back out, not be in it anymore. And that's when I asked him . . . well, do you think we have a case or not? And he said, 'I think we do.' And that was about it." (Tr. at 79:7-17.)

Plaintiff asked Mr. Pawar whether he was "sure" that she had a case, and he said "yes." (Tr. at 90:16-21.) The conversation ended with Plaintiff responding, "okay." (Tr. at 91:14-21.) Mr. Pawar did not discuss the basis for the City's summary judgment motion or the reasons for abandoning any of her claims. (Tr. at 79:18-80:4, 89:23-90:3.)

Plaintiff learned that the Negligent Supervision Claim had been dismissed around the time she retained Mr. Christiana as new counsel. (Tr. 65:12-16.)

## DISCUSSION

### I.  **Legal Standard**

Under Rule 60(b)(1), "a court may relieve a party from a final judgment for 'mistake, inadvertence, surprise, or excusable neglect.'" *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004) (quoting Fed. R. Civ. P. 60(b)(1)). The burden is on the moving party to demonstrate that it is entitled to relief, and "courts generally require that the evidence in

---

[2] Plaintiff testified that she used "PACE[R] Monitor" to receive case updates. (Tr. at 74:24-75:1.) *See* https://www.pacermonitor.com/about.

support of the motion to vacate a final judgment be highly convincing." *Thai-Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (cleaned up).

"Relief from counsel's error is normally sought pursuant to [Rule] 60(b)(1) on the theory that such error constitutes mistake, inadvertence or excusable neglect." *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986); *see also Amid v. Chase*, 720 F. App'x 6, 9 (2d Cir. 2017) (summary order) ("Relief from counsel error is generally afforded pursuant to Rule 60(b)(1).").

In deciding whether relief under Rule 60(b)(1) is warranted, courts must also consider:

(i) The danger of prejudice to the non-moving party;

(ii) The length of the delay and its potential impact on judicial proceedings;

(iii) The reason for the delay, including whether it was within the reasonable control of the movant; and

(iv) Whether the movant acted in good faith.

*William v. City of New York*, 727 F. App'x 30, 31 (2d Cir. 2018) (summary order) (cleaned up) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

"The decision whether to grant a party's Rule 60(b) motion is committed to the 'sound discretion' of the district court . . . ." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).

## II.   Plaintiff's Rule 60(b)(1) Motion

### A.   *Whether the Motion Is Timely*

A Rule 60(b)(1) motion must be made "within a reasonable time," and "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1); *see also Stevens*, 676 F.3d at 67. The Partial Judgment from which Plaintiff seeks relief was entered on February 7, 2025.

The City argues that the Motion, which was filed on April 29, 2025, was not filed within a reasonable time because the voluntary dismissal of the Negligent Supervision Claim was noted on

6

the docket as early as July 20, 2023 when the City filed its reply memorandum (City's Reply Memorandum, Dkt. 80). (City Opp. at 11-12.) The City's argument lacks merit.

"[T]he time limit under Rule 60(b) is measured from 'the entry of the judgment or order or the date of the proceeding.'" *Lora v. West*, No. 04-CV-1902 (RJH)(GWG), 2010 WL 1541339, at *4 (S.D.N.Y. Apr. 16, 2010) (quoting Fed. R. Civ. P. 60(c)(1)), *R&R adopted*, 2010 WL 3632506 (S.D.N.Y. Sept. 16, 2010). Plaintiff filed the Motion less than three months after the entry of the Partial Judgment. Thus, the Motion was filed within a reasonable time. *See, e.g.*, *Dickerson v. Dickerson*, No. 23-CV-9938 (LTS), 2024 WL 1741359, at *2 (S.D.N.Y. Apr. 19, 2024) ("Plaintiff's Rule 60(b) motion was brought more than two months after judgment entered and . . . thus was filed within a reasonable time."); *Deng v. New York State Off. of Mental Health*, No. 13-CV-6801 (ALC)(SDA), 2018 WL 11176016, at *1 (S.D.N.Y. July 18, 2018) (four months after judgment was entered), *aff'd sub nom. Ren Yuan Deng v. New York State Off. of Mental Health*, 783 F. App'x 72 (2d Cir. 2019).

