UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAKISHA REID,<br><br>                           Plaintiff,<br><br>-against-<br><br>CITY OF NEW YORK, *et al.*,<br><br>                           Defendants. | Case No.: 20-CV-3926 (PK) |

# PLAINTIFF TAKISHA REID'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CITY OF NEW YORK'S MOTION FOR SUMMARY JUDGMENT

Matthew W. Christiana
Kopke Christiana & Rastetter LLP
199 Cook Street, Suite 308
Brooklyn, NY 11206
t: (917) 451-9525

*Attorneys for Plaintiff*

January 16, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................I
PRELIMINARY STATEMENT ........................................................................................... 1
STATEMENT OF FACTS .................................................................................................... 2
ARGUMENT ......................................................................................................................... 5
    SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANT CITY WAS ON NOTICE OF DETECTIVE HOWARD'S PROCLIVITIES FOR SEXUAL MISCONDUCT TOWARDS C.I.'s PRIOR TO THE INSTANT ASSAULTS ..................................................... 5
CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

### CASES

*Bliss v. Putnam Valley Cent. Sch. Dist.*, No. 06-cv-15509 (WWE), 2011 WL 1079944 (S.D.N.Y. Mar. 24, 2011) ------------------------------------------------------------------------------------- 8

*D'Amico v. Christie,* 518 N.E.2d 896 (N.Y. 1987) ---------------------------------------------- 5

*Doe v. Chenango Valley Cent. Sch. Dist.*, 92 A.D.3d 1016 (N.Y. App. Div. 3d Dept. 2012) ------ 9

*Doe v. City of New York*, No. 15-CV-0117(JN), 2018 WL 6095847 (S.D.N.Y. Nov. 21, 2018) -- ---------------------------------------------------------------------------------------------------- 7, 8, 9, 10

*Doe v. Columbus Ave. Elementary Sch.*, 225 A.D.3d 845 (N.Y. App. Div. 2d. Dept. 2024)-- ---- 7

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) ------------------------------------- 5, 6

*Glob-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754 (2011) ---------------------------------10

*Gonzalez v. City of New York*, 133 A.D.3d 65 (N.Y. App. Div. 1st Dept. 2015) ---------- 5, 6, 8, 11

*Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150 (N.Y. 2023) ------------ 6, 7, 9, 10

*Nevaeh T. v. City of New York*, 132 A.D.3d 840 (N.Y. App. Div. 2d Dept. 2015) ----------------- 8

*Olsen v. Butler*, 227 A.D.3d 916, 918 (N.Y. App. Div. 2d Dept. 2024) ---------------------------- 6

*Timothy Me. v. Beacon City School District*, 127 A.D.3d 826 (N.Y. App. Div. 2d Dept. 2015) -- 8

*Wahhab v. City of New* York, 386 F. Supp. 2d 277 (S.D.N.Y. 2005) ------------------------------- 7

*Waterbury v. New York City Ballet, Inc.*, 205 A.D.3d 154 (N.Y. App. Div. 1st Dept. 2022) ------- 6

## **PRELIMINARY STATEMENT**

This case arises from the sexual assaults of Plaintiff, a confidential informant, by New York Police Department (NYPD) Detective Gregory Howard. The City of New York has moved for summary judgment on Plaintiff's claim against Detective Howard's employer under negligent supervision, hiring, training, and retention, contending that it lacked notice of Detective Howard's propensity for sexual misconduct. This argument fundamentally mischaracterizes the evidence.

The record clearly establishes that months before the assaults on Plaintiff occurred, the NYPD's Internal Affairs Bureau (IAB) had launched an investigation into Detective Howard's sexual misconduct with another of his female confidential informants. Despite this ongoing investigation and explicit departmental policies requiring supervised meetings with informants, the NYPD allowed Detective Howard to continue working with confidential informants, empowered with a Detective's authority, without training, re-training, supervision or *any* restrictions. Consequently, Detective Howard was permitted to meet alone with Plaintiff, whom he subsequently sexually assaulted on multiple occasions, including in his department vehicle.

