UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TAKISHA REID,

                        Plaintiff,

    -against-

CITY OF NEW YORK et al.,

                      Defendants.
------------------------------------------------------------------------X

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
RULE 56.1 STATEMENT AND PLAINTIFF'S COUNTERSTATEMENT OF FACTS**

20-CV-03927(PK)

       Pursuant to the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff hereby responds to Defendant City of New York's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, ECF No. 78, as follows:

**PLAINTIFF'S RESPONSE TO DEFENDANT'S 56.1 STATEMENT**

       1.    On October 24 2017, Detective Gregory Howard signed up Plaintiff Takisha Reid to be a "confidential informant" for the New York City Police Department ("NYPD"). (Excerpts from IAB Investigation File at D50–D51, annexed to the Declaration of Jeffrey F. Frank ("Frank Decl.") as "Exhibit A"); (Deposition Transcript of co-defendant Detective Gregory Howard ("Howard Tr.") at 16:19–23, 29:06–23, annexed to Frank Decl. as "Exhibit B").

**Plaintiff's Response**:  Plaintiff does not dispute this statement.

       2.    Detective Gregory Howard was assigned to the NYPD 120th Precinct's Detective Squad from 2017 to 2019. (Exhibit B: Howard Tr. at 15:05–07).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

       3.    After activating Plaintiff as a confidential informant, Detective Howard used his personal phone to call and text Plaintiff. (Exhibit B: Howard Tr. at 96:20–97:09); (Deposition Transcript of Plaintiff Takisha Reid ("Plaintiff Tr.") at 30:09–16, annexed to Frank Decl. as "Exhibit C").

1

**Plaintiff's Response**: Plaintiff does not dispute that, Detective Howard had communicated with Plaintiff on his department phone but had also used his personal cell phone to "text" Plaintiff for a period of time because his "department phone was broke." (Def. Exhibit B: Howard Tr. at 96:20–97:09)

      4.    Detective Howard met in person with Plaintiff on several occasions. (Exhibit C: Plaintiff Tr. at 107:06–23).

**Plaintiff's Response**: Plaintiff does not dispute that Detective Howard met in person with Plaintiff on several occasions, and otherwise would follow and "stalk" her. (*See* Ex. 1 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 1: Reid Deposition"), at 118:4-20).

      5.    Plaintiff claims that, on three of those occasions, she and Detective Howard engaged in sexual activities. (Exhibit C: Plaintiff Tr. at 45:17–46:06).

**Plaintiff's Response**: Plaintiff disputes this statement to the extent it implies the sexual encounters were consensual. Plaintiff does not dispute that, on three occasions, Detective Howard sexually assaulted her. (*See* Pl.'s 56.1 Ex. 1: Reid Deposition, at 118:4-20).

      6.    Lieutenant Christopher Bannon supervised Detective Howard for at least three to four years, including the time period when Plaintiff was working with Detective Howard as a confidential informant. (Deposition Transcript of non-party Lieutenant Christopher Bannon ("Bannon Tr.") at 18:04–06, annexed to Frank Decl. as "Exhibit D"); (Exhibit B: Howard Tr. at 25:12–22, 51:11–13).

**Plaintiff's Response**: Plaintiff does not dispute that Lt. Bannon was Defendant Howard's supervisor for at least seven years, including during the time in which Plaintiff served as confidential informant under Defendant Howard.

2

7. On June 4, 2018, Plaintiff made a complaint with the Civilian Complaint Review Board ("CCRB") against Detective Howard. (Excerpts from IAB Investigation File, annexed to Frank Decl. as Exhibit A at D367).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

8. On June 9, 2018, CCRB referred Plaintiff's complaint to the NYPD's Internal Affairs Bureau ("IAB") for further investigation. (Exhibit A at D61–66); (Exhibit C: Plaintiff Tr. at 57:01–09).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

9. Before June 4, 2018, no disciplinary allegations similar to Plaintiff's had been made against Detective Howard. (Frank Decl. at ¶ 6); (Exhibit D: Bannon Tr. at 10:04–18, 21:11–22:14).

**Plaintiff's Response**: Plaintiff disputes this statement. As of at least November 17, 2017, the IAB was investigating Defendant Howard for prior similar allegations, including an allegation that Defendant Howard engaged in sexual misconduct with a female C.I. other than Plaintiff. (*See* Ex. 2 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard"), at D17-18, D90, D124, D221, D256, D266, D356).

10. In fact, other than the complaint made by Plaintiff, Detective Howard has never been accused of engaging in a sexual relationship with a confidential informant. (Frank Decl. at ¶ 6); (Exhibit D: Bannon Tr. at 22:08–14).

