# EXHIBIT 1

Page 1

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------------------X
     TAKISHA REID,
 3
                              PLAINTIFF,
 4
                    -against-     Index No.:
 5                                20-CV-3926 (FB)(PK)
 6   THE CITY OF NEW YORK POLICE DEPARTMENT, THE CITY OF NEW
     YORK, NYPD OFFICER GREGORY HOWARD, JOHN DOE AND JANE DOES
 7   1-5,
 8                              DEFENDANTS.
     ------------------------------------------X
 9
10                    DATE: September 28, 2022
11                    TIME: 11:35 A.M.
12
13
14            EXAMINATION BEFORE TRIAL of the Plaintiff,
15   TAKISHA REID, taken by the Defendants, pursuant to an
16   Order, held at the above date and time, before Alexandra
17   Glasgow, a Notary Public of the State of New York.
18
19
20
21
22
23
24
25
```

```
 1    A P P E A R A N C E S:
 2
 3    PAWAR LAW GROUP, PC
             Attorneys for the Plaintiff
 4           TAKISHA REID
             20 Vesey Street, Suite 1410
 5           New York, New York 10007
             BY: VIKRANT PAWAR, ESQ.
 6               DEVON RADLIN, ESQ.
 7    HON. SYLVIA O. HINDS-RADIX
      CORPORATION COUNSEL
 8    NEW YORK CITY LAW DEPARTMENT
             Attorneys for the Defendant
 9           THE CITY OF NEW YORK POLICE DEPARTMENT, THE CITY OF
             NEW YORK
10           100 Church Street
             New York, New York 10007
11           BY: JEFFREY F. FRANK, ESQ.
      File #: 2020-035235
12           Control #: 22-2455
13    LAW OFFICES OF PETER W. TILL
             Attorneys for the Defendant
14           NYPD OFFICER GREGORY HOWARD
             105 Morris Avenue, Suite 201
15           Springfield, New Jersey 07081
             BY: LOUIS J. KELEHER, ESQ.
16
17    ALSO PRESENT:
             Gregory Howard
18
                     *        *        *
19
20
21
22
23
24
25
```

Page 3

```
 1            221. UNIFORM RULES FOR THE
                CONDUCT OF DEPOSITIONS
 2    221.1 Objections at Depositions
      (a) Objections in general. No objections shall be made at a
 3    deposition except those which, pursuant to subdivision (b),
      (c) or (d) of Rule 3115 of the Civil Practice Law and
 4    Rules, would be waived if not interposed, and except in
      compliance with subdivision (e) of such rule.  All
 5    objections made at a deposition shall be noted by the
      officer before whom the deposition is taken, and the answer
 6    shall be given and the deposition shall proceed subject to
      the objections and to the right of a person to apply for
 7    appropriate relief pursuant to Article 31 of the CPLR.
      (b) Speaking objections restricted.  Every objection raised
 8    during a deposition shall be stated succinctly and framed
      so as not to suggest an answer to the deponent and, at the
 9    request of the questioning attorney, shall include a clear
      statement as to any defect in form or other basis of error
10    or irregularity.  Except to the extent permitted by CPLR
      Rule 3115 or by this rule, during the course of the
11    examination persons in attendance shall not make statements
      or comments that interfere with the questioning.
12    221.2 Refusal to answer when objection is made. A deponent
      shall answer all questions at a deposition, except (i) to
13    preserve a privilege or right of confidentiality, (ii) to
      enforce a limitation set forth in an order of the court, or
14    (iii) when the question is plainly improper and would, if
      answered, cause significant prejudice to any person.  An
15    attorney shall not direct a deponent not to answer except
      as provided in CPLR Rule 3115 or this subdivision.  Any
16    refusal to answer or direction not to answer shall be
      accompanied by a succinct and clear statement of the basis
17    therefor.  If the deponent does not answer a question, the
      examining party shall have the right to complete the
18    remainder of the deposition.
19
20
21
22
23
24
25
```

                                                              Page 4

1              221. UNIFORM RULES FOR THE
                  CONDUCT OF DEPOSITIONS
2
   221.3 Communication with the deponent
3              An attorney shall not interrupt the deposition
   for the purpose of communicating with the deponent unless
4  all parties consent or the communication is made for the
   purpose of determining whether the question should not be
5  answered on the grounds set forth in section 221.2 of these
   rules and, in such event, the reason for the communication
6  shall be stated for the record succinctly and clearly.
7
               IT IS FURTHER STIPULATED AND AGREED that the
8  transcript may be signed before any Notary Public with the
   same force and effect as if signed before a clerk or a
9  Judge of the court.
10
               IT IS FURTHER STIPULATED AND AGREED that the
11 examination before trial may be utilized for all purposes
   as provided by the CPLR.
12
13             IT IS FURTHER STIPULATED AND AGREED that all
   rights provided to all parties by the CPLR cannot be deemed
14 waived and the appropriate sections of the CPLR shall be
   controlling with respect hereto.
15
16             IT IS FURTHER STIPULATED AND AGREED by and
   between the attorneys for the respective parties hereto
17 that a copy of this examination shall be furnished, without
   charge, to the attorneys representing the witness
18 testifying herein.
19
20
21
22
23
24
25

