# EXHIBIT 4

```
1   UNITED STATES DISTRICT COURT
2   EASTERN DISTRICT OF NEW YORK
3   -------------------------------------------------
4   TAKIESHA REID,
5
6            Plaintiff,
7    -vs-                          INDEX NO. 20 CV 3926(FB)(PK)
8   THE CITY OF NEW YORK,
    GREGORY HOWARD,
9   JOHN AND JANE DOES 1-5,
10
             Defendants.
11
    -------------------------------------------------
12         EXAMINATION BEFORE TRIAL OF GREGORY HOWARD
13                   APPEARING REMOTELY FROM
14                   NEW YORK CITY, NEW YORK
15
16
17              Wednesday, October 26th, 2022
18                  10:00 p.m. - 12:10 p.m.
19                      pursuant to notice
20
21  REPORTED BY:
22  Kelly Hairston, Notary Public
23  APPEARING REMOTELY FROM ERIE COUNTY, NEW YORK

                  CONFIDENTIAL PORTIONS REDACTED
```

**R E M O T E   A P P E A R A N C E S**

APPEARING FOR THE PLAINTIFF:

    **VIK PAWAR LAW, PLLC,**
    BY: **VIK PAWAR, ESQ.,**
    20 Vesey Street, Suite 1410,
    New York, New York 10007,
    (212) 571-0805.

APPEARING FOR THE DEFENDANT DETECTIVE GREGORY HOWARD:

    **LAW OFFICES OF PETER TILL,**
    BY: **PETER W. TILL, ESQ.,**
    105 Morris Avenue,
    Springfield Township, New Jersey 07081,
    (973) 258-0064.

APPEARING FOR THE DEFENDANT CITY OF NEW YORK:

    **NEW YORK CITY LAW DEPARTMENT,**
    **FEDERAL LITIGATION DIVISION,**
    **ASSISTANT CORPORATION COUNSEL,**
    BY: **JEFFREY FRANK, ESQ.,**
    100 Church Street,
    New York, New York, 10007,
    (212) 356-3541.

**I N D E X**

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| Gregory Howard | | |
| | by Mr. Pawar | 04 |
| | by Mr. Frank | 96 |
| | by Mr. Pawar | 98 |

**EXHIBITS**

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| | **NO EXHIBITS WERE MARKED** | |

**REPORTED REMOTELY FROM NEW YORK CITY, NEW YORK**

THE REPORTER: Will the attorneys participating in this deposition acknowledge that I will administer the oath remotely, and consent to waive any objections to this manner of reporting?

Please indicate your agreement by stating your name, who you represent and your agreement on the record, starting with the noticing attorney.

MR. PAWAR: Vik Pawar for the plaintiff. Yes, I consent.

MR. TILL: Peter Till for Mr. -- for Detective Howard. Yes, we consent.

MR. FRANK: Jeffrey Frank for the City of New York. We consent.

**DETECTIVE GREGORY HOWARD,**

having been first duly sworn, was examined and testified as follows:


EXAMINATION

BY MR. PAWAR:

Q. Detective Howard, my name is Vik Pawar. I represent plaintiff Takiesha Reid. You and I have never met

1       from the 123 squad, I went to the 122 squad.
2   Q.  Are you aware that as part of the protocol policies,
3       you're supposed to hang onto every piece of paperwork
4       that's department property?
5           MR. TILL:  Objection as to form.  Go ahead and
6       answer the question.
7           THE WITNESS:  Yes.
8
9   BY MR. PAWAR:
10  Q.  And do you know what happens if you misplace department
11      property?
12          MR. TILL:  Objection as to form.  Go ahead and
13      answer it.
14          THE WITNESS:  I found out what happened through the
15      IAB investigation, yes.
16
17  BY MR. PAWAR:
18  Q.  What happened?
19  A.  I was -- they took 45 days.
20  Q.  45 days for missing paperwork?
21  A.  For missing paperwork and not having a supervisor
22      present at all times and for knowingly speaking with
23      a -- knowingly speaking with a known criminal.

1        MR. TILL:  As to that question, as to that question,

2    I'll instruct Detective Howard to assert his Fifth

3    Amendment right to remain silent.

4        MR. PAWAR:  Okay.

5

6  BY MR. PAWAR:

7  Q. Detective Howard, did you have any sexual relationship

8     with any other CIs?

9        MR. TILL:  Objection, go ahead.

10       THE WITNESS:  Fifth Amendment?

11       MR. TILL:  Um-hmm.

12       THE WITNESS:  I invoke my Fifth Amendment.

13

14 BY MR. PAWAR:

15 Q. Did you ever meet with Ms. Reid at a bar?

16       MR. TILL:  I'm sorry, I didn't hear that and I

17    apologize.

18

19 BY MR. PAWAR:

20 Q. I said, did you ever meet Ms. Reid at a bar or

21    restaurant?

