20-CV-3926 (PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TAKISHA REID,

                                      Plaintiff,

- against -

THE CITY OF NEW YORK, *et al.*,

                                      Defendants.

**PLAINTIFF TAKISHA REID'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REOPEN EXPERT DISCOVERY**

**KOPKE CHRISTIANA & RASTETTER LLP**
*199 Cook Street,*
*Suite 308*
*Brooklyn, N.Y. 11206*

January 23, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... I
PRELIMINARY STATEMENT ............................................................................................... 1
STATEMENT OF FACTS ......................................................................................................... 2
ARGUMENT ............................................................................................................................... 4
    GOOD CAUSE SUPPORTS LIMITED AND EXPEDITED REOPENING OF EXPERT DISCOVERY ........................................................................................................................ 4
CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

CASES

*Benn v. Metro-N. Commuter R.R. Co.*, No. 3:18-CV-737 (CSH), 2019 WL 6467348 (D. Conn. Dec. 2, 2019) ............................................................................................................. 9, 11

*Betts v. Sixty Lower E. Side, LLC*, No. 20 CIV. 4772 (NRB), 2025 WL 1795362 (S.D.N.Y. June 30, 2025) ................................................................................................................... 6

*George v. Edwards*, No. 01-CV-6481(JBW), 2003 WL 22964391 (E.D.N.Y. Sept. 4, 2003) .. 7, 9

*Giordano v. PGT Indus., Inc.*, No. 04- CV-9246, 2007 WL 4233002 (S.D.N.Y. Nov. 30, 2007) - 5

*Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003) ......................................................... 4

*Jacobs v. New York City Dep't of Educ.*, No. 11CV5058MKBRML, 2015 WL 7568642 (E.D.N.Y. Nov. 24, 2015) ..................................................................................... passim

Krawec v. Kiewit Constructors Inc., No. 11-CV-123, 2013 WL 1104414 (S.D.N.Y. Mar. 1, 2013) ............................................................................................................................ 4

*Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511 (E.D.N.Y. 2018) ............................... 5, 8, 9

*Sci. Components Corp. v. Sirenza Microdevices, Inc.,* No. 03-CV-851, 2008 WL 4911440 (E.D.N.Y. Nov. 13, 2008) .............................................................................................. 5

*Torres v. Dematteo Salvage Co. Inc.*, No. CV14774ADSAKT, 2016 WL 845326 (E.D.N.Y. Mar. 2, 2016) ............................................................................................................ 4, 5, 8, 9

*United States v. Raniere*, No. 18CR2041NGGVMS, 2019 WL 2212639 (E.D.N.Y. May 22, 2019) ......................................................................................................................... 7, 9

*Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004) ............................................................ 4

*Young v. Sw. Airlines Co.*, No. 14CV1940LDHRLM, 2016 WL 3257008 (E.D.N.Y. May 4, 2016) .................................................................................................................. 8, 10, 11

OTHER AUTHORITIES

Jennifer Temkin, "And Always Keep a-Hold of Nurse, for Fear of Finding Something Worse": Challenging Rape Myths in the Courtroom, 13 New Crim. L. Rev. 710 (2010), https://openaccess.city.ac.uk/id/eprint/2527/1/NCLR1304_05.pdf ............................. 1

Rules

Fed. R. Civ. P. 37(c)(1)(A) --------------------------------------------------------------------------------- 9

## PRELIMINARY STATEMENT

Sexual assault cases are inherently complex—particularly where the assailant occupies a position of authority over the victim. In such cases, jurors are often confronted with questions rooted in misconception rather than experience, including, why a victim may continue to communicate with an assailant, delay reporting the assault, remain in a professional relationship, or fail to physically resist.[1] These questions arise because the psychological processing of sexual trauma is neither intuitive nor within the common understanding of lay jurors. As a result, courts have long recognized the necessity of expert testimony to explain the well-documented dynamics of trauma, coercion, and power imbalance that shape victim behavior. Such testimony assists the trier of fact by providing scientific and psychological context and by dispelling common but inaccurate assumptions about how victims of sexual assault "should" or "would" behave.

Expert testimony is particularly necessary here. Plaintiff's post-assault conduct—including continued interactions with Defendant Howard, delayed reporting, and constrained responses—are precisely the types of behaviors that risk being misunderstood by lay jurors absent expert explanation of how sexual-assault trauma manifests when the perpetrator holds institutional authority over the victim. Expert testimony will provide the jury with the appropriate framework to evaluate Plaintiff's conduct fairly and in accordance with established psychological science. Although discovery has closed, Plaintiff seeks only a limited reopening of expert discovery to obtain this critical evidence. The relevant factors governing motions to reopen discovery weigh in Plaintiff's favor, and any potential prejudice is further mitigated by Plaintiff's willingness to share in the costs associated with Defendants' deposition of the expert, should they elect to do so.

---

[1] *See e.g.*, Jennifer Temkin, "And Always Keep a-Hold of Nurse, for Fear of Finding Something Worse": Challenging Rape Myths in the Courtroom, 13 *New Crim. L. Rev.* 710 (2010), https://openaccess.city.ac.uk/id/eprint/2527/1/NCLR1304_05.pdf (last accessed Jan. 20, 2026).

## STATEMENT OF FACTS[2]

Plaintiff was recruited by Defendant Gregory Howard to be his confidential informant ("CI") in October 2017. ECF No. 87 at 2. While serving in that capacity, Defendant Howard persistently pursued her sexually, and, on several occasions, sexually assaulted her. The first sexual assault occurred in April 2018. *Id*. at 2-3. The second sexual assault occurred approximately one month later, in May 2018. *Id*.

Approximately one month after the second sexual assault, Plaintiff lodged an anonymous report to the Civilian Complaint Review Board ("CCRB") and informed them that Defendant Howard had sex with her. ECF No. 78 at ¶7-8, ECF No. 79 at 4. Although she attempted to remain anonymous, the NYPD Internal Affairs Bureau ("IAB") was informed of the allegation and eventually tracked Plaintiff down. ECF No. 78 at ¶7-8; ECF No. 81-4 at 8. Plaintiff was hesitant to speak with IAB—understandably afraid—but she ultimately did. ECF No. 81-5 at 3, 81-6 (Plaintiff's Deposition) at 57:1-9. During the conversations with IAB, she informed them that, *inter alia*, she was pressured and felt vulnerable due to Defendant Howard's position and authority as a police officer. ECF No. 81-6 (Plaintiff's Deposition) 41:2-7, 53:18-025, 57:1-9.

Nevertheless, Plaintiff continued to speak with Howard, and he gave her a Christmas present in December 2018. *See* ECF No. 81-8 at ¶ 48. Eventually, Plaintiff sought counseling and therapy for the sexual assaults and resulting trauma. During therapy, one of the counselor's interpreted a statement made by Plaintiff to suggest that Howard was her "boyfriend" and that they were in a "relationship" of sorts. ECF No. 87 at 5.

On August 25, 2020, Plaintiff commenced the instant action. *See* ECF No. 1. During discovery, Plaintiff was deposed, and testified that, notwithstanding that she had reported

---

[2] For brevity, the Statement of Facts section relays only the facts relevant to Plaintiff's motion.

2

Defendant Howard to the CCRB, a few months later, she still met up with him to exchange Christmas presents. *See* ECF No. 81-6 (Plaintiff's Deposition) at 74:9-14.

On November 4, 2022, the parties filed a joint report indicating that discovery had closed. ECF No. 57.[3] Following the close of discovery, Defendant Howard and Defendant City of New York each moved for summary judgment. ECF Nos. 75-84. Defendant Howard's motion for summary judgment was denied, but the City's motion was granted. *See* ECF. No. 87.

In February 2025, Plaintiff retained current counsel. *See* ECF No. 127 at 2. Two months later, Plaintiff, through current counsel, filed a motion pursuant to Rule 60(b), for partial relief from the Order and Judgment dismissing the City of New York as it pertains to the negligent supervision claim. ECF. No. 112. On December 19, 2025, this Court granted Plaintiffs motion. ECF. No. 127. On January 16, 2026, Plaintiff filed her opposition to Defendant City's motion. ECF No. 130. Defendant's reply, if any, is due by January 30, 2026. *See* ECF No. 127

In reviewing the arguments in both Defendants' summary judgment motions while preparing Plaintiff's opposition to Defendant City's motion— shifting focus from legal sufficiency at summary judgment to what evidence would persuade a jury *at trial*—the need for expert testimony became evident. *See* Declaration of Matthew Christiana ¶¶ 3-4. In particular, the motions for summary judgment emphasized Plaintiff's post-assault conduct—including her continued contact with Defendant Howard and post-assault comments—as purportedly inconsistent with her allegations of sexual assault. *See id.*; ECF No. 78 (Defendant City's 56.1 Statement) at ¶ 14, 18; *e.g.* ECF No. 79 (Defendant City's Memorandum of Law) at ECF p. 7, 10-

---

[3] Although no expert discovery date had been set, the parties seemingly certified the close of all discovery, without indicating whether expert discovery was sought by any party. *See* ECF Nos. 45, 57, and text only docket entry, November 7, 2022.

3

11; ECF No. 81-9 (Defendant Howard's Memorandum of Law).[4]  The Court's decision denying summary judgment as to Defendant Howard noted these facts but found them insufficient to grant summary judgment. *See* ECF No. 87 at 7-8. However, the prominence of these behavioral arguments in Defendants' briefing, and their obvious appeal to common lay assumptions about how sexual assault victims "should" behave, make clear that expert testimony will be essential at trial. While these facts were legally sufficient to survive summary judgment, *see* ECF No. 87 at 7-8, they require expert contextualization to provide the jury with the proper psychological and scientific framework for evaluating Plaintiff's conduct *See* Declaration of Matthew Christiana ¶¶ 3-4.

## ARGUMENT

### GOOD CAUSE SUPPORTS LIMITED AND EXPEDITED REOPENING OF EXPERT DISCOVERY

The decision to reopen discovery to permit disclosure of an expert witness is within the District Court's discretion. *See e.g.*, *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (a district court has "broad discretion to direct and manage the pre-trial discovery process."); *Torres v. Dematteo Salvage Co. Inc.*, No. CV14774ADSAKT, 2016 WL 845326, at *4 (E.D.N.Y. Mar. 2, 2016).  "As a general rule, discovery should only be re-opened for good cause, depending on the diligence of the moving party." *Torres*, 2016 WL 845326, at *4 (citing *Krawec v. Kiewit Constructors Inc.*, No. 11-CV-123, 2013 WL 1104414, at *8 (S.D.N.Y. Mar. 1, 2013)); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003).

District Courts apply a six-part test when analyzing a motion to reopen discovery:

---

[4] Defendant Howard also suggested "Plaintiff is a former prostitute" and had a "disastrous life as an escort", seemingly in an attempt to perpetuate an argument that an escort cannot engage in non-consensual acts. *See e.g.* ECF No. 81-9 at 9, 12 (Defendant Howard's Memorandum of Law in Support of his Motion for Summary Judgment).

4

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Jacobs v. New York City Dep't of Educ.*, No. 11CV5058MKBRML, 2015 WL 7568642, at *4 (E.D.N.Y. Nov. 24, 2015).

Generally, exclusion of expert testimony is severe and disfavored. Indeed, "[e]xclusion of expert testimony is 'a drastic remedy' and courts have recognized that 'precluding testimony of any expert, even where there has not been strict compliance with Rule 26, may at times tend to *frustrate* the Federal Rules' overarching objectives of doing substantial justice to litigants.'" *Torres,* 2016 WL 845326 at *3 (emphasis added) (citing *Sci. Components Corp. v. Sirenza Microdevices, Inc.,* No. 03-CV-851, 2008 WL 4911440 at *4 (E.D.N.Y. Nov. 13, 2008) (collecting cases). Accordingly, "the exclusion of expert testimony 'should only be applied in those *rare cases* where a party's conduct represent flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." *Id* (citing *Giordano v. PGT Indus., Inc.*, No. 04- CV-9246, 2007 WL 4233002, at *4 n.2 (S.D.N.Y. Nov. 30, 2007) (emphasis added); *see also Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 525 (E.D.N.Y. 2018) (granting motion to reopen expert discovery because exclusion would be "drastic" notwithstanding that the moving party in a six-year long case had only *one factor* weigh in their favor: that no trial date was set).

Reopening discovery for the limited purpose of permitting Plaintiff to disclose an expert is warranted here. Plaintiff plans to retain an expert qualified to opine on the psychological effects of sexual-assault trauma and common victim response patterns, in conjunction with an evaluation of Plaintiff's psychological injuries. And Plaintiff has already identified her proposed expert: Dr.

5

Julie Medlin. *See* Christiana Declaration ¶ 5. Dr. Medlin is a highly qualified licensed psychologist and trauma expert, with over 30 years of clinical experience, specializing in sexual trauma, and has testified more than 250 times on this subject matter in federal and state courts across 14 states. *See id.* at ¶ 6, Exhibit 1 (Dr. Julie C. Medlin Curriculum Vitae).[5] As Judge Buchwald recently opined when evaluating Dr. Medlin as a *defense expert*, "there can be no doubt that Dr. Medlin is amply qualified to testify." *Betts v. Sixty Lower E. Side, LLC*, No. 20 CIV. 4772 (NRB), 2025 WL 1795362, at *4 (S.D.N.Y. June 30, 2025). Although Plaintiff has been in contact with Dr. Medlin, Plaintiff is awaiting the Court's ruling before finalizing the engagement and, upon approval, will immediately initiate the expert process and proceed diligently toward disclosure and making Dr. Medlin available for deposition on an expedited schedule. *See* Christiana Declaration ¶¶ 7-8.

Plaintiff proposes the following expedited schedule to minimize any potential delay or prejudice:

- Expert retained and engagement finalized: within 5 days of the Court's order;
- Expert review of relevant material and evaluation: within 45 days of the Court's order;
- Expert report produced: within 60 days of the Court's order
- Expert deposition: no later than 90 days of the Court's order.[6]

This expedited timeline ensures that expert disclosures are completed promptly and does not interfere with, or delay, the setting or commencement of any future trial date. And Dr. Medlin has confirmed the above timeline is workable for her as well. *See* Christiana Declaration ¶¶ 7-8.

Unquestionably, the testimony sought is critical in assisting the jury in understanding the underlying case. An expert on sexual-assault trauma will explain well-recognized phenomena— such as delayed disclosure, dissociation, memory fragmentation, and avoidance—and how these

---

[5] *See also e.g.*, https://www.medlintc.com/dr-medlin

[6] Should the Court prefer a more expedited timeline, Plaintiff will take all steps necessary to ensure compliance.

6

responses are especially common when the perpetrator holds significant institutional power, as here. The expert will also address the power dynamics inherent in an assault committed by person in a position of power, including the fear, coercion, and perceived futility of resistance that often shape a victim's reactions in the moment. This includes explaining why survivors frequently do not fight back, freeze, or comply under pressure, even during profoundly traumatic assaults. Such testimony is essential to help the jury understand Plaintiff's responses through the lens of established science rather than lay assumptions or misconceptions about how a "real" victim *should* or *would* behave.

Thus, as Courts in this district have routinely opined, expert testimony in this area is relevant, admissible, and essential. *See e.g. United States v. Raniere*, No. 18CR2041NGGVMS, 2019 WL 2212639, at *3 (E.D.N.Y. May 22, 2019) (allowing expert testimony on, *inter alia*, how "sexual assault victims may maintain relationships with their perpetrators and this is often influenced by the dynamic between the victim and perpetrator, including whether the victim and perpetrator are in intimate or work relationships characterized by abuse, coercion and/or dependence"); *George v. Edwards*, No. 01-CV-6481(JBW), 2003 WL 22964391, at *4 (E.D.N.Y. Sept. 4, 2003)( Rather, the expert testimony was presented to educate the jurors about a common but seemingly puzzling reaction (delay in reporting) to an unusual occurrence unlikely to have been experienced by the jurors (violent rape). Admission of this testimony was probative and not an abuse of the trial court's discretion.); *Jacobs v. New York City Dep't of Educ.*, 2015 WL 7568642, at *5 (granting motion to reopen because, inter alia, "In view of the fact that Plaintiff's counsel withdrew from representation immediately after the close of discovery without conducting depositions of the witnesses *with relevant information necessary for Plaintiff to prove her case*, it

7

was predictable that with new representation Plaintiff might seek additional time to conduct this basic discovery.") (emphasis added).

Not only is the testimony essential, but examination of the six governing factors confirms that reopening is justified. First, trial is not imminent. In fact, no trial date is currently set. Thus, factor one overwhelmingly weighs in Plaintiff's favor. *See e.g.*, *Torres*, 2016 WL 845326, at *4 (Discovery had closed more than a year before the motion to reopen, yet no trial date had been set, and the good cause was present to reopen).

The second factor, whether the request is opposed weighs slightly against reopening discovery because Plaintiff's request is not unopposed. But this factor is hardly dispositive, and courts routinely reopen discovery notwithstanding an opposition. *Young v. Sw. Airlines Co.*, No. 14CV1940LDHRLM, 2016 WL 3257008, at *3 (E.D.N.Y. May 4, 2016); *Jacobs v. New York City Dep't of Educ.*, 2015 WL 7568642; *Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 516 (motion to reopen, six years after the complaint was filed, granted notwithstanding plaintiffs' "vigorous[] oppos[ition]"); *Torres*, 2016 WL 845326, at *4.

The third factor also weighs in Plaintiff's favor. First, as indicated above, no trial date has been set. "[A]ny prejudice to defendant is largely mitigated by the adjournment of the trial date." *Young v. Sw. Airlines Co.*, 2016 WL 3257008, at *3. Here, not only is there no trial date, but summary judgment briefing on the reinstated negligent supervision claim against the City remains ongoing. Allowing expert discovery now will not delay any scheduled proceedings.

Moreover, Defendants cannot claim that additional "expense", *if any*, tilts the analysis in their favor. *See Young v. Sw. Airlines Co.*, 2016 WL 3257008, at *3 ("That the defendant may incur additional costs…is unpersuasive as the Court notes that, having taken only one deposition and defended non…the defendant as expended minimal resources on discovery to date."). Here,

8

Defendant City has taken *no* depositions, and defended only one (Lt. Bannon) for 29 minutes. Likewise, Defendant Howard, has "taken only one deposition" (Plaintiff's) and defended only one deposition (Howard's). *Id*. The parties, therefore, have "expended minimal resources on discovery to date." *Id*.

Additionally, to the extent Defendants wish to depose Plaintiff's expert, Plaintiff will share in the expense. *See Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 526 ("The cost of providing a transcript of this deposition to all the parties shall be borne by the Nassau County defendants"); *Benn v. Metro-N. Commuter R.R. Co.*, No. 3:18-CV-737 (CSH), 2019 WL 6467348, at *10 (D. Conn. Dec. 2, 2019) ("any prejudice…can be mitigated by shifting some of the costs to plaintiff"); *see also* Fed. R. Civ. P. 37(c)(1)(A) (stating that, "instead of" the sanction of preclusion, the district court "may order payment of the reasonable expenses" caused by the party's failure to timely disclose evidence); *Torres*, 2016 WL 845326, at *6 ("Moreover, any prejudice to Plaintiff is mitigated by the fact that Plaintiff will be permitted to depose Tighe at Defendant's expense").

Finally, expert testimony on sexual assault trauma and victim behavior is standard in cases of this nature, and Defendants cannot claim surprise. They have been on notice since the inception of this case that Plaintiff alleges sexual assault by a law enforcement officer who held power over her as his confidential informant. Expert testimony explaining victim behavior in such circumstances is both predictable and routinely admitted. *See Raniere*, 2019 WL 2212639, at *3; *George*, 2003 WL 22964391, at *4. Defendants themselves made Plaintiff's post-assault behavior central to their summary judgment arguments. Defendants therefore anticipated this testimony and cannot now claim prejudice from Plaintiff's instant motion.

The fourth and fifth factors—diligence and foreseeability—also support reopening discovery. While Plaintiff acknowledges that expert discovery was not conducted before the initial

9

close of discovery in 2022, the circumstances here demonstrate both reasonable diligence by current counsel and lack of foreseeability at the time discovery closed.

First, prior counsel's minimal engagement in discovery is well-documented. Prior counsel conducted only two depositions (one totaling approximately 29 minutes), did not fully review produced discovery materials, and failed to preserve documents that were provided via a time-limited link that has since expired. *See* ECF Nos. 106 at 1 n.1; 112-2 at ¶¶ 5-6; 125 at 22:23-23:9. Plaintiff, who has limited resources and was unrepresented for a period of time, was left effectively defenseless against Defendants' efforts to exploit common misconceptions about how a sexual assault victim "should" behave—and was consequently unable to adequately develop her case during the initial discovery period. *See Jacobs v. New York City Dep't of Educ.*, 2015 WL 7568642, at *4-5 (finding that prior counsel's failure to depose important witnesses evinces a "lack of effort or interest in zealously representing his client" which counsels in favor of reopening discovery); *Young v. Sw. Airlines Co.*, 2016 WL 3257008, at *3 ("Given Ms. Young's limited resources, it is highly unlikely that Ms. Young would have been able to locate or retain an expert without the aid of an attorney. As such, the Court views Ms. Young's diligence in her efforts to obtain counsel as effectively synonymous with attempts to satisfy the need for expert discovery in this matter.").

Second, current counsel has acted diligently since taking over representation. Within two months of retention, in April 2025, current counsel filed a Rule 60(b) motion. That motion was vigorously litigated for eight months before being granted on December 19, 2025. With the negligent supervision claim reinstated, Plaintiff promptly filed the opposition to the City's summary judgment motion on January 16, 2026. In substantively analyzing Defendants' arguments with an eye toward trial, rather than merely the elements of summary judgment, it became clear that expert testimony is indispensable. A deeper assessment of how a jury would

evaluate Plaintiff's conduct revealed the critical need for expert testimony to place that conduct in its proper context. The instant motion follows just days later, less than a year after current counsel's entry, much of which has been devoted to procedural litigation surrounding the Rule 60(b) motion.

Third, courts in this District have recognized that a change in counsel justifies reopening discovery to remedy deficiencies in case preparation. *See Jacobs*, 2015 WL 7568642, at *5 ("In view of the fact that Plaintiff's counsel withdrew from representation immediately after the close of discovery without conducting depositions of the witnesses with relevant information necessary for Plaintiff to prove her case, it was predictable that with new representation Plaintiff might seek additional time to conduct this basic discovery."). The same principle applies here, where current counsel has diligently worked to remedy the gaps from prior representation and identified the need for expert discovery as soon as it became apparent through active engagement with the merits.

Finally, current counsel's diligence is demonstrated by the swift action taken once the need for expert testimony became clear. Plaintiff has identified an expert and moved promptly to seek Court permission.

Last, the sixth factor weighs heavily in Plaintiff's favor. For the reasons noted above, the testimony is not only relevant, but it's critical "to Plaintiff's ability to prove her claims*." Jacobs*, 2015 WL 7568642, at *5; *Young v. Sw. Airlines Co.*, 2016 WL 3257008, at *4 (the case "centers on…the exact subject upon which plaintiff's…expert is intended to shed further light"); *Benn v. Metro-N. Commuter R.R. Co.*, 2019 WL 6467348, at *12 (evidence sought goes to the "crux" of Plaintiff's claims). Thus, far from being a "futile exercise", the discovery sought is of highly relevant nature and is essential to assisting the jury understand and analyze the complex dynamics of sexual assault and trauma. *Jacobs*, 2015 WL 7568642, at *5.

11

On balance, good cause exists to reopen expert discovery for the limited purpose requested. Because the proposed expert testimony is critical, narrowly tailored, and supported by the weight of the governing factors—and because exclusion would be a drastic and unwarranted remedy—the Court should exercise its broad discretion and grant Plaintiff's motion.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully asks the Court grant Plaintiff's motion.

Dated: January 23, 2026
Brooklyn, New York

              Kopke Christiana & Rastetter LLP

By:  /s/ *Matthew Christiana*
   Matthew Christiana
   matt@kcrllp.com
   199 Cook Street, Suite 308
   Brooklyn, NY 11206
   *Attorneys for Plaintiff*

**CC:** **Via ECF:**

To:  Peter Till
   pwt@till-law.com
   *Attorney for Defendant Howard*

   Elissa Beth Jacobs
   ejacobs@law.nyc.gov
   John McLaughlin
   jmclaugh@law.nyc.gov
   *Attorney for Defendant City of New York*