20-CV-3926 (PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TAKISHA REID,

                                                Plaintiff,

-against-

CITY OF NEW YORK, et al.,

                                                Defendants.

**DEFENDANT CITY OF NEW YORK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*STEVEN BANKS*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: John McLaughlin*
*Tel: (212) 356-2670*
*Matter No.: 2024-075841*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ..................................................................................................................... 1

LEGAL STANDARD.............................................................................................................. 3

ARGUMENT ........................................................................................................................... 4

       PLAINTIFF CANNOT RAISE A TRIABLE ISSUE OF PRE-ASSAULT PROPENSITY NOTICE AS TO DETECTIVE HOWARD ............................................................................................... 4

             A.    Plaintiff Cannot Show Pre-Injury Notice that Detective Howard Had a Propensity for the Conduct Alleged ................................................................................................ 4

             B.    IAB's Own Conferral Worksheet Concluded the Cases Were "Not Related". ................................................. 6

             C.    C-2018-95's Unsubstantiated Disposition Further Undermines the Notice Inference. ................................. 7

             D.    Detective Howard's Patrol Guide Policy Violation Does Not Establish the City's Negligence. ................ 9

             E.    Detective Ingram's Misconduct Cannot Supply Notice as to Detective Howard. ................................... 10

CONCLUSION ...................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Pages**

*Castilla v. City of New York*,
   2012 WL 5510910 (S.D.N.Y. Nov. 14, 2012) ............................................................................10

*Doe v. Alsaud*,
   12 F. Supp. 3d 674 (S.D.N.Y. 2014) ................................................................................. 3, 4, 5

*Doe v. Alsaud*,
   12 F. Supp. 3d at 680–81 .............................................................................................................9

*Doe v. City of New York*,
   2018 WL 6095847 (S.D.N.Y. Nov. 21, 2018) ........................................................................5, 7

*Doe v. City of New York*,
   No. 09 Civ. 9895 (SAS), 2013 WL 796014 (S.D.N.Y. Mar. 4, 2013) .......................................8

*Doe v. City of New York*,
   No. 18-CV-670, 2018 WL 3824133 (E.D.N.Y.) ......................................................................10

*Ehrens v. Lutheran Church*,
   385 F.3d 232 (2d Cir. 2004) ...................................................................................................3, 9

*Gonzalez v. City of New York*,
   133 A.D.3d 65 (1st Dep't 2015) ..................................................................................................5

*Jessica H. v. Equinox Holdings, Inc.*,
   No. 103866/08, 2010 N.Y. Misc. LEXIS 1215 (N.Y. Sup. Ct. Jan. 4, 2010) ............................4

*K.I. v. New York City Bd. of Educ.*,
   256 A.D.2d 189 (1st Dep't 1998) ................................................................................................3

*Moore Charitable Foundation v. PJT Partners, Inc.*,
   40 N.Y.3d 150 (N.Y. 2023) .........................................................................................................8

*O'Rear v. Diaz*,
   No. 24 Civ. 1669, 2025 WL 283169 (S.D.N.Y. Jan. 23, 2025) ..................................................6

*Robinson v. United States*,
   332 F. Supp. 3d 516 (E.D.N.Y. 2018) ........................................................................................8

*Ronessa H. v. City of New York*,
   101 A.D.3d 947 (2d Dep't 2012) .................................................................................................5

**Statutes**

Rule 56.1 ............................................................................................................................................6

## PRELIMINARY STATEMENT

Defendant City of New York ("City") respectfully submits this memorandum of law in further support of its motion for summary judgment on Plaintiff's remaining claim for negligent screening, training, hiring, and retention ("negligent supervision").

Plaintiff's opposition rests on three pillars, none of which can bear the weight she places on them. *First*, Plaintiff relies on a prior Internal Affairs Bureau ("IAB") investigation, Case No. C18-95, that she says put the City on notice to Detective Howard's propensity for sexual assault, and which she characterizes as a "2017 sexual misconduct investigation." But the IAB materials cited reflect that investigation involved distinct allegations, was closed as "Unsubstantiated," the individual at the center of that investigation denied any sexual conduct, and the investigators handling Plaintiff's case concluded that the two matters were "not related."

*Second*, Plaintiff contends that the City's failure to enforce its Patrol Guide supervision policy itself amounts to negligent supervision. But policy violations and propensity notice are distinct legal concepts; the former does not establish the latter.

*Third*, Plaintiff points to the later-discovered misconduct of another detective in the same precinct. But negligent supervision requires notice of *this employee's* propensities, and conduct by a different officer years after the events at issue cannot supply retroactive notice.

For these reasons, and those set forth below, the City's motion for summary judgment should be granted.

## BACKGROUND

This case arises from Plaintiff's allegations that Detective Gregory Howard sexually assaulted her on three occasions in April and May 2018 while she served as his confidential informant at the NYPD's 120th Precinct. (Def.'s 56.1 ¶¶ 1, 5). The only remaining claim is negligent supervision against Defendant City, which turns on whether the City knew or

should have known, before the alleged assaults, that Detective Howard had a propensity for the type of misconduct that injured Plaintiff. The relevant factual record that follows fatally undercuts plaintiff's allegation.

In November 2017, IAB opened an investigation into Detective Howard designated Case No. C18-95, on a tip suggesting that a 120th Precinct officer had leaked confidential law-enforcement information. (Def.'s 56.1 Resp. ¶ 33). The C18-95 investigation involved allegations of 'Disclosing Confidential Information, Criminal Association and Patronizing a prostitute.' (Def.'s 56.1 ¶ 9; Def.'s 56.1 Resp. ¶ 34). Investigators conducted surveillances that yielded 'negative results for any contact with [the suspected prostitute] Ms. [K.]J[.] or any other females.' (Def.'s 56.1 Resp. ¶ 47). K.J. denied any sexual or non-professional relationship with Detective Howard, and Howard denied the allegations. (Def.'s 56.1 Resp. ¶ 30). C18-95 was closed as "Unsubstantiated" in October 2018. (Def.'s 56.1 Resp. ¶ 47).

On October 24, 2017, Detective Howard signed up Plaintiff as a confidential informant. (Def.'s 56.1 ¶ 1). No supervisor was present at any of Howard's meetings with Plaintiff, in violation of Patrol Guide requirements. (Def.'s 56.1 Resp. ¶¶ 25, 41). Before June 4, 2018, no disciplinary allegations similar to Plaintiff's had been made against Howard. (Def.'s 56.1 ¶¶ 9–12)

Plaintiff alleges that Detective Howard sexually assaulted her on three occasions in April and May 2018. (Def.'s 56.1 ¶ 5). On June 4, 2018, Plaintiff filed a complaint that was referred to IAB, which opened investigation C-2018-234. (Def.'s 56.1 ¶¶ 8–9; Def.'s 56.1 Resp. ¶ 42). The C-2018-234 investigators reviewed the active C18-95 case file, which they described as 'containing similar allegations,' but after conferring with the Group 33 team, concluded: '[I]n

2

totality, it appears the Group 33 case is not related to the current allegations against Detective Howard in this case.' (Def.'s 56.1 Resp. ¶¶ 43–44).

## LEGAL STANDARD

The parties agree on the governing framework. To prevail on a claim for negligent hiring, training, supervision, or retention under New York law, a plaintiff must establish, in addition to the standard elements of negligence: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations omitted). As Plaintiff concedes, in the instant case, "[t]he most important factor is the second: notice." (Pl.'s Opp. at 6).

Where the claimed injury is sexual misconduct, the notice requirement demands evidence that the employer was aware of *specific prior acts or allegations* against *the particular employee* reflecting a propensity for that sort of conduct. See *K.I. v. New York City Bd. of Educ.*, 256 A.D.2d 189, 191–192 (1st Dep't 1998) ("[V]ague allegations that the teachers 'encouraged' plaintiff's personal relationship with [the employee] do not suffice to impose liability on the Board, as it would not have been foreseeable to the teachers that [the employee] would harm plaintiff."). Moreover, the prior misconduct must be "of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680–81 (S.D.N.Y. 2014) (citing cases).

# ARGUMENT

## PLAINTIFF CANNOT RAISE A TRIABLE ISSUE OF PRE-ASSAULT PROPENSITY NOTICE AS TO DETECTIVE HOWARD

**A.   Plaintiff Cannot Show Pre-Injury Notice that Detective Howard Had a Propensity for the Conduct Alleged**

"[A] negligent retention theory is not viable in a sexual abuse case, unless the employer had notice of prior allegations of an employee's improper conduct and failed to investigate the allegations." *Jessica H. v. Equinox Holdings, Inc.*, No. 103866/08, 2010 N.Y. Misc. LEXIS 1215, at *13 (N.Y. Sup. Ct. Jan. 4, 2010) (quoted in *Alsaud*, 12 F. Supp. 3d at 681). The linchpin of Plaintiff's opposition is the earlier IAB investigation, Case No. C18-95. Plaintiff characterizes this as a "2017 sexual misconduct investigation" (Pl.'s Opp. at 3) and asserts that Detective Howard was "credibly accused of serious sexual misconduct" with a female confidential informant, "including, among other things, soliciting her for sex." (Pl.'s Opp. at 8). This is not what the record shows.

The IAB/ICMS materials describe C18-95 as involving allegations of "Disclosing Confidential Information, Criminal Association and Patronizing a prostitute." (Pl.'s 56.1 Ex. 2 at D90; *see also id.* at D17–18 (CPI/round-robin listing)). The investigation "was initiated by a PO Brook[s] of NBSI who was informed by one of his confidential informants" that a suspected prostitute, "K.J.," had advance knowledge of an upcoming drug indictment, suggesting that a 120th Precinct officer had leaked confidential law-enforcement information. (Pl.'s 56.1 Ex. 2 at D89, D124). C18-95 was a leak investigation, not a "sexual misconduct investigation."

This is not a case where the employer was put on notice by a victim's complaint and failed to act; it is a case where no victim came forward and the only relevant individual denied the allegations. This distinguishes C18-95 from the cases Plaintiff relies on, in which the

4

employer was alleged to have received and ignored actual complaints of misconduct from victims or other individuals reporting abuse. *See, e.g., Doe v. City of New York*, 2018 WL 6095847, at *4 (S.D.N.Y. Nov. 21, 2018) (plaintiff alleged employer received complaints of sexual misconduct by named officers, and defendant testified he "avoided hearing allegations of sexual misconduct so that he could avoid a duty to report such incidents."); *Gonzalez v. City of New York*, 133 A.D.3d 65, 73 (1st Dep't 2015) (shooting in which the "the City was informed on numerous occasions, prior to the fatal shooting, about the officer[-shooter's] abusive conduct toward [the victims]."). Here, the person Plaintiff identifies as "C.I. #1"—K.J.—affirmatively denied any sexual or non-professional conduct and "stated her relationship with Det. Howard was only professional once she was registered as CI she only spoke to him twice." (Pl.'s 56.1 Ex. 2 at D266).

Further, the substance of the C18-95 allegations bears no resemblance to the conduct that injured Plaintiff. Under New York law, "general, unrelated or lesser allegations of prior wrongdoing are insufficient" to establish notice of a propensity for the particular misconduct at issue. *Alsaud*, 12 F. Supp. 3d at 681 (citing cases). The Second Department has squarely held that prior misconduct of a different kind does not satisfy the notice element. In *Ronessa H. v. City of New York*, 101 A.D.3d 947 (2d Dep't 2012), the court found that a police officer's prior reprimand for failing to report a lost prisoner was "not conduct that would reasonably put the City on notice that [the officer] was inclined toward conduct such as that which allegedly caused the plaintiff's injuries"—namely, sexual assault. *Id.* at 948. The reasoning applies with equal force here: allegations that Howard may have patronized a prostitute or disclosed confidential information do not put the City on notice that Howard would sexually assault a confidential informant under his supervision.

5

Plaintiff asks the Court to treat all sexual misconduct as fungible, but New York courts have rejected precisely that conflation. *See, e.g.*, *O'Rear v. Diaz*, No. 24 Civ. 1669, 2025 WL 283169, at *11 (S.D.N.Y. Jan. 23, 2025) (a propensity to sexually harass "is not sufficient to establish a propensity to sexually assault"). Accepting *arguendo* Plaintiff's characterization that C18-95 involved "solicitation," this is a qualitatively different species of conduct from sexual assault. An employer who learns that an employee may have solicited a prostitute does not thereby receive notice that the employee will commit a sexual assault.

Unable to establish similarity based on the nature of the alleged conduct itself, Plaintiff shifts to context: she contends that because both allegations involved a female confidential informant under Howard's supervision, C18-95 put the City on notice of a propensity to exploit the CI–detective relationship. (Pl.'s Opp. at 8). But this theory depends on a factual premise that the record does not support — namely, that K.J. was Howard's confidential informant during the relevant period. As set forth more fully in Defendant's Rule 56.1 Response ¶ 28, Plaintiff's sole support consists of investigator worksheets and narrative summaries from the C-2018-234 investigation that present multiple layers of hearsay and do not establish K.J.'s CI status during the relevant timeframe. By contrast, all competent record evidence — deposition testimony subject to cross-examination — establishes that Plaintiff was Howard's first and only confidential informant in the ordinary sense. (Howard Tr. at 16:19–23; Howard Dep. 19:21–20:7, 21:8–22:6). If K.J. was not Howard's CI during the relevant period — or was only briefly "registered" at IAB's direction and "never worked" as a CI — then C18-95 cannot supply notice of a propensity to sexually exploit confidential informants, and Plaintiff's theory collapses.

**B.    IAB's Own Conferral Worksheet Concluded the Cases Were "Not Related".**

Plaintiff places great emphasis on the fact that the C-2018-234 investigators (those handling Plaintiff's case) reviewed the earlier C18-95 file and described it as "containing

6

similar allegations." (Def.'s 56.1 Resp. ¶ 42). But Plaintiff omits the conclusion that the investigators drew after actually conferring with the Group 33 team: "[I]n totality, it appears the Group 33 case **is not related** to the current allegations against Detective Howard in this case." (Pl.'s 56.1 Ex. 2 at D124 (emphasis added)). This is the investigators' bottom-line assessment—recorded in the same IAB materials Plaintiff asks the Court to credit—and it directly contradicts Plaintiff's narrative.

Plaintiff cannot have it both ways. She cannot selectively cite IAB worksheets for the proposition that the investigations involved "similar allegations" while ignoring the same investigators' ultimate conclusion that the two cases were "not related." If these materials are credited for one proposition, they must be credited for the other. And the "not related" finding fatally undermines the inference Plaintiff seeks to draw.

### C.   C-2018-95's Unsubstantiated Disposition Further Undermines the Notice Inference.

Plaintiff acknowledges that C18-95 was closed as "unsubstantiated," and argues that this does not alter the analysis because "New York courts have rejected the argument that state or municipal governments were not on notice of their employees' propensity for injurious conduct when the complaints were 'unsubstantiated.'" (Pl.'s Opp. at 10 (citing *Doe v. City of New York*, 2018 WL 6095847, at *7 (S.D.N.Y. 2018))). Plaintiff is correct that, in the abstract, even an unsubstantiated complaint may in some circumstances contribute to notice. But that general proposition does not relieve Plaintiff of her burden to show that the substance of the prior complaint was (a) sufficiently similar to the injurious conduct, (b) supported by competent evidence, and (c) of a nature that would put the employer on notice of a propensity for the type of harm that occurred.

Here, C18-95 was not merely unsubstantiated in the narrow sense that it was not formally proven; rather, the investigation affirmatively undercut the allegations. Investigators

7

conducted surveillances that yielded "negative results for any contact with Ms. J or any other females." (Pl.'s 56.1 Ex. 2 at D124). K.J. herself denied any sexual or non-professional relationship. (Pl.'s 56.1 Ex. 2 at D266). Investigators noted that K.J. "has never been arrested for prostitution and there is no indication of Ms. J being a prostitute." (Pl.'s 56.1 Ex. 2 at D29). And Detective Howard denied soliciting sexual activities or providing confidential information. (Pl.'s 56.1 Ex. 2 at D90, D356). The investigation was not closed on a technicality or for lack of resources; it was closed because the available evidence did not support the allegations.

Plaintiff also invokes *Moore Charitable Foundation v. PJT Partners, Inc.*, 40 N.Y.3d 150 (N.Y. 2023), for the proposition that an employer "cannot avoid liability for negligent supervision and retention by shutting its eyes to the tortious practices and propensities of its employees." Id. at 158. But the City did not "shut its eyes." IAB opened and investigated C18-95. Investigators conducted surveillances, reviewed phone records, interviewed witnesses, and ultimately closed the matter as unsubstantiated based on the available evidence. (Pl.'s 56.1 Ex. 2 at D28–29, D124, D266). *Moore Charitable Foundation* does not hold that an employer who investigates an allegation and finds it unsubstantiated must nonetheless treat that allegation as conclusive proof of propensity.

Under these circumstances, the mere existence of C18-95 does not create a triable issue as to whether the City had pre-injury notice of Howard's propensity for sexual assault. *See Doe v. City of New York*, No. 09 Civ. 9895 (SAS), 2013 WL 796014, at *5 (S.D.N.Y. Mar. 4, 2013) (single CCRB complaint alleging "verbal and physical abuse of an intoxicated woman" did not put City on notice of officer's propensity to commit sexual assault, because the complaint "did not allege rape or sexual assault, nor did it indicate that the victim's sex was relevant to [the officer's] misconduct"); *Robinson v. United States*, 332 F. Supp. 3d 516 (E.D.N.Y. 2018).

8

### D. Detective Howard's Patrol Guide Policy Violation Does Not Establish the City's Negligence.

Plaintiff devotes significant space to arguing that the City's failure to enforce Patrol Guide requirements—particularly the mandate that "a supervisor . . . will be physically present at all meetings" between officers and confidential informants (Pl.'s 56.1 Ex. 3 at D10)—itself constitutes negligent supervision. (Pl.'s Opp. at 2–4, 11). But this argument conflates two distinct legal concepts: a *policy violation* and *propensity notice*. The negligent supervision tort does not impose strict liability for any harm that might have been prevented by more rigorous internal oversight. It requires proof that the employer knew or should have known of the specific employee's propensity for the injurious conduct *prior* to the injury's occurrence. *See Doe v. Alsaud*, 12 F. Supp. 3d at 680–81; *Ehrens*, 385 F.3d at 235.

Plaintiff's argument, distilled, is that if the City had enforced its own supervision policies, it would have been "positioned to observe—and prevent—the established practice within the precinct of officers engaging in sexual misconduct with informants." (Pl.'s Opp. at 10). But this is precisely the kind of speculative, after-the-fact reasoning that cannot survive summary judgment. The question is not whether perfect supervision might hypothetically have prevented harm, but whether the City had pre-injury notice of Howard's specific dangerous propensities.

Moreover, Plaintiff's own characterization of the evidence on training is misleading. Plaintiff asserts that "Defendant Howard received no training on the policy and was never provided with, shown, or instructed to review any related materials." (Pl.'s Opp. at 2; Pl.'s 56.1 at ¶ 26). But the very deposition testimony Plaintiff cites tells a different story. Detective Howard testified that Lieutenant Bannon, "when it came to contacting the CI," "told [Howard to] read the patrol guide." (Howard Dep. at 51:11–17). Howard further testified that he *read the CI*

9

*provisions in the patrol guide in October 2017*, as he was instructed by his supervising lieutenant. (Howard Dep. at 53:2–6). Howard's testimony that he did not review nor was he aware of training materials related to CIs was in reference to materials "[b]esides the patrol guide." (Howard Dep. at 52:14–20). The record therefore reflects that Howard was directed to—and did—read the governing policy before the events at issue. (Def.'s 56.1 Resp. ¶ 26).

### E.   Detective Ingram's Misconduct Cannot Supply Notice as to Detective Howard.

Plaintiff's attempt to use Detective Ingram's later-adjudicated misconduct to establish municipal notice as to Detective Howard fails. Negligent supervision requires notice of this *employee's* propensity for the injurious conduct—not generalized allegations about other officers, even in the same precinct. *See Castilla v. City of New York*, 2012 WL 5510910 (S.D.N.Y. Nov. 14, 2012) (rejecting notice theory based on other incidents because none involved the officer in question); *Doe v. City of New York*, No. 18-CV-670, 2018 WL 3824133 (E.D.N.Y.) (allegations of sexual misconduct by other officers do not establish notice absent allegations about the named detectives). And in any event, the "Final Order of Dismissal" Plaintiff cites concerns charges arising from an IAB probe into Ingram's allegedly improper relationships "between September 2021 and June 2023," years after the April/May 2018 events at issue, and it does not identify Lt. Bannon or address what he knew (or when) in a way that could supply pre-injury notice as to Howard.

**CONCLUSION**

For the foregoing reasons, and those set forth in Defendant City of New York's opening memorandum of law, the City respectfully requests that the Court grant its motion for summary judgment on Plaintiff's negligent screening, training, hiring, and retention claim, together with such costs, fees, and any other further relief as this Court deems just and proper.

Dated:    New York, NY
          February 13, 2026

                                                STEVEN BANKS
                                                Corporation Counsel of the City of New York
                                                *Attorney for Defendant City of New York*
                                                100 Church Street
                                                New York, New York 10007
                                                (212) 356-2670

                                                By: /s/ *John McLaughlin*
                                                     John McLaughlin
                                                     *Assistant Corporation Counsel*
                                                     Special Federal Litigation

Cc:    **VIA ECF**
        *All counsel of record.*

**CERTIFICATION**

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 3,033. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated:    New York, New York
          February 13, 2026

                                            STEVEN BANKS
                                            Corporation Counsel of the City of New York
                                            *Attorney for Defendant City of New York*
                                            100 Church Street
                                            New York, New York 10007
                                            (212) 356-2670

                                        By: /s/ *John McLaughlin*
                                              John McLaughlin
                                              *Assistant Corporation Counsel*
                                              Special Federal Litigation