### B. Whether Plaintiff's Consent Was Necessary to Dismiss the Negligent Supervision Claim

"[C]ourts are generally reluctant to recognize attorney error as a basis for relief from an order or judgment" pursuant to Rule 60(b)(1) because "each party is deemed bound by the acts of his lawyer-agent." *Gomez v. City of New York*, 805 F.3d 419, 423-24 (2d Cir. 2015). "But the rule deeming a party bound by the acts of his or her attorney is not absolute." *Id.* at 424. "Unlike many other acts that an attorney undertakes on a client's behalf, the decision to settle or otherwise dismiss claims rests with the client and is not automatically bestowed on retained counsel." *Id.* (cleaned up); *see also In re Fuschi*, No. 22-2610, 2023 WL 6532953, at *1 (2d Cir. Oct. 6, 2023) (summary order) (citing *Gomez* approvingly).

While there is a presumption that "counsel acts pursuant to authority, that presumption is a rebuttable question of fact." *In re Fuschi*, 2023 WL 6532953, at *1. "In circumstances where a former attorney and his client dispute the giving of authority, courts generally require the holding

7

of an evidentiary hearing on the question of authorization." *Gomez*, 805 F.3d at 424 (cleaned up). After such a hearing, the Court can make credibility determinations and resolve any conflict in the testimony. *See id.*

The City contends that the "decision to pursue certain causes of actions rather than others" is distinct from the decision to dismiss "an entire case" such that the former does not require a client's consent. (City Opp. at 12-13.) *Gomez* did not make such a distinction. *Gomez* made clear that "the decision to . . . dismiss *claims* rests with the client . . . ." *Gomez*, 805 F.3d at 423-24 (emphasis added). Moreover, the cases on which the City relies predate and are inconsistent with *Gomez*, which is binding on this Court. *See, e.g.*, *Stone v. Town of Westport*, No. 04-CV-18 (JBA), 2007 WL 108454, at *7 n.7 (D. Conn. Jan. 12, 2007) (noting that "a client is held to his or her attorneys['] legal judgment to withdraw a claim"); *Jacobs v. Elec. Data Sys. Corp.*, 240 F.R.D. 595, 601 (M.D. Ala. 2007) ("[E]ven if Jacobs's attorney never obtained her consent to drop the claims, she cannot obtain relief under Rule 60(b)(1).").

The City also argues that an attorney's "decision to withdraw certain claims in favor of pursuing others also does not trigger Rule 6[0](b)(1) relief because this type of decision is a strategic one that does not require explicit client authority." (City Opp. at 9.) *Gomez* did not make any exception for such strategic decisions, and the cases that the City cites are either consistent with *Gomez*, *see, e.g.*, *Bahl v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, No. 14-CV-4020 (NRM)(LGD), 2024 WL 866137 at *4 (E.D.N.Y. Feb. 28, 2024) (noting that "voluntary termination of claims may be the functional equivalent of settlement and thus require a client's authorization" under *Gomez*); *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986) (suggesting that Rule 60(b)(1) relief may be appropriate if there was evidence that counsel had no authority to sign stipulation of dismissal), or inapposite, *see, e.g.*, *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009)

8

(analyzing whether relief was warranted pursuant to Rule 60(b)(6) based on potential hardship resulting from inconsistent judgments in related cases).

Accordingly, Mr. Pawar needed Plaintiff's consent to abandon any of her claims, including the Negligent Supervision Claim.

### C.   Whether Plaintiff Consented to Abandoning the Negligent Supervision Claim

Having conducted an evidentiary hearing, the Court finds that Plaintiff did not consent to abandoning the Negligent Supervision Claim.

It is undisputed that Plaintiff and Mr. Pawar had a brief discussion regarding how the City's motion for summary judgment should be opposed. According to Plaintiff, during that discussion, Mr. Pawar did not obtain her consent or explain his intention to abandon her claims, including the Negligent Supervision Claim. Rather, Mr. Pawar only told her that the City was trying to back out of the case, and he thought that she still has a case. Plaintiff did not know that her claim was being abandoned or dismissed until she retained Mr. Christiana.

The Court finds Plaintiff's testimony credible. The Court also finds that Mr. Pawar's testimony is consistent with Plaintiff's testimony in several respects. Mr. Pawar briefly went over each claim and recommended that she "should stick with [the *respondeat superior* claim]" because it "is the strongest one." (Tr. 59:4-10.) In doing so, Mr. Pawar only told her that he will "[n]ot oppos[e]" the City's summary judgment motion as to the remaining claims, but he did not use words such as "dismiss" or "abandon." (Tr. at 62:3-7.) Moreover, Mr. Pawar did not tell Plaintiff the consequences of the proposed strategy because he thought it was implied that the unopposed claims, including the Negligent Supervision Claim, would be abandoned. Thus, although Mr. Pawar testified that he told Plaintiff "it would be a best strategy to just move forward with the responde[a]t superior claim and not the other claims" (Tr. at 30:13-31:15), the Court finds that, in the context of

discussing a response to a summary judgment motion, Mr. Pawar did not explicitly seek or obtain Plaintiff's consent to affirmatively dismiss the Negligent Supervision Claim against the City.

The testimony and declarations make clear that when Plaintiff—who has no legal training—agreed with Mr. Pawar's proposal that they focus on the *respondeat superior* claim, she was not told that all of her other claims against the City would be abandoned or dismissed. Under such circumstances, Plaintiff's agreement cannot be construed as consent to the abandonment of the other claims against the City, including the Negligent Supervision Claim.

Accordingly, the Court concludes that Plaintiff did not consent to abandoning or dismissing the Negligent Supervision Claim, and she has, therefore, rebutted the presumption that Mr. Pawar acted with authority when he abandoned the Negligent Supervision Claim.

### D. Whether Relief Is Warranted under Rule 60(b)(1)

The Court's finding that Mr. Pawar had no authority to abandon the Negligent Supervision Claim does not automatically entitle Plaintiff to relief under Rule 60(b)(1); the Court must still evaluate the *Pioneer* factors. *See William v. City of New York*, 727 F. App'x 30, 31 (2d Cir. 2018) (summary order) (holding that district court abused its discretion by not discussing *Pioneer* factors in resolving Rule 60(b)(1) motion).

Plaintiff asserts that all four *Pioneer* factors weigh in her favor. (Pl. Mem. at 9-14; *see also* Pl. Reply at 6-8.) The City only addresses the second *Pioneer* factor, *i.e.*, the length of delay in filing the Motion. (City Opp. at 11-12.) For the reasons discussed above, the Court finds that Plaintiff filed the Motion within a reasonable time, less than three months after entry of the Partial Judgment. Thus, this factor weighs in favor of Plaintiff. *See Green ex rel. Est. of Green v. Advanced Cardiovascular Imaging*, No. 07-CV-3141 (JCF), 2009 WL 3154317, at *3 (S.D.N.Y. Sept. 30, 2009) (noting that less than three months' delay "is slight, [and] there is unlikely to be any significant impact on judicial proceedings").

As for the other *Pioneer* factors that the City failed to address, the City has effectively conceded that they weigh in Plaintiff's favor. *See Chung v. Royal Care, Inc.*, No. 23-CV-7962 (OEM) (LKE), 2025 WL 1029432, at *10 (E.D.N.Y. Jan. 8, 2025) ("When a party's memorandum of law does not respond to an adversary's argument, the party effectively concedes the arguments by his failure to respond to them.") (cleaned up), *R&R adopted*, 2025 WL 809900 (E.D.N.Y. Mar. 14, 2025); *see also Off. Create Corp. v. Planet Ent., LLC*, No. 22-CV-8848 (ER), 2024 WL 1638728, at *4 (S.D.N.Y. Apr. 16, 2024) ("[The petitioner] did not respond to the preemption argument in its brief, so the Court may deem the point conceded."), *aff'd*, 140 F.4th 96 (2d Cir. 2025).

In any event, the Court finds that the other *Pioneer* factors weigh in Plaintiff's favor. Because the Motion was filed within a reasonable time, any "danger of prejudice" to the City is minimal. *See Foley v. United States*, 645 F.2d 155, 157 (2d Cir. 1981) (noting that "it is difficult to imagine what possible undue prejudice might arise from a six-month delay in this relatively simple case in comparison to the substantial injustice that the plaintiffs suffer through dismissal"). In addition, discovery is complete, and the City does not argue that it requires additional discovery to respond to Plaintiff's opposition. *See Green ex rel. Est. of Green v. Advanced Cardiovascular Imaging*, No. 07-CV-3141 (JCF), 2009 WL 3154317, at *3 (S.D.N.Y. Sept. 30, 2009) ("The risk of prejudice to the nonmoving party is greatest where the moving party has allowed so much time to elapse that it would be difficult to conduct discovery or otherwise proceed with the case.").

Because Plaintiff did not know that the claim had been dismissed until the Partial Judgment was entered and she retained Mr. Christiana, she had good reason for filing the Motion on April 29, 2025, and she acted in good faith.

Accordingly, the Court finds that Plaintiff is entitled to relief pursuant to Rule 60(b)(1).

### III. Conclusion

Based on the foregoing, the Court grants the Motion and partially vacates the Partial Judgment to reflect that the Negligent Supervision Claim is not dismissed against the City.

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
December 19, 2025