Under New York law, an employer's liability attaches when the employer knew or should have known of an employee's propensity for harmful conduct. Here, the NYPD was indisputably on notice of Detective Howard's proclivities for sexual misconduct with female confidential informants. In fact, the IAB investigators investigating Plaintiff's claims against Defendant Howard explicitly classified Defendant Howard's prior sexual misconduct as a "prior similar allegation." As such, Defendant City had notice of Defendant Howard's propensities, and its motion for summary judgment must be denied.

1

## **STATEMENT OF FACTS**[1]

In 2017, Defendant Gregory Howard was a New York Police Department (NYPD) Detective assigned to the 120 precinct. (*See* Defendant City's Statement of Undisputed Facts pursuant to Local Civil Rule 56.1 ("D. 56.1") at ¶2). As a Detective, Defendant Howard was empowered with the authority to engage with confidential informants ("C.I.'s"). (*See* D. 56.1 at ¶ 1-3; Plaintiff's Counter-Statement of Facts pursuant to Local Civil Rule 56.1 ("P. 56.1") at ¶ 29, 39).

At all relevant times leading up to the present, the N.Y.P.D. maintained a written policy relating to C.I.'s that each officer was expected to follow. (P. 56.1 at ¶ 23). The purpose of the policy was simple: to ensure "the safety of the confidential informant." (P. 56.1 at ¶ 23). As such, pursuant to that policy, Defendant Howard—and any officer engaging with C.I.'s— was required to comply with certain procedures, including submitting written reports for each interaction the officer has with an informant. (P. 56.1 at ¶ 23-24). Additionally, to maximize safety, the policy mandates that all officers are never to meet with a confidential informant alone. (P. 56.1 at ¶ 25). In fact, the policy explicitly states that "*a supervisor, preferably the immediate supervisor of the contact [officer], will be physically present at all meetings (e.g., debriefings, controlled buys, payments, etc.) between a confidential informant and a contact.*" (P. 56.1 at ¶ 25). (emphasis in original). Notwithstanding the policy and its stated purpose of ensuring C.I. safety, Defendant Howard received no training on the policy and was never provided with, shown, or instructed to review any related materials. (P. 56.1 at ¶ 26).

---

[1] Because this Court has held that Plaintiff's claims against Defendant Howard—under the Fourth and Fourteenth Amendments, as well as for assault and battery and both intentional and negligent infliction of emotional distress—survive summary judgment as to the underlying conduct, for brevity, Plaintiff outlines the facts as they pertain to Defendant City's motion for summary judgement only. *See e.g.*, Dkt. 87.

Defendant Howard's supervisor was Lt. Christopher Bannon. (P. 56.1 at ¶ 27). Accordingly, Lt. Bannon supervised Defendant Howard with respect to his dealings with C.I.'s. (P. 56.1 at ¶ 27). Despite knowing that Defendant Howard was engaging with confidential informants, Lieutenant Bannon was never present for any of his meetings with them, nor did he provide or instruct Defendant Howard to engage in any relevant training. (P. 56.1 at ¶ 27).

Defendant Howard's first C.I. was a female woman, referred to herein as "C.I. #1". (P. 56.1 at ¶ 28-29). Prior to November 2017, Defendant Howard had disclosed confidential information to her and had engaged in sexual misconduct by soliciting her for sex. (P. 56.1 at ¶ 29-30). It is unclear whether Defendant Howard's sexual misconduct relating to C.I. #1 was consensual or non-consensual and threatening, as Defendant Howard invoked his Fifth Amendment right when asked if he knew or understood the difference. (P. 56.1 at ¶ 31, 35). In any event, around the same time, Defendant Howard had met Plaintiff and asked her to sign up as a C.I. to work underneath him, to which she agreed. (P. 56.1 at ¶ 36).

By November 17, 2017, Defendant Howard's misconduct with respect to C.I. # 1 had become known to a fellow Staten Island Police Officer, who in turn, reported the misconduct to the Internal Affairs Bureau ("IAB"). (P. 56.1 at ¶ 32-33). Consequently, on November 17, 2017, the IAB formally opened an investigation into Defendant Howard's misconduct, including allegations of sexual misconduct involving his confidential informant (hereinafter the "2017 sexual misconduct investigation"). (P. 56.1 at ¶ 33-34). Despite the ongoing investigation, the NYPD did not limit Defendant Howard's authority to work with confidential informants and provided no additional training, re-training, supervision, or even the minimal oversight required under its own policies as it pertains to officer and C.I. engagement. (P. 56.1 at ¶ 51).

While the 2017 sexual misconduct investigation was underway, and because Defendant Howard still possessed the authority to engage with C.I.'s, Defendant Howard turned his sights away from C.I. #1 and towards Plaintiff. (P. 56.1 at ¶ 36-38). He stalked her and repeatedly called and texted her using his department-issued phone, before eventually switching to his personal phone. (P. 56.1 at ¶ 37-39). Then, under the auspice of meeting up to "gather intel", on three occasions, including one in April and May 2018, Defendant Howard sexually assaulted her. (P. 56.1 at ¶ 40). On at least one occasion, Defendant Howard sexually assaulted her in his department vehicle. (P. 56.1 at ¶ 40). And, despite all of their encounters and the prior allegations against Defendant Howard, Lt. Bannon allowed Defendant Howard to meet with Plaintiff alone every time. (P. 56.1 at ¶ 41).

Although initially afraid to report, Plaintiff ultimately came forward, prompting the IAB to launch its next investigation into Defendant Howard for sexual misconduct with a C.I. underneath him, in June 2018. (P. 56.1 at ¶ 42). As part of the IAB investigation into Plaintiff's assaults, the investigators realized that Defendant Howard had, as the investigators classified, a "prior similar allegation" which had given rise to an earlier investigation that was still ongoing—the 2017 sexual misconduct investigation. (P. 56.1 at ¶ 43). Investigators between the two cases repeatedly conferred and shared information regarding the "similar allegations." (P. 56.1 at ¶ 44).

Eventually, based upon the allegations brought by Plaintiff, the NYPD brought and substantiated only three charges: failure to have a supervisor present with C.I. meetings, failure to prepare and complete written reports, and knowingly associating with a person with a criminal history. (P. 56.1 at ¶ 45). Defendant Howard was docked 45 vacation days and placed on probation for a year. (P. 56.1 at ¶ 46). The NYPD did *not* charge Defendant Howard for any of his sexual conduct, and as a result, he was never disciplined for it. (P. 56.1 at ¶ 48).

Likewise, Defendant Howard escaped disciplinary action for his actions underlying the 2017 sexual misconduct investigation, which was closed in October 2018 (*i.e*, well after the assaults on Plaintiff). (P. 56.1 at ¶ 47). In that investigation, even though investigators uncovered over 16,000 calls and texts between Howard and C.I. # 1 in an 18-month period, after only Defendant Howard was interviewed and denied the allegations, the case was closed as "unsubstantiated" (P. 56.1 at ¶ 35, 47).

At no point before, during, or after either the 2017 sexual misconduct investigation or Plaintiff's IAB investigation did the NYPD ever: (1) train or retrain Defendant Howard on the policies governing interactions with confidential informants; (2) ensure he was adequately supervised, including compliance with the policy prohibiting unsupervised meetings with C.I.s; (3) revoke or restrict his authority to manage or interact with confidential informants; or (4) reassign him to a position without C.I.-related responsibilities. (P. 56.1 at ¶ 48, 49, 51). To this day, Defendant Howard is still employed by the N.Y.P.D. as a Detective. (P. 56.1 at ¶ 50).

## ARGUMENT

SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANT CITY WAS ON NOTICE OF DETECTIVE HOWARD'S PROCLIVITIES FOR SEXUAL MISCONDUCT TOWARDS C.I.'s PRIOR TO THE INSTANT ASSAULTS

In New York, "[a] defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citing *D'Amico v. Christie,* 518 N.E.2d 896, 901 (N.Y. 1987)). However, separate and apart from a standard negligence claim, New York courts "have held governmental employers liable for placing employees, like police officers who are known to be violent, in positions in which they can harm others." *Gonzalez v. City of New York*, 133 A.D.3d 65, 68 (N.Y. App. Div. 1st Dept. 2015).

5

In these cases, liability against the employer "stems from New York's long recognized tort of negligent hiring and retention" and the "breach of duty stems from the claim that during [the officer's employment] with the City, the City became aware or should have become aware of problems with [the Officer] that indicated he was unfit (i.e., possessed violent propensities), and that the City failed to take further action." *Id.* at 65, 67-68; *see also Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 157 (N.Y. 2023) ("When an employer has notice of its employee's propensity to engage in tortious conduct, yet retains and fails to reasonably supervise such employee, the employer may become liable for injuries thereafter proximately caused by its negligent supervision and retention").

As Defendant outlines in their motion for summary judgment, "[u]nder New York Law, to state a claim for negligent hiring, training, supervision, or retention," a plaintiff must establish "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *See* Defendant's Motion for Summary Judgement (Dkt. 79 at 5) (citing *Ehrens v. Lutheran Church*, 385 F.3d at 235).

The most important factor is the second: notice. *See e.g.*, Dkt 79 at 6. As the Appellate Division, Second Department recently held, to succeed on "a cause of action based on negligent hiring, retention, supervision, and training of an employee," a plaintiff must demonstrate that the "employer knew or should have known [that] the employee[ ][had] a propensity for the conduct which caused the [plaintiff's] injury." *Olsen v. Butler*, 227 A.D.3d 916, 918 (N.Y. App. Div. 2d Dept. 2024); *see also Waterbury v. New York City Ballet, Inc.*, 205 A.D.3d 154, 162 (N.Y. App. Div. 1st Dept. 2022) (in a claim for negligent hiring and retention, if

6

employee's "conduct was a foreseeable outcome of his employment, [employer] had a duty to supervise that employment."); *Wahhab v. City of New* York, 386 F. Supp. 2d 277, 293–94 (S.D.N.Y. 2005) (liability for a claim for "negligent hiring, screening, retention, supervision and training" attaches "only when the employer knew or should have known of the employee's [complained of] propensities.") (citations and quotations omitted).

If a prior complaint has "been made against an employee in the past, the employer is on notice about the complained-of behavior." *Doe v. City of New York*, No. 15-CV-0117(JN), 2018 WL 6095847, at *7 (S.D.N.Y. Nov. 21, 2018) (collecting cases); *see also Moore Charitable Found.*, 40 N.Y.3d at 158 ("Certainly, allegations that a defendant had actual knowledge of prior acts by an employee similar to those alleged in the complaint satisfy the notice element"). This is true regardless of whether the prior complaint was substantiated or unsubstantiated. *Doe v. City of New York*, 2018 WL 6095847, at *7 ("New York courts have rejected the argument that state or municipal governments were not on notice of their employees' propensity for injurious conduct when the complaints were "unsubstantiated.") (collecting cases). Ultimately, notice—and the sufficiency thereof—is a "triable issue of fact." *See DOE v. Columbus Ave. Elementary Sch.*, 225 A.D.3d 845, 847 (N.Y. App. Div. 2d. Dept. 2024).

Based on the elements, Defendant City has moved for summary judgment focusing on the notice element. Dkt. 79 at 5-7.[2] To that end, Defendant City argues, "there is no evidence that Defendant City knew or should have known of Detective Howard's alleged propensity for

---

[2] While Defendant Howard must be liable for a tort, Defendant City does not challenge this element. *See* Dkt. 79 at 5-6. In any event, this Court has held that Plaintiff's claims against Defendant Howard—under the Fourth and Fourteenth Amendments, as well as for assault and battery and both intentional and negligent infliction of emotional distress—survive summary judgment as to the underlying conduct. *See e.g.*, Dkt. 87.

7

misconduct, and certainly not his alleged propensity for sexual misconduct." Dkt. 79 at 6. This is not so.

Here, the evidence conclusively establishes that Defendant City was on notice of Detective Howard's propensities for sexual misconduct relating to female confidential informants. Indeed, contrary to the City's baseless claim that Plaintiff was Howard's "first and only confidential informant," the undisputed evidence establishes that Detective Howard had previously handled another female informant (C.I. #1)—and was credibly accused of serious sexual misconduct involving her, including, among other things, soliciting her for sex. *Compare* Dkt. 79 at 7 *with* P. 56.1 at ¶¶ 28-35. And, fatal to the City's motion, and contrary to its contention that they had no notice of Howard's "sexual activities with a confidential informant," the City *had actual notice* of Howard's proclivities towards sexual misconduct towards female C.I.'s because it *launched an internal investigation into Howard's misconduct in November 2017—months before the April and May sexual assaults on Plaintiff occurred*. *Compare* Dkt. 79 at 7 *with* P. 56.1 at ¶¶ 28-35, 42-44.

Surely, this evidence alone is sufficient to defeat the City's motion for summary judgment. *See e.g. Doe v. City of New York*, 2018 WL 6095847, at *7; *Bliss v. Putnam Valley Cent. Sch. Dist.*, No. 06-cv-15509 (WWE), 2011 WL 1079944, at *10 (S.D.N.Y. Mar. 24, 2011) (denying summary judgment where a social studies teacher had held a female student in a way that made her uncomfortable at some point prior to allegedly raping another female student); *Timothy Me. v. Beacon City School District*, 127 A.D.3d 826, 828 (N.Y. App. Div. 2d Dept. 2015) (triable issue of fact where school district received prior complaints of misconduct by bus driver); *Nevaeh T. v. City of New York*, 132 A.D.3d 840, 842 (N.Y. App. Div. 2d Dept. 2015) (triable issue of fact on whether the Department of Education had knowledge of teacher's propensities arising from a prior allegation of sexual abuse made by one of his former students); *Gonzalez v. City of New York*, 133

A.D.3d 65, 73 ("Under the circumstances, this case presents genuine issues of material fact as to whether the City negligently supervised and retained an officer with violent propensities, and whether the intervening intentional tort of the off-duty officer was itself a foreseeable harm that shaped the duty imposed upon the City when it failed to guard against a police officer with violent propensities.").

To the extent Defendant argues the prior incident is not sufficiently similar, this argument should be rejected. First, the prior allegation need not be identical to the instant injury. *Doe v. City of New York*, 2018 WL 6095847, at *7 ("an employer does not need to have notice of an employee's propensity "to behave in the exact manner in which he behaved with" a plaintiff in order for liability to attach) (citations omitted). All that is necessary is "notice of [the employee's] propensity for that *sort of behavior*." *Id.* (citations omitted) (emphasis added); *see also Doe v. Chenango Valley Cent. Sch. Dist.*, 92 A.D.3d 1016 (N.Y. App. Div. 3d Dept. 2012) (question of fact exists regarding whether defendant was negligent in retaining or supervising employee who showed his underwear to a group of students months before sexually assaulting a different student).

The requisite notice of Defendant Howard's proclivities towards sexual misconduct based on the prior allegation is undeniably present here. Defendant Howard was accused of engaging in sexual misconduct with a female C.I., and months later, Defendant Howard engaged in sexual misconduct with another female C.I.—Plaintiff. Surely, a prior incident of sexual misconduct involving a female confidential informant—*which launched an internal investigation*—sufficiently placed the City on notice of Defendant Howard's proclivities towards sexual misconduct, especially with female confidential informants. *See Moore Charitable Found.*, 40 N.Y.3d 150 at 158 ("an employer cannot avoid liability for negligent supervision and retention by shutting its eyes to the tortious *practices* and *propensities* of its employees—that is, by being

9

doubly negligent") (emphasis added). And Defendant City is hard pressed to dispute this: even their own IAB investigators classified the allegations as "similar", referring explicitly to the 2017 sexual misconduct allegation as a "*prior similar allegation.*" *See* P. 56.1 at ¶ 43-44.

Casting aside the fact that the investigation remained ongoing at the time of the sexual assaults, the unsubstantiated nature of the prior complaint (which was deemed unsubstantiated *after* the sexual assaults on Plaintiff occurred) does not alter the analysis. *See Doe v. City of New York*, 2018 WL 6095847, at *7 ("New York courts have rejected the argument that state or municipal governments were not on notice of their employees' propensity for injurious conduct when the complaints were "unsubstantiated.") (collecting cases).

Moreover, around the same time of the underlying incidents, another detective in the same precinct—*under the same supervision*—engaged in sexual misconduct with his informant (of which he was recently fired for). *See* P. 56.1 ¶¶ 52-53. This pattern of similar misconduct within the 120th Precinct supports a finding that the City had constructive notice of Detective Howard's proclivities, even apart from its *actual notice* arising from the 2017 sexual-misconduct investigation. *See* P. 56.1 ¶¶ 52-53. To be sure, the City's own policy requires supervisory presence at all meetings between officers and informants. *See* P. 56.1 ¶ 25. Had that policy been followed, the City would have been positioned to observe—and prevent—the established practice within the precinct of officers engaging in sexual misconduct with informants. The City cannot evade notice by failing to enforce its own safeguards. *See e.g., Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, (2011) ("The traditional rationale for the doctrine [of willful blindness] is that defendants who behave in this manner are just as culpable as those who have actual knowledge."); *Moore Charitable Found.*, 40 N.Y.3d 150 at 158 ("an employer cannot avoid liability for negligent supervision and retention by shutting its eyes to the tortious *practices* and *propensities* of its

employees—that is, by being doubly negligent") (emphasis added). Accordingly, the record supports a finding of both actual and constructive notice.

      Finally, although not challenged in the City's motion for summary judgment, Detective Howard engaged in the misconduct in his department vehicle, and it otherwise warrants emphasis that the City unquestionably failed to exercise due care and "take further action", notwithstanding Howard's proclivities for sexual misconduct with female C.I.'s. *Gonzalez v. City of New York*, 133 A.D.3d 65 at 68 (noting the "breach of duty stems from the claim that during [officer's] employment with the City, the City became aware or should have become aware of problems with [officer] that indicated he was unfit (i.e. possessed [certain] propensities), that the City failed to take further action."). Surely, the City could—and should—have stripped Detective Howard of his ability to engage with C.I.'s after the 2017 sexual misconduct was launched. At the very least, he should have been supervised pursuant to the policy (which requires a supervisor present at *all* meetings) and trained (or retrained) on the appropriate procedures of engaging with C.I.'s. Nevertheless, at no point did the city ensure Defendant Howard was: (1) adequately trained or retrained on procedure for engaging with C.I.'s, (2) properly disciplined,[3] (3) disallowed from handling female C.I.'s or otherwise stripped of his authority to do so, or (4) properly supervised such that a supervisor was present during every meeting with a C.I.—in direct contravention of the established NYPD protocols. In light of these circumstances, it is unsurprising that the City declined to move for summary judgment on this basis.

---

[3] Defendant Howard was not disciplined for his prior sexual misconduct regarding C.I. # 1, and, contrary to the City's contention, Defendant Howard was only docked vacation days for his conduct towards Plaintiff unrelated to the sexual misconduct, which he was neither charged nor disciplined for. *Compare* Dkt. 79 at 12 *with* Pl.'s 56.1 ¶¶ 45, 46, 48.

In short, Defendant City was on notice of Defendant Howard's proclivities and propensity to engage in sexual misconduct with female C.I.'s. As such, Defendant City's motion for summary judgment on this claim must be denied.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully asks the Court deny Defendant City's Motion for Summary Judgment on Plaintiff's Negligent Training, Hiring, Screening, Retention claim.

Dated: January 16, 2026
Brooklyn, New York

                              KOPKE CHRISTIANA & RASTETTER LLP

By:   /s/ *Matthew Christiana*
      Matthew Christiana
      matt@kcrllp.com
      199 Cook Street, Suite 308
      Brooklyn, NY 11206

      *Attorneys for Plaintiff*

**CC:**  **VIA ECF**
Peter Till
pwt@till-law.com
*Attorney for Defendant Howard*

Elissa Beth Jacobs
ejacobs@law.nyc.gov
John McLaughlin
jmclaugh@law.nyc.gov
*Attorney for Defendant City of New York*