**Plaintiff's Response**: Plaintiff disputes this statement. As of at least November 17, 2017, the IAB was investigating Defendant Howard for prior similar allegations, including an allegation that

3

Defendant Howard engaged in sexual misconduct with a female C.I. other than Plaintiff. (Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard, at D17-18, D90, D124, D221, D266, D356).

        11.      During the time Lieutenant Bannon was Detective Howard's supervisor, he had no reason to believe that disciplinary action would be required as to Detective Howard. (Exhibit D: Bannon Tr. at 11:18–22).

**Plaintiff's Response**: Plaintiff disputes this statement because, as of at least November 17, 2017, the IAB was investigating Defendant Howard for prior similar allegations, including an allegation that Defendant Howard engaged in sexual misconduct with a female C.I. other than Plaintiff. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard, at D17-18, D90, D124, D221, D266, D356).

        12.      Plaintiff was deactivated as a confidential informant on August 29, 2018. (Exhibit A at D50).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

        13.      Plaintiff is the only confidential informant Detective Howard has handled. (Exhibit B: Howard Tr. at 16:19–23); (see also Exhibit C: Plaintiff Tr. at 63:06–65:06, 133:03–23).

**Plaintiff's Response**: Plaintiff disputes this statement. Defendant Howard had handled another female confidential informant prior to Plaintiff, and Defendant Howard was accused of engaging in sexual misconduct with her, leading to an IAB investigation in November 2017. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard, at D17-18, D90, D124, D221, D266, D356).

        14.      During her interview with IAB, Plaintiff stated she had consensual sex with Detective Howard on two occasions. (Exhibit C: Plaintiff Tr. at 41:02–22, 72:18–74:05).

**Plaintiff's Response**: Plaintiff disputes that she ever had consensual sex with Defendant Howard. Plaintiff does not dispute that she told an IAB officer that she "didn't fight him off" "because [she] froze and [she] was scared, and it all happened so fast." (Def. Exhibit C: Plaintiff Tr. at 41:02–22).

15. On September 13, 2019, IAB issued charges and specifications against Detective Howard for: (1) knowingly associating and maintaining a personal relationship with a deactivated confidential informant, (2) failing to prepare written reports of interactions with a confidential informant, and (3) meeting with a confidential informant without a supervisor present. (Exhibit A at D42–D47, D50–D51).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

16. IAB disposed of these charges and specifications as "guilty," and recommended penalties against Detective Howard including one-year dismissal probation and forfeiture of forty-five (45) vacation days. (Exhibit A at D42–D43, D64–D66, D2037); (Exhibit B: Howard Tr. at 54:20–55:03); (see also Exhibit A at D2036) (informing Plaintiff, inter alia, that disciplinary action was recommended against Detective Howard as a result of her complaint).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

17. Plaintiff commenced the instant action by filing the Complaint on August 25, 2020, alleging claims against defendant City of New York pursuant to New York State law for "Negligent Screening, Training, Hiring, and Retention," (Complaint, ECF No. 1, at ¶¶ 67–70), negligence (id. at ¶¶ 71–75), and respondeat superior, (id. at ¶¶ 76–77).

**Plaintiff's Response**: Plaintiff does not dispute that the Complaint includes causes of action outlined above, including allegations against Defendant City as the employer of Defendant Howard.

18. Shortly thereafter, Plaintiff provided an interview to the New York Daily News in which she announced her identity as a confidential informant and provided a picture of herself for publication alongside her interview. (Exhibit C: Plaintiff Tr. at 57:10–58:22, 60:05–08).

**Plaintiff's Response**: Plaintiff does not dispute that she sat for the interview and provided a picture because her former lawyer asked her to, even though she did not want people to find out her identity. (*See* Pl.'s 56.1 Ex. 1: Reid Deposition at 59:4-16).

19. Plaintiff made no complaints to the NYPD or any other New York law enforcement agencies regarding threats to her safety stemming from her disclosure of her identity as a confidential informant. (Exhibit C: Plaintiff Tr. at 57:10–58:22, 108:06–110:05, 111:09–112:20).

**Plaintiff's Response**: Plaintiff does not dispute that she did not make any complaints to the NYPD regarding threats to her safety stemming from the disclosure of her identity.

20. Instead, Plaintiff only complained to the Elizabeth, New Jersey Police Department about threats Plaintiff received after revealing her identity as a former confidential informant. (*Id.*)

**Plaintiff's Response**: Plaintiff does not dispute that, when threatened after her identity was disclosed, she complained to the Elizabeth, New Jersey Police Department.

21. Defendant City pled governmental immunity as an affirmative defense in its Answer to the Complaint. (Answer, ECF No. 18, at ¶ 82).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

22. Plaintiff has adduced no evidence to support her claims that the City was negligent. (Exhibit C: Plaintiff Tr. at 117:08–13, 120:08–121:05).

6

**Plaintiff's Response**: Plaintiff disputes this statement. *See* Plaintiff's 56.1 Counterstatement ¶¶ 23-51, *infra*.

## PLAINTIFF'S COUNTERSTATEMENT OF FACTS

23. From May 1, 2017 through all relevant times leading up to the present, the N.Y.P.D. had a written policy relating to Confidential Informants for the purposes of ensuring "the safety of the confidential informant." (*See* Ex. 3 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 3: N.Y.P.D. Patrol Guide, Confidential Informants") at D4-D13).

24. As part of that policy, the contact [officer] of the Confidential Informant is required to submit written reports for each interaction with an informant. (*See* Pl.'s 56.1 Ex. 3: N.Y.P.D. Patrol Guide, Confidential Informants at D7).

25. Additionally, the N.Y.P.D. policy explicitly states that "*a supervisor, preferably the immediate supervisor of the contact [officer], will be physically present at <u>all</u> meetings (e.g., debriefings, controlled buys, payments, etc.) between a confidential informant and a contact.*" (*See* Pl.'s 56.1 Ex. 3: N.Y.P.D. Patrol Guide, Confidential Informants at D10) (emphasis in original).

26. Defendant Howard was never trained on the policies surrounding working with C.I.'s, and likewise never reviewed nor knew of any training materials related thereto. (*See* Ex. 4 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 4: Howard Deposition") at: 52:7-20).

27. Lt. Bannon was the 120th Precinct Detective Unit's (and Howard's) direct supervisor with respect to C.I.'s, and Lt. Bannon did not provide any supervision or training with respect to engaging with C.I.'s. (*See* Pl.'s 56.1 Ex. 4: Howard Deposition at 51:11-20; Ex. 5 to

7

Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 5: Bannon Deposition" at 5:17-23, 8:1-13).

28. Between early 2017 and 2018, Defendant Howard was the handler (or contact) of at least two female confidential informants: "C.I. #1" and Plaintiff. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D90, D221, D256, D266).

29. Defendant Howard had begun overseeing C.I. #1 as a C.I. prior to signing Plaintiff as a confidential informant. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D90, D221, D256, D266).

30. Defendant Howard had disclosed confidential information to C.I. #1, and had also engaged in sexual misconduct by "soliciting" her for sex. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D90, D221, D256, D266, D356; Ex. 4: Howard Deposition at 44:7-12).

31. It is unclear whether Defendant Howard's sexual misconduct relating to C.I. #1 was consensual or non-consensual and threatening, as Defendant Howard invoked his Fifth Amendment right when asked if he knew or understood the difference. (*See* Pl.'s 56.1 Ex. 4: Howard Deposition at 45:19-46:1).

32. Eventually, Defendant Howard's conduct became known to a fellow Staten Island Narcotics Officer, Christopher Brooks. (*See* Pl.'s 56.1 Ex. at 2: Investigations into Defendant Howard at D90, D221, D256, D266).

33. Christopher Brooks reported the conduct to the IAB. In turn, by November 17, 2017, the IAB had opened an investigation into Defendant Howard, under C18-95, 2017-45860, based on allegations brought by fellow officer Christopher Brooks (the "2017 sexual

misconduct investigation"). (*See* Pl.'s 56.1 Ex. at 2: Investigations into Defendant Howard at D90, D221, D256, D266).

34. Specifically, the 2017 sexual misconduct investigation sought to discern whether Defendant Howard had disclosed confidential information to C.I. 1 or otherwise solicited her for sex. (*See* Pl.'s 56.1 Ex. at 2: Investigations into Defendant Howard at D90, D221, D256, D266).

35. In the course of their investigation, the IAB learned of "16,431 calls" made between Defendant Howard and C.I. 1 between July 3, 2016 and January 1, 2018. (*See* Pl.'s 56.1 Ex. at 2: Investigations into Defendant Howard at D90).

36. While the 2017 sexual assault investigation was underway, Defendant Howard was handling another female C.I.: Plaintiff. (*See* Pl.'s 56.1 Ex. at 2: Investigations into Defendant Howard at D17-18, D256).

37. Defendant Howard met with Plaintiff alone every time. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42; Pl.'s 56.1 Ex. 4: Howard Deposition at 31:18-23; Pl.'s 56.1 Ex. 5: Bannon Deposition at 19:3-15).

38. Defendant Howard would stalk her. (*See* Pl.'s 56.1 Ex. 1: Reid Deposition at 118:4-20).

39. Defendant Howard would repeatedly call and text her on his department phone until that phone broke and the volume of message increased, at which point he switched to his personal phone. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D50; Ex. 4: Howard Deposition at 97:2-9).

40. Eventually in April and May 2018, although the reason for the meetup was to gather "intel", Defendant Howard sexually assaulted her, at least one time in his NYPD vehicle.

9

(*See* Pl.'s 56.1 Ex. 1: Reid Deposition at 38:5-10, 40:14-20, 46:1-14, 51:10-25; Ex. 2: Investigations into Defendant Howard at D256; Ex. 4: Howard Deposition at 88:5-20, 89:21-90:3).

41. Although Lt. Banon was Defendant Howard's direct supervisor who supervised Howard's dealing with his confidential informants, he had not been present at any meeting between Howard or any of Howard's C.I.'s. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42; Pl.'s 56.1 Ex. 4: Howard Deposition at 31:18-23; Ex. 5: Bannon Deposition at 19:3-15)

42. In June 2018, the IAB launched an investigation into allegations of sexual misconduct by Defendant Howard against Plaintiff pertaining to the April and May assaults (the "IAB investigation in Plaintiff's assaults"). (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D18).

43. As part of the IAB investigation in Plaintiff's assaults, the investigators realized that Defendant Howard had a "prior similar allegation" which had given rise to an earlier investigation that was still ongoing—the 2017 sexual misconduct investigation. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D17-18, D90, D124, D356).

44. Investigators between the two cases repeatedly conferred and shared information regarding the "similar allegations." (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D17-18, D90, D124, D356).

45. Eventually, based upon the allegations brought by Ms. Reid, the NYPD brought and substantiated only three charges: failure to have a supervisor present with C.I. meetings, failure to prepare and complete written reports, a knowingly associating with a person with a criminal history. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42, D48).

46. As a result, Defendant Howard was docked 45 vacation days and placed on probation for a year. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42).

47. The 2017 sexual misconduct investigation closed in October of 2018 and was deemed "unsubstantiated" after Defendant Howard was interviewed and denied the allegations. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D18, D356).

48. At no point did the NYPD bring charges—let alone discipline—Defendant Howard for engaging in sexual misconduct with Plaintiff. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42, D48; Ex. 4: Howard Deposition at 54:15-22).

49. Nor did the NYPD ever provide extra supervision or training. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42, D48; Ex. 4: Howard Deposition at 54:15-22).

50. Instead, not only does Defendant Howard remain employed by the N.Y.P.D., he is currently ranked a Detective Specialist. *See* Gregory Howard, Shield 706, *Officer Profile*, NYPD ONLINE, https://nypdonline.org/link/officer-profile (last visited Jan. 14, 2026).

51. Notwithstanding the above allegations, at no point did the NYPD limit Defendant Howard's authority to work with confidential informants, nor did it provide additional training, supervision, or even the minimal oversight required under its own policies as it pertains to officer and C.I. engagement. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42, D48, D90, D124, D256, D266, D356; Ex. 4: Howard Deposition at 54:15-22; Ex. 5: Bannon Deposition at 10:4-18, 11:14-22).

52. Between 2017 through 2019, Lt. Bannon also supervised another Detective in the 120th Precinct: Brooks Ingram. (*See* Pl.'s 56.1 Ex. 5: Bannon Deposition at 5:17-23, 8:1-13; Ex.

6 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 6: Final Order of Dismissal of Police Officer Brooks Ingram"), at p.7).

53. Brooks Ingram, under Lt. Bannon's supervision had sexual relationships with multiple female witnesses, including an informant, which began around 2017 and continued on for years. (*See* Pl.'s 56.1 Ex. 6: Final Order of Dismissal of Police Officer Brooks Ingram, at p. 7, 8, 9, 10, 11-12).

Dated: Brooklyn, New York
January 16, 2026

KOPKE CHRISTIANA & RASTETTER LLP

By: /s/Matthew Christiana
Matthew Christiana, Esq.
*Attorneys for Plaintiff*
199 Cook Street, Suite 308
Brooklyn, NY 11206
t: (917) 451-9525
e: matt@kcrllp.com

**Via ECF:**

To: Peter Till
pwt@till-law.com
*Attorney for Defendant Howard*

Elissa Beth Jacobs
ejacobs@law.nyc.gov
John McLaughlin
jmclaugh@law.nyc.gov
*Attorney for Defendant City of New York*