```
1    T A K I S H A   R E I D, called as a witness, having been
2    first duly sworn by a Notary Public of the State of New
3    York, was examined and testified as follows:
4    EXAMINATION BY
5    MR. KELEHER:
6        Q.    Please state your name for the record.
7        A.    Takisha Reid.
8        Q.    What is your address?
9        A.    ████████████████████████████████████████
10   ████████████████████████
11       Q.    Ms. Reid, I apologize for the delay.  We were on
12   the phone with the court working out some issues before the
13   deposition started.
14             Again, my name is Louis Keleher.  I'm an
15   associate attorney with the Law Office of Peter W. Till.
16   We represent defendant NYPD Officer Gregory Howard in
17   connection to a lawsuit you filed on August 25th, 2020
18   before the United States District Court Eastern District of
19   New York.  We are here virtually for the purposes of your
20   deposition.
21             Have you ever been deposed before?
22       A.    Yes.
23       Q.    When was that?
24       A.    March in 2020.
25       Q.    What was that deposition for?
```

1    A.    Did you say international?

2    Q.    Internal. I may have said international. I
3 apologize.

4    A.    Yes, I did.

5    Q.    Did this complaint include allegations of rape or
6 sexual assault regarding Greg Howard?

7          MR. PAWAR: Objection.

8    A.    Yes.

9    Q.    When you made that complaint, you reported that?

10   A.    Yeah, I reported it to the CCRB.

11   Q.    Do you recall telling Jewish Family Services that
12 you were happy to find out that Greg Howard had several
13 lawsuits filed against him by two other women and four men?

14   A.    Yes, I did.

15   Q.    Why did that make you happy?

16   A.    Because it shows a pattern that he's done this
17 before.

18   Q.    When you found out about those lawsuits, is that
19 when you decided to file your own lawsuit against Greg
20 Howard?

21         MR. PAWAR: Objection to form.

22   A.    No.

23   Q.    Do you recall telling Jewish Family Services that
24 your interview with the Bureau of Internal Affairs did not
25 go well because of the harsh questions and their

1   and he asked me if I was attracted to him and I told him,
2   no, and he said, why, is it because I'm fat and I said,
3   yes, it's because you're fat and I just want to keep it
4   professional. I'm not attracted to you in that way.
5   That's what I told IAB.
6           MR. PAWAR: Devon is on. I'll be here but
7       she'll do the objections. Ms. Reid, Devon is on
8       the line. Sorry to interrupt.
9   Q.   So you failed to tell IAB that Detective Howard
10  raped you or committed acts of sexual violence; is that
11  correct?
12          MS. RADLIN: Objection to form.
13  A.   Excuse me, you said I did what?
14  Q.   You did not tell IAB that Detective Howard raped
15  you or had committed a sexual assault against you; is that
16  correct?
17  A.   Yes, I did tell them that because they asked me
18  how did it happen, and I told them what happened the night
19  that -- in April, when the first incident happened. Of
20  course, because I'm making the complaint.
21  Q.   Ms. Reid, I just asked you what you told them and
22  you didn't say that you told them Detective Howard raped
23  you.
24  A.   I told them what happened. Just because he
25  wasn't -- he didn't physically but he caught me off guard.

1    Q.    So the first instance was in April, which you
2    previously described, correct?
3    A.    Yes.
4    Q.    What was the second instance?
5    A.    The second incident was May 25th of 2018.  It was
6    in front of my house.
7    Q.    What happened?
8    A.    Howie came to pick me up.  He brought me -- when
9    he came to pick me up, I noticed he didn't have any boxer
10   shorts on.  He just had a wife beater and shorts.  He had
11   been drinking.  He had been drinking all night.  He came
12   with a cup of Hennessy, and he took me to my house and
13   that's when the second encounter happened.  He basically
14   put my head down so I could suck his dick.
15   Q.    What car was Detective Howard driving when he
16   came to your house?
17   A.    His car, a black car.
18   Q.    What type of car?
19   A.    I don't know the model.
20   Q.    Was anyone else present at your home when this
21   occurred?
22   A.    Yes, my son, and my son's baby mother.
23   Q.    How old is your son?
24   A.    He's 30 now.
25   Q.    What time of day was this?

1    Q.    Again, did --

2    A.    No, no, no, and no.

3    Q.    Thank you.  And you never reported either of

4    these incidents to the New York Police Department, the

5    sexual victim unit, did you?

6    A.    No but CCRB referred my case to the Staten Island

7    Richmond County DA's office, though.  That's what they did

8    do after the first incident happened with Detective Howard.

9    They reported it to the DA out there in Staten Island.

10   Q.    What did the DA do with your information?

11   A.    We talked.  She called me.  I told her what

12   happened.  I told her how Detective Howard was threatening

13   me and told me how would I like it if the people that I

14   gave him and if they knew it was me, how would I like it if

15   he told the people that I gave Mr. Howard, that it was me

16   that gave them.  That's what I talked to the DA about and I

17   talked to her about the first incident, what he did to me,

18   how he got me to sleep with him when I told her I was not

19   interested with him in that way.  He still kept pushing.

20   He wouldn't let up.  He kept pushing.  So whether he raped

21   me physically and held me down, no, he didn't do that.  But

22   he still raped me because when I told him I wasn't

23   interested him in that way, he didn't light up.  He still

24   kept going.  He kept going until he got what he wanted from

25   me.  Afterwards, he tried to threaten me, out me to people.

T. REID

Page 59

1   Q.   No.
2   A.   Okay. So no, he didn't. He's not a reporter.
3   He's a crooked cop.
4   Q.   And what was the purpose for you wanting this
5   article to be put out if you were so nervous about people
6   finding out you were a confidential informant?
7        MS. RADLIN:  Objection to form.
8   Q.   You can answer.
9   A.   I didn't want my picture in the paper.
10  Q.   Why did you provide it then?
11       MS. RADLIN:  Objection to form.
12  A.   I provided it because my lawyer asked me.
13  Q.   You didn't tell your lawyer that you didn't want
14  this photo in the paper?
15  A.   Yes, I did. I told him that I didn't want people
16  to find out.
17  Q.   But you still sat for the interview, and allowed
18  the article to be published, correct?
19       MS. RADLIN:  Objection to form.
20  A.   Yes, I'm not supposed to answer questions and
21  tell my story?
22       MR. PAWAR:  You can answer.
23  Q.   You can tell your story, Ms. Reid. I'm asking
24  you about you're saying you're so afraid that Mr. Howard
25  was going to expose you as a confidential informant,

Diamond Reporting
800.727.6396                A Veritext Company                www.veritext.com

T. REID

Page 118

1        MR. PAWAR:  Objection to form.
2    A.    Allowing him to have informants and to take
3  advantage.
4    Q.    Can you describe that a little more.  What do you
5  mean by that?
6        MR. PAWAR:  Objection to form.
7    A.    He took advantage of me.  He took advantage of
8  me, like the first time he saw me.  He would just let up.
9  I would be in my neighborhood and I would see Howie just
10  rolling around, and he worked in the opposite direction.
11  What are you doing on my street?  Why are you in my
12  neighborhood when you're supposed to be on your way to work
13  but you're stalking me?
14    Q.    When you say stalk you, what do you mean?
15    A.    He was following me.  You're in my neighborhood.
16  You're over there.  I saw him.  I was jogging.  I was
17  jogging one day and he drove by and he was breaking his
18  neck to get my attention, and I was actually talking to
19  someone I knew from way back when, when I was in junior
20  high school.
21    Q.    Who was that, that you were talking to?
22    A.    I was talking to a manager from when I was a
23  teenager, middle school.  I used to sing and he was my
24  manager.  We hadn't seen each other for so long.  We were
25  catching up.  That's when I saw Detective Howard.  He drove

```
 1                    C E R T I F I C A T E
 2
 3    STATE OF NEW YORK        )
                                : SS.:
 4    COUNTY OF ORANGE         )
 5
 6          I, ALEXANDRA GLASGOW, a Notary Public for and
 7    within the State of New York, do hereby certify:
 8          That the witness whose examination is
 9    hereinbefore set forth was duly sworn and that such
10    examination is a true record of the testimony given by that
11    witness.
12          I further certify that I am not related to any
13    of the parties to this action by blood or by marriage and
14    that I am in no way interested in the outcome of this
15    matter.
16          IN WITNESS WHEREOF, I have hereunto set my hand
17    this 6th day of October 2022.
18
19
20                            _____
                                   ALEXANDRA GLASGOW
21
22
23
24
25
```