22 A. No.

23 Q. Would you answer still the Fifth Amendment if I asked

```
 1          you if Ms. Reid ever had any sexual encounters with
 2          you?
 3              MR. TILL:  I'll instruct my client to assert his
 4          Fifth Amendment right to remain silent.
 5              THE WITNESS:  I assert my Fifth Amendment.
 6
 7     BY MR. PAWAR:
 8     Q. Okay.  Going forward, you can just say Fifth Amendment
 9          and we'll all know what that means, Detective Howard,
10          after your lawyer says so.
11              Did Ms. Reid ever get you any gifts for Christmas?
12     A. No.
13     Q. Did you ever get any gifts for Christmas from Ms.
14          Reid?
15     A. No.
16     Q. Did you and Ms. Reid ever exchange any gifts for any
17          other occasion?
18     A. No.
19     Q. Detective, do you know the difference between
20          consensual sex and rape?
21              MR. TILL:  Objection as to form, instructing the
22          client to go ahead and assert his Fifth Amendment right
23          to remain silent.
```

1            THE WITNESS:  Fifth Amendment.
2
3       BY MR. PAWAR:
4       Q. Do you know that Ms. Reid made an allegation that you
5          and her had sexual relations?
6            MR. TILL:  I'm instructing my client to assert his
7          Fifth Amendment right to remain silent.
8            THE WITNESS:  Fifth Amendment.
9
10      BY MR. PAWAR:
11      Q. Did you ever tell Ms. Reid that you would deactivate
12         her as a CI because you wanted to date her?
13      A. No.
14      Q. Did you ever want to date Ms. Reid?
15      A. No.
16      Q. Did you ever make any sexual overtures to Ms. Reid?
17           MR. TILL:  Objection, I'm directing the client to
18         assert his Fifth Amendment right to remain silent.
19           THE WITNESS:  Fifth Amendment.
20
21      BY MR. PAWAR:
22      Q. Did you have any romantic -- withdraw that.
23           Did you have any sort of a romantic relationship

1    activity, what type of responsibilities do you have?
2       MR. TILL:  Objection as to form.  Go ahead and
3    answer the question.
4       THE WITNESS:  I do not know because most
5    confidential informants are doing illegal activity.
6
7  BY MR. PAWAR:
8  Q. So you personally would not do anything about the fact
9    that a CI was engaging in illegal activity?
10  A. To my knowledge, no.
11  Q. Who is the person who supervised your contacts with the
12    CI?
13  A. It would be Lieutenant Bannon.
14  Q. And what type of supervision did he give you when it
15    came to contacting the CI?
16  A. It was just told read the patrol guide and that was
17    it.
18  Q. And did he make sure that the patrol guide was -- that
19    you read the patrol guide?
20  A. I do not know.
21  Q. Well, what would you do after you read the patrol
22    guide, would you sign an affidavit saying I read the
23    patrol guide?

1    A. No.
2    Q. Then you would just tell him verbally that I read the
3       patrol guide?
4    A. If asked, I would have read it and told him.
5    Q. And if he didn't ask, you didn't volunteer?
6    A. No.
7    Q. And you had said earlier that when you started working
8       as a detective in 2017, you were not aware of any
9       training materials with respect to CIs?
10   A. No, I was not.
11   Q. Did you ever come to learn about any training materials
12      with respect to CIs?
13   A. No.
14   Q. To this day, you still don't know about training
15      materials with respect to CIs?
16   A. Just the patrol guide.
17   Q. Besides the patrol guide?
18   A. I don't know of any.
19   Q. Besides the patrol guide?
20   A. Besides the patrol guide, I don't know of any.
21   Q. So in 2017 when you became a detective, you were aware
22      of the provisions in the patrol guide with respect to
23      CIs?

1     A. No.

2     Q. When did you first learn about the provisions of the CI

3        in the patrol guide?

4     A. In October 2017.

5     Q. How did you learn about it?

6     A. Read them.

7     Q. Did you read them at home or at the precinct?

8     A. The precinct.

9     Q. Did someone direct you to read them?

10    A. No.

11    Q. You just read them on your free time?

12    A. Yes.

13    Q. And did somebody make sure that you had read them?

14    A. No.

15    Q. So it was just your Scout's honor word that you read

16       them; is that fair?

17          MR. TILL:  Objection as to form.  Go ahead and

18       answer the question.

19          THE WITNESS:  Yes.

20

21    BY MR. PAWAR:

22    Q. And you said you never received any training with

23       respect to CI; correct?

1    A. No.
2    Q. I'm halfway through, I think. Can we take a --
3       Detective Howard, you want to take a 5, 10 minute
4       break?
5          MR. TILL: 5 minutes will be fine.
6          MR. PAWAR: So come back in 5 minutes.
7          (Brief pause in proceedings.)
8
9    BY MR. PAWAR:
10   Q. Detective Howard, have you ever been arrested?
11   A. No.
12   Q. Did the department, the NYPD, accuse you of sexual
13      misconduct?
14   A. No.
15   Q. Did they ever discipline you for sexual misconduct?
16   A. No.
17   Q. Did they ever train you after there were allegations
18      made about sexual misconduct?
19   A. No.
20   Q. Did they ever enhance your supervision while somebody
21      was making an allegation about sexual misconduct?
22   A. I was put on probationary dismissal for a year.
23   Q. What year was that?

1       assert his Fifth Amendment right to remain silent.
2           THE WITNESS:  Fifth Amendment.
3
4    BY MR. PAWAR:
5    Q. Do you know what consensual sex is?
6           MR. TILL:  Objection as to form and directing my
7       client to assert his Fifth Amendment right to remain
8       silent.
9           THE WITNESS:  Fifth Amendment.
10
11   BY MR. PAWAR:
12   Q. And I know you had taken the Fifth Amendment with
13      respect to sexual relations with Ms. Reid.  Would it be
14      fair to say -- or I can go one by one.  Would it be
15      fair to say that by sexual relations, you also mean to
16      include oral sex, anal sex, and vaginal sex?
17          MR. TILL:  Objection as to form.  I'm directing my
18      client to assert his Fifth Amendment right to remain
19      silent.
20          THE WITNESS:  Fifth Amendment.
21
22   BY MR. PAWAR:
23   Q. Detective Howard, did you ever have oral sex with Ms.

1      Reid?
2          MR. TILL:  Objection as to form.  I'm directing my
3      client to assert his Fifth Amendment right to remain
4      silent.
5          THE WITNESS:  Fifth Amendment.
6
7  BY MR. PAWAR:
8  Q. How about vaginal sex?
9          MR. TILL:  Objection as to form.  I'm directing my
10     client to assert his Fifth Amendment right to remain
11     silent.
12         THE WITNESS:  Fifth Amendment.
13
14 BY MR. PAWAR:
15 Q. Anal sex?
16         MR. TILL:  Objection as to form, directing my client
17     to assert his Fifth Amendment right to remain silent.
18         THE WITNESS:  Fifth Amendment.
19
20 BY MR. PAWAR:
21 Q. Did you ever threaten Ms. Reid that you would expose
22     her if she didn't give in to your sexual demands?
23         MR. TILL:  Objection as to form and I'm directing my

1      client to assert his Fifth Amendment right to remain
2      silent.
3          THE WITNESS:  Fifth Amendment.
4
5   BY MR. PAWAR:
6   Q. Do you know if Ms. Reid ever tape recorded your
7      conversations with her?
8   A. I don't know.
9   Q. And if she did and some of your answers today were
10     inconsistent -- I'll withdraw that question.
11         Do you know if Ms. Reid is lying about the fact that
12     she had a sexual relationship with you?
13         MR. TILL:  Objection as to form.  I'm directing the
14     client to assert his Fifth Amendment right to remain
15     silent.
16         MR. PAWAR:  Before you answer, let me just clarify
17     that question.
18         MR. TILL:  You want to withdraw it?
19         MR. PAWAR:  I'll withdraw it, yes.
20         MR. TILL:  Yeah, that's good.
21
22  BY MR. PAWAR:
23  Q. Do you -- is Ms. Reid lying about having a sexual

1   A. Yes.
2   Q. Did you ever have text messages, exchange text messages
3      with Ms. Reid?
4   A. Yes.
5   Q. In what phone did you use to exchange those text
6      messages?
7   A. My phone.
8   Q. Your personal phone or your department phone?
9   A. My personal phone.  My department phone was broke.
10  Q. And do you still have the same personal phone?
11  A. Yes, I do.
12  Q. You still have those text messages?
13  A. No.
14  Q. Why not?
15  A. I've had two phones since then.
16  Q. I see.  So you don't have the same phone that you had
17     at the time you texted Ms. Reid?
18  A. No.
19  Q. Okay.  Would those text messages be backed up
20     anywhere?
21  A. Not on my phone.
22  Q. Earlier you also testified you met with Ms. Reid in
23     person on a street corner near her house; is that

```
1    STATE OF NEW YORK)
                 )    ss.
2    COUNTY OF ERIE   )

3
     I, Kelly S. Hairston, Notary Public, in and for the County
4    of Erie, State of New York, do hereby certify:

5
          That the witness whose testimony appears hereinbefore
6    was, before the commencement of their testimony, duly
     sworn to testify the truth, the whole truth and nothing
7    but the truth; that said testimony was taken pursuant to
     notice at the time and place as herein set forth; that
8    said testimony was taken down by me and thereafter
     transcribed into typewriting, and I hereby certify the
9    foregoing testimony is a full, true and correct
     transcription of my shorthand notes so taken.
10

11        I further certify that I am neither counsel for nor
     related to any party to said action, nor in any way
12   interested in the outcome thereof.

13
          IN WITNESS WHEREOF, I have hereunto subscribed my
14   name and affixed my seal this 15th day of November, 2022.

15

16   [signature: Kelly Hairston]

17   Kelly S. Hairston
     Notary Public,
18   State of New York, County of Erie
     My commission expires 08/29/2026.

19

20

21

22

23
```