UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

TAKISHA REID,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

**RESPONSE TO PLAINTIFF'S COUNTER-STATEMENT TO DEFENDANT'S RULE 56.1 STATEMENT OF MATERIAL FACTS**

20-CV-3926 (PK)

---------------------------------------------------------------------- x

Defendant the City of New York, by its attorney Steven Banks, Corporation Counsel of the City of New York, submits this counter statement pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Eastern District of New York, responding to plaintiff's purportedly undisputed facts.

## I.    DEFENDANT'S RESPONSES TO PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

1.    On October 24 2017, Detective Gregory Howard signed up Plaintiff Takisha Reid to be a "confidential informant" for the New York City Police Department ("NYPD"). (Excerpts from IAB Investigation File at D50–D51, annexed to the Declaration of Jeffrey F. Frank ("Frank Decl.") as "Exhibit A"); (Deposition Transcript of co-defendant Detective Gregory Howard ("Howard Tr.") at 16:19–23, 29:06–23, annexed to Frank Decl. as "Exhibit B").

**Plaintiff's Response**:  Plaintiff does not dispute this statement.

2.    Detective Gregory Howard was assigned to the NYPD 120th Precinct's Detective Squad from 2017 to 2019. (Exhibit B: Howard Tr. at 15:05–07).

1

**Plaintiff's Response**: Plaintiff does not dispute this statement.

   3. After activating Plaintiff as a confidential informant, Detective Howard used his personal phone to call and text Plaintiff. (Exhibit B: Howard Tr. at 96:20–97:09); (Deposition Transcript of Plaintiff Takisha Reid ("Plaintiff Tr.") at 30:09–16, annexed to Frank Decl. as "Exhibit C").

**Plaintiff's Response**: Plaintiff does not dispute that, Detective Howard had communicated with Plaintiff on his department phone but had also used his personal cell phone to "text" Plaintiff for a period of time because his "department phone was broke." (Def. Exhibit B: Howard Tr. at 96:20–97:09)

**DEFENDANT'S RESPONSE**: Plaintiff's purported dispute does not actually challenge the factual substance and, as such, is not an actual dispute of fact. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014).

   4. Detective Howard met in person with Plaintiff on several occasions. (Exhibit C: Plaintiff Tr. at 107:06–23).

**Plaintiff's Response**: Plaintiff does not dispute that Detective Howard met in person with Plaintiff on several occasions, and otherwise would follow and "stalk" her. (*See* Ex. 1 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 1: Reid Deposition"), at 118:4-20).

**DEFENDANT'S RESPONSE**: Plaintiff's purported dispute does not actually challenge the factual substance and, as such, is not an actual dispute of fact. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014). To the extent Plaintiff adds allegations of 'stalking,' that is a separate characterization that does not controvert this fact and is addressed *infra* (Def's. Resp. to Pl.'s 56.1 ¶ 38).

5.    Plaintiff claims that, on three of those occasions, she and Detective Howard engaged in sexual activities. (Exhibit C: Plaintiff Tr. at 45:17–46:06).

**Plaintiff's Response**: Plaintiff disputes this statement to the extent it implies the sexual encounters were consensual. Plaintiff does not dispute that, on three occasions, Detective Howard sexually assaulted her. (*See* Pl.'s 56.1 Ex. 1: Reid Deposition, at 118:4-20).

**DEFENDANT'S RESPONSE**: Plaintiff's purported dispute does not actually challenge the factual substance and, as such, is not an actual dispute of fact. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014). To the extent she disputes consent and characterizes them as assault, that is a legal conclusion that defendant disputes; that disputed characterization is addressed *infra* (Def's. Resp. to Pl.'s 56.1 ¶ 40).

6.    Lieutenant Christopher Bannon supervised Detective Howard for at least three to four years, including the time period when Plaintiff was working with Detective Howard as a confidential informant. (Deposition Transcript of non-party Lieutenant Christopher Bannon ("Bannon Tr.") at 18:04–06, annexed to Frank Decl. as "Exhibit D"); (Exhibit B: Howard Tr. at 25:12–22, 51:11–13).

**Plaintiff's Response**:  Plaintiff does not dispute that Lt. Bannon was Defendant Howard's supervisor for at least seven years, including during the time in which Plaintiff served as confidential informant under Defendant Howard.

**DEFENDANT'S RESPONSE**: Disputed in part. Defendant does not dispute that Lt. Bannon supervised Detective Howard during the relevant period, but Plaintiff's assertion that Lt. Bannon supervised Detective Howard "for at least seven years" misstates the cited testimony, which is that Lt. Bannon supervised Detective Howard for approximately "three

to four years." (Bannon Tr. 18:04–06). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

7.     On June 4, 2018, Plaintiff made a complaint with the Civilian Complaint Review Board ("CCRB") against Detective Howard. (Excerpts from IAB Investigation File, annexed to Frank Decl. as Exhibit A at D367).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

8.     On June 9, 2018, CCRB referred Plaintiff's complaint to the NYPD's Internal Affairs Bureau ("IAB") for further investigation. (Exhibit A at D61–66); (Exhibit C: Plaintiff Tr. at 57:01–09).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

9.     Before June 4, 2018, no disciplinary allegations similar to Plaintiff's had been made against Detective Howard. (Frank Decl. at ¶ 6); (Exhibit D: Bannon Tr. at 10:04–18, 21:11–22:14).

**Plaintiff's Response**: Plaintiff disputes this statement. As of at least November 17, 2017, the IAB was investigating Defendant Howard for prior similar allegations, including an allegation that Defendant Howard engaged in sexual misconduct with a female C.I. other than Plaintiff. (*See* Ex. 2 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard"), at D17-18, D90, D124, D221, D256, D266, D356).

**DEFENDANT'S RESPONSE**: Plaintiff's "prior similar allegations" objection rests on a mischaracterization of the earlier C18-95 matter, which the IAB/ICMS materials describe as allegations of "Disclosing Confidential Information, Criminal Association and

Patronizing a prostitute," not allegations of sexual assault or the misconduct alleged by Plaintiff here. (Pl.'s 56.1 Ex. 2 at D90; D17–18). Plaintiff's citation to D221/D256/D266 likewise does not establish that the subject was a confidential informant during the relevant period, and does not substantiate Plaintiff's characterization of "sexual misconduct with a female C.I." (Def's. Resp. to Pl.'s 56.1 ¶ 28, *infra*; Pl.'s 56.1 Ex. 2 at D221, D256, D266). The conferral worksheet in the June 2018 case further records that, "[i]n totality, it appears the Group 33 case is not related to the current allegations against Detective Howard in this case." (Pl.'s 56.1 Ex. 2 at D124). Defendant further refers to and incorporates its responses *infra* to Plaintiff's Additional Facts ¶¶ 34–36, 43–44, and 47. Defendant further states that Plaintiff's objection is based on internal IAB/ICMS worksheets and narrative summaries that are being offered for the truth of disputed matters (including the nature of alleged 'misconduct' and CI status) without foundation, and therefore do not controvert Defendant's statement of fact. (Pl.'s 56.1 Ex. 2 at D90, D124, D221, D256, D266; *see also* Def's. Resp. to Pl.'s 56.1 ¶ 28, *infra*). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

10.    In fact, other than the complaint made by Plaintiff, Detective Howard has never been accused of engaging in a sexual relationship with a confidential informant. (Frank Decl. at ¶ 6); (Exhibit D: Bannon Tr. at 22:08–14).

**Plaintiff's Response**: Plaintiff disputes this statement. As of at least November 17, 2017, the IAB was investigating Defendant Howard for prior similar allegations, including an allegation that Defendant Howard engaged in sexual misconduct with a female C.I. other than Plaintiff. (Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard, at D17-18, D90, D124, D221, D266, D356).

5

**DEFENDANT'S RESPONSE**: Plaintiff's "prior similar allegations" objection rests on a mischaracterization of the earlier C18-95 matter, which the IAB/ICMS materials describe as allegations of "Disclosing Confidential Information, Criminal Association and Patronizing a prostitute," not allegations of sexual assault or the misconduct alleged by Plaintiff here. (Pl.'s 56.1 Ex. 2 at D90; D17–18). Defendant refers to and incorporates its responses *infra* to Plaintiff's Additional Facts ¶¶ 28, 31, 34–36, 43–44, and 47 (addressing Plaintiff's mischaracterization of the prior investigation as involving CI sexual misconduct, the lack of proof of CI status, and the unsubstantiated disposition). Defendant further states that Plaintiff's objection is based on internal IAB/ICMS worksheets and narrative summaries that are being offered for the truth of disputed matters (including the nature of alleged 'misconduct' and CI status) without foundation, and therefore do not controvert Defendant's statement of fact. (Pl.'s 56.1 Ex. 2 at D90, D124, D221, D256, D266; *see also* Def's. Resp. to Pl.'s 56.1 ¶ 28, *infra*). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

11.    During the time Lieutenant Bannon was Detective Howard's supervisor, he had no reason to believe that disciplinary action would be required as to Detective Howard. (Exhibit D: Bannon Tr. at 11:18–22).

**Plaintiff's Response**: Plaintiff disputes this statement because, as of at least November 17, 2017, the IAB was investigating Defendant Howard for prior similar allegations, including an allegation that Defendant Howard engaged in sexual misconduct with a female C.I. other than Plaintiff. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard, at D17-18, D90, D124, D221, D266, D356).

**DEFENDANT'S RESPONSE**: For the reasons stated in Defendant's Responses to ¶¶ 9–10, *supra*, Plaintiff's objection again rests on mischaracterizing the earlier C18-95 matter as "prior similar allegations" of CI sexual misconduct.

Defendant further states that Plaintiff's objection is based on internal IAB/ICMS worksheets and narrative summaries that are being offered for the truth of disputed matters (including the nature of alleged 'misconduct' and CI status) without foundation,and therefore do not controvert Defendant's statement of fact. (Pl.'s 56.1 Ex. 2 at D90, D124, D221, D256, D266; *see also* Def's. Resp. to Pl.'s 56.1 ¶ 28, *infra*). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

12.     Plaintiff was deactivated as a confidential informant on August 29, 2018. (Exhibit A at D50).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

13.     Plaintiff is the only confidential informant Detective Howard has handled. (Exhibit B: Howard Tr. at 16:19–23); (see also Exhibit C: Plaintiff Tr. at 63:06–65:06, 133:03–23).

**Plaintiff's Response**: Plaintiff disputes this statement. Defendant Howard had handled another female confidential informant prior to Plaintiff, and Defendant Howard was accused of engaging in sexual misconduct with her, leading to an IAB investigation in November 2017. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard, at D17-18, D90, D124, D221, D266, D356).

**DEFENDANT'S RESPONSE**: For the reasons stated in Defendant's Responses to ¶¶ 9–10, *supra*, Plaintiff's objection again rests on mischaracterizing the earlier C18-95 matter as "prior similar allegations" of CI sexual misconduct.

Defendant further states that Plaintiff's objection is based on internal IAB/ICMS worksheets and narrative summaries that are being offered for the truth of disputed matters (including the nature of alleged "misconduct" and CI status) without foundation, and therefore do not controvert Defendant's statement of fact. (Pl.'s 56.1 Ex. 2 at D90, D124, D221, D256, D266; see also Def's. Resp. to Pl.'s 56.1 ¶ 28, infra). Defendant further states that, in any event, Plaintiff's objection does not present a material issue of fact sufficient to defeat summary judgment.

14.    During her interview with IAB, Plaintiff stated she had consensual sex with Detective Howard on two occasions. (Exhibit C: Plaintiff Tr. at 41:02–22, 72:18–74:05).

**Plaintiff's Response**: Plaintiff disputes that she ever had consensual sex with Defendant Howard. Plaintiff does not dispute that she told an IAB officer that she "didn't fight him off" "because [she] froze and [she] was scared, and it all happened so fast." (Def. Exhibit C: Plaintiff Tr. at 41:02–22).

**DEFENDANT'S RESPONSE**: Plaintiff's purported dispute does not actually challenge the factual substance of Defendant's statement and, as such, does not create a genuine dispute of material fact. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014). Defendant further states that Plaintiff's disagreement with Defendant's framing does not alter the undisputed fact that the City's notice (if any) must be evaluated based on what was communicated to IAB and the content of the investigative/disciplinary record, not

Plaintiff's later litigation characterization. (*See* Def's. Resp. to Pl.'s 56.1 ¶¶ 40, 47–48, *infra*).

15.     On September 13, 2019, IAB issued charges and specifications against Detective Howard for: (1) knowingly associating and maintaining a personal relationship with a deactivated confidential informant, (2) failing to prepare written reports of interactions with a confidential informant, and (3) meeting with a confidential informant without a supervisor present. (Exhibit A at D42–D47, D50–D51).

**Plaintiff's Response**:  Plaintiff does not dispute this statement.

16.     IAB disposed of these charges and specifications as "guilty," and recommended penalties against Detective Howard including one-year dismissal probation and forfeiture of forty-five (45) vacation days. (Exhibit A at D42–D43, D64–D66, D2037); (Exhibit B: Howard Tr. at 54:20–55:03); (see also Exhibit A at D2036) (informing Plaintiff, inter alia, that disciplinary action was recommended against Detective Howard as a result of her complaint).

**Plaintiff's Response**:  Plaintiff does not dispute this statement.

17.     Plaintiff commenced the instant action by filing the Complaint on August 25, 2020, alleging claims against defendant City of New York pursuant to New York State law for "Negligent Screening, Training, Hiring, and Retention," (Complaint, ECF No. 1, at ¶¶ 67–70), negligence (id. at ¶¶ 71–75), and respondeat superior, (id. at ¶¶ 76–77).

**Plaintiff's Response**:  Plaintiff does not dispute that the Complaint includes causes of action outlined above, including allegations against Defendant City as the employer of Defendant Howard.

18.     Shortly thereafter, Plaintiff provided an interview to the New York Daily News in which she announced her identity as a confidential informant and provided a picture of herself for publication alongside her interview. (Exhibit C: Plaintiff Tr. at 57:10–58:22, 60:05–08).

**Plaintiff's Response**:  Plaintiff does not dispute that she sat for the interview and provided a picture because her former lawyer asked her to, even though she did not want people to find out her identity. (*See* Pl.'s 56.1 Ex. 1: Reid Deposition at 59:4-16).

19.     Plaintiff made no complaints to the NYPD or any other New York law enforcement agencies regarding threats to her safety stemming from her disclosure of her identity as a confidential informant. (Exhibit C: Plaintiff Tr. at 57:10–58:22, 108:06–110:05, 111:09–112:20).

**Plaintiff's Response**:  Plaintiff does not dispute that she did not make any complaints to the NYPD regarding threats to her safety stemming from the disclosure of her identity.

20.     Instead, Plaintiff only complained to the Elizabeth, New Jersey Police Department about threats Plaintiff received after revealing her identity as a former confidential informant. (*Id*.)

**Plaintiff's Response**: Plaintiff does not dispute that, when threatened after her identity was disclosed, she complained to the Elizabeth, New Jersey Police Department.

21.     Defendant City pled governmental immunity as an affirmative defense in its Answer to the Complaint. (Answer, ECF No. 18, at ¶ 82).

**Plaintiff's Response**: Plaintiff does not dispute this statement.

22.     Plaintiff has adduced no evidence to support her claims that the City was negligent. (Exhibit C: Plaintiff Tr. at 117:08–13, 120:08–121:05).

**Plaintiff's Response**: Plaintiff disputes this statement. *See* Plaintiff's 56.1 Counterstatement ¶¶ 23-51, *infra*.

**DEFENDANT'S RESPONSE**: Plaintiff's purported dispute does not actually challenge the factual substance and, as such, is not an actual dispute of fact. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014). Plaintiff's citation to her Counterstatement ¶¶ 23–51 does not controvert Defendant City's statement and, in any event, is addressed in Defendant City's Responses to Plaintiff's Additional Facts, ¶¶ 23–51, *infra*.

## PLAINTIFF'S COUNTERSTATEMENT OF FACTS

23.    From May 1, 2017 through all relevant times leading up to the present, the N.Y.P.D. had a written policy relating to Confidential Informants for the purposes of ensuring "the safety of the confidential informant." (*See* Ex. 3 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 3: N.Y.P.D. Patrol Guide, Confidential Informants") at D4-D13).

**DEFENDANT'S RESPONSE**: **Undisputed**.

24.    As part of that policy, the contact [officer] of the Confidential Informant is required to submit written reports for each interaction with an informant. (*See* Pl.'s 56.1 Ex. 3: N.Y.P.D. Patrol Guide, Confidential Informants at D7).

**DEFENDANT'S RESPONSE**: **Undisputed**.

25.    Additionally, the N.Y.P.D. policy explicitly states that "*a supervisor, preferably the immediate supervisor of the contact [officer], will be physically present at all meetings (e.g., debriefings, controlled buys, payments, etc.) between a*

*confidential informant and a contact.*" (*See* Pl.'s 56.1 Ex. 3: N.Y.P.D. Patrol Guide, Confidential Informants at D10) (emphasis in original).

**DEFENDANT'S RESPONSE**: **Undisputed** that the Patrol Guide contains the quoted language.

26.     Defendant Howard was never trained on the policies surrounding working with C.I.'s, and likewise never reviewed nor knew of any training materials related thereto. (*See* Ex. 4 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 4: Howard Deposition") at: 52:7-20).

**DEFENDANT'S RESPONSE**: **Disputed.** Detective Howard testified that Lt. Bannon supervised his contacts with the CI and that, "when it came to contacting the CI," Bannon supervision "told [Howard to] read the patrol guide[.]" (Pl.'s 56.1 Ex. 4, at 51:11-17). He testified that he read the CI provisions in the patrol guide in October of 2017. (*Id.* at 53:2–6). Howard's testimony that he did not review nor was he aware of training materials related to C.I.s was in reference to materials "[b]esides the patrol guide[.]" (*Id.* at 52:14–20).

27.     Lt. Bannon was the 120th Precinct Detective Unit's (and Howard's) direct supervisor with respect to C.I.'s, and Lt. Bannon did not provide any supervision or training with respect to engaging with C.I.'s. (*See* Pl.'s 56.1 Ex. 4: Howard Deposition at 51:11-20; Ex. 5 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 5: Bannon Deposition" at 5:17-23, 8:1-13).

**DEFENDANT'S RESPONSE**: **Disputed**.  Detective Howard testified that Lt. Bannon supervised his contacts with the CI and that, "when it came to contacting the CI," Bannon

"told [Howard to] read the patrol guide[.]" (Pl.'s 56.1 Ex. 4, Howard Dep. at 51:11-17). Lt. Bannon likewise testified that he supervised Howard for approximately three to four years, and that his supervision—at least with respect to CIs—was focused on the "substantive information" and "intelligence" that Howard reported back from the CI. (Exhibit D, Bannon Dep. 18:28–19:1; Pl.'s 56.1 Ex. 4, Bannon Dep., at 19:27–32.) The relevant Patrol Guide provisions direct that CI use be conducted "exclusively through" the designated contact and the contact's immediate supervisor, requires that the contact "notify supervisor immediately," and provides that a supervisor "will be physically present" at CI meetings (subject to the stated exceptions). (Pl.'s 56.1 Ex. 3: Patrol Guide at D4, D10). Lt. Bannon testified that if any 'problem with the CI and Detective Howard' was 'never brought to [his] attention,' he would have no reason to impose an additional layer of supervision." (Pl.'s 56.1 Ex. 4, Bannon Dep., at 19:27–32, 20:1–8.) IAB materials reflect that, notwithstanding these requirements, Howard met with the CI without a supervisor present and did not notify a supervisor of those meetings. (Pl.'s 56.1 Ex. 2 at D42, D48, D51, D256).

28.    Between early 2017 and 2018, Defendant Howard was the handler (or contact) of at least two female confidential informants: "C.I. #1" and Plaintiff. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D90, D221, D256, D266).

**DEFENDANT'S RESPONSE**: **Disputed**. Plaintiff's assertion that Detective Howard "handled" a second female confidential informant ("C.I. #1") "between early 2017 and 2018" is not supported by admissible evidence.

Plaintiff's cited "support" consists of investigator worksheets and narrative summaries prepared during IAB's C-2018-234 investigation and is offered for the truth of

disputed propositions (e.g., that an individual was a CI "under" Howard during the relevant timeframe). Those worksheets, even if maintained in the ordinary course, are hearsay for the purpose offered. (*See*, *e.g.*, Pl.'s 56.1 Ex. 2, Inv. Def. Howard at D90 (reciting what "the complaint received from CCRB claims"), D221 (asserting CI status while omitting dates), D256 (investigator's narrative summary of a Patrol Guide hearing, including the statement that Howard had "two CI's assigned under him"), D266 (investigator's unrecorded summary of what "Ms. J" stated)). These documents are investigative summaries created to memorialize leads, interviews, and conferrals in C-2018-234—not business records maintained for the purpose of establishing, as a fact, the activation/deactivation status of a non-subject individual at a particular time. Plaintiff offers no foundation that the worksheet author had personal knowledge of the alleged CI's registration status during "early 2017–2018." In any event, where the worksheets recount what non-testifying declarants purportedly said (e.g., what a CCRB "complaint . . . claims," or what an interviewee "stated"), they present multiple layers of hearsay requiring an independent exception for each level. (Pl.'s 56.1 Ex. 2 at D90, D266.)

Furthermore, Plaintiff's cited record evidence fails to show what Plaintiff claims:

*First*, Plaintiff cites to page D90, a General Investigation Worksheet dated 6/9/2018 (C-2018-234) documenting that the investigator reviewed active ICMS case C18-95 (Group 33). The only sentence on that page that could be taken to support Plaintiff's assertion is this sentence: "It should be noted that the complaint received from CCRB claims that the complainant is a prostitute and works under Det. Howard." (Pl.'s 56.1 Ex. 2: Inv. Def. Howard at D90). However, the prior incident involving the supposed other C.I.

was not initiated by a CCRB complaint. Rather, "the [C-2018-95] case **was initiated by** a PO Brook of NBSI who was informed by one [o]f his confidential informants[.]" (*Id.* at D124 (emphasis added)). The C-2018-234 investigation underlying this case *was* referred through CCRB, however. (*See* Pl.'s 56.1 Ex. 2, D367; *see also* Additional Excerpts from IAB Investigation File at D2041–42, annexed to the Declaration of John McLaughlin ("McLaughlin Decl.") as "Exhibit E" (reflecting that the investigation associated with the incidents in this action was initiated by "a CCRB referral from anonymous female complainant" on June 9, 2018)). Therefore, the sentence "the complainant is a prostitute and works under Det. Howard[]" refers to the Plaintiff, not to the person of interest in the C-2018-95 investigation.

     *Second*, Plaintiff cites to a page Bates numbered D221, documenting the IAB investigator's attempt to interview a deactivated CI named "Ms. K D." The worksheet states that "K D was registered CI under subject officer Det. Howard" and then: "CI was Activated on and de-activated" — with the activation/deactivation dates redacted on the face of the document. It does not establish that the individual was a confidential informant during the time period Plaintiff claims (or at the time of any alleged conduct). (Pl.'s 56.1 Ex. 2: Inv. Def. Howard at D221).

     *Third*, and similarly, D256 summarizes a June 19, 2019 Patrol Guide hearing of Defendant Howard, in which the investigator's narrative states that Howard had "two CI's assigned under him[.]" (Pl.'s 56.1 Ex. 2: Inv. Def. Howard at D256). This statement does not itself establish the timing of any second CI's status vis-à-vis any alleged conduct.

*Fourth*, D266 is a Worksheet dated July 9, 2019 documenting an investigator's summary of a phone conversation with "prior CI registered to Det. Howard Ms. J." It does not provide registration dates for Ms. J, and does not itself establish her CI status during any earlier alleged "solicitation" period.

Conversely, *all* of the available competent record evidence states that Plaintiff was the only C.I. handled by Defendant Howard in the ordinary sense at issue here. (Exhibit B: Howard Tr. at 16:19–23); (*see also* Exhibit C: Plaintiff Tr. at 63:06–65:06, 133:03–23). Although Howard later acknowledged that there was "one" other female who was briefly "signed up" as a CI, he explained that she "never worked," that IAB directed him to "make her a CI" and then directed him to deactivate her approximately a month later, and that this arose out of "an IAB investigation with her involved." (Additional Deposition Excerpts of co-defendant Detective Gregory Howard ("Add'l Howard Tr.") annexed to McLaughlin Decl. as "Exhibit F," at 19:21–20:7; 21:8–22:6). Howard further testified that, to his knowledge, this individual never made any complaint against him. (Exhibit B, Howard Tr.: 25:2–25:6).

Finally, Defendant states this is not a material issue of fact sufficient to defeat summary judgment.

29.    Defendant Howard had begun overseeing C.I. #1 as a C.I. prior to signing Plaintiff as a confidential informant. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D90, D221, D256, D266).

**DEFENDANT'S RESPONSE**: **Disputed** for the reasons stated in Defendant's Response, ¶ 28, *supra*. Furthermore, Defendant states this is not a material issue of fact sufficient to defeat summary judgment.

16

30.     Defendant Howard had disclosed confidential information to C.I. #1, and had also engaged in sexual misconduct by "soliciting" her for sex. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D90, D221, D256, D266, D356; Ex. 4: Howard Deposition at 44:7-12).

**DEFENDANT'S RESPONSE**: **Disputed.** For the reasons stated *supra* in Defendant's response to ¶ 28, Plaintiff's cited IAB materials are not competent evidence for the truth of the disputed propositions asserted here (i.e., that Howard in fact disclosed confidential information or solicited "C.I. #1" for sex). (*See*, *e.g.*, Pl.'s 56.1 Ex. 2, Inv. Def. Howard at D90 (reciting what the "case is regarding allegations of Disclosing Confidential Information, Criminal Association and Patronizing a prostitute," and further reciting that Howard "denied soliciting sexual activities" and "denied providing confidential information"), D221 (asserting CI status while omitting dates), D256 (investigator narrative summarizing statements attributed to Howard during a PG hearing), D266 (investigator's unrecorded summary of purported phone conversation with "prior CI").

Nothing on the cited pages substantiates Plaintiff's assertion that Howard *actually* "solicit[ed]" this individual for sex or *actually* disclosed confidential information. The materials Plaintiff cites reflect, at most, that (a) an allegation was investigated, (b) investigative steps (including surveillances) yielded negative results as to in-person contact, and (c) Howard denied the allegation. (Pl.'s 56.1 Ex. 2, Inv. Def. Howard at D124 (surveillances "all yielding negative results for any contact with Ms. J or any other females"), D90 (Howard "denied soliciting sexual activities . . . and denied providing confidential information"), D266 ("Ms. J stated her relationship with Det. Howard was

17

only professional once she was registered as CI she only spoke to him twice[.]"). All allegations in that investigation were ultimately unsubstantiated. (Exhibit E, at D28–D29).

Furthermore, Defendant states this is not a material issue of fact sufficient to defeat summary judgment.

31.    It is unclear whether Defendant Howard's sexual misconduct relating to C.I. #1 was consensual or non-consensual and threatening, as Defendant Howard invoked his Fifth Amendment right when asked if he knew or understood the difference. (*See* Pl.'s 56.1 Ex. 4: Howard Deposition at 45:19-46:1).

**<u>DEFENDANT'S RESPONSE</u>**: **Disputed**. Plaintiff's assertion presupposes that there was "sexual misconduct relating to C.I. #1," but the record does not support that premise. The IAB/ICMS materials reflect that the "Prostitution – Patronize" allegation was investigated and recommended/closed as "Unsubstantiated." (Exhibit E, at D28–29). The same investigation records that a prior CI registered to Howard stated that her relationship with Howard was "only professional once she was registered as CI." (Pl.'s 56.1 Ex. 2, at D266). In addition, in the IAB interview, Howard denied soliciting sexual activity for money. (Pl.'s 56.1 Ex. 2, at D356) Plaintiff's cited deposition testimony is also mischaracterized. Howard's invocation of the Fifth Amendment in response to an abstract question about the difference between consensual sex and rape does not establish that any sexual contact occurred with C.I. #1—much less that any such contact was "non-consensual and threatening." (Pl.'s 56.1 Ex. 4, Howard Dep. 45:19–46:1). Nor is such response relevant, as an answer given by the defendant long after the alleged incident supplies no evidence that the City was on notice of any predisposition to commit such conduct.

32.     Eventually, Defendant Howard's conduct became known to a fellow Staten Island Narcotics Officer, Christopher Brooks. (*See* Pl.'s 56.1 Ex. at 2: Investigations into Defendant Howard at D90, D221, D256, D266).

**DEFENDANT'S RESPONSE**: **Disputed.** Plaintiff's cited "support" (Pl.'s 56.1 Ex. 2, D90, D221, D256, D266) consists of investigator worksheets and narrative summaries created during IAB's C-2018-234 investigation and is being offered for the truth of disputed propositions, including what any non-testifying declarant purportedly "knew," and thus presents multiple layers of hearsay for which Plaintiff supplies no admissible foundation.

Nothing on D90 states that Officer Christopher Brooks learned of any misconduct by Howard; the only potentially relevant sentence on D90 is expressly framed as what "the complaint received from CCRB claims," and does not identify Brooks or describe any "conduct" that purportedly became known to him. D221 reflects an investigator's attempted interview of a deactivated CI and does not state what Brooks allegedly knew or when he allegedly learned it. D256 is an investigator narrative summary of a Patrol Guide hearing and does not identify Brooks as a source of information or specify any "conduct" that purportedly became known to him. D266 is an investigator's unrecorded summary of a purported phone conversation with a "prior CI," and likewise does not establish what Brooks knew, if anything. To the extent Plaintiff is attempting to imply that Brooks learned of "sexual misconduct" with "C.I. #1," Plaintiff's cited pages do not substantiate any such misconduct; the underlying allegations in that investigation were ultimately unsubstantiated. (Exhibit E, at D28–29).

33.     Christopher Brooks reported the conduct to the IAB. In turn, by November 17, 2017, the IAB had opened an investigation into Defendant Howard, under C18-95, 2017-45860, based on allegations brought by fellow officer Christopher Brooks (the "2017 sexual misconduct investigation"). (*See* Pl.'s 56.1 Ex. at 2: Investigations into Defendant Howard at D90, D221, D256, D266).

**DEFENDANT'S RESPONSE**: **Disputed.** Plaintiff's cited "support" (Pl.'s 56.1 Ex. 2, D90, D221, D256, D266) consists of investigator worksheets and narrative summaries created during IAB's C-2018-234 investigation and is being offered for the truth of disputed propositions, including what any non-testifying declarant purportedly "knew," and thus presents multiple layers of hearsay for which Plaintiff supplies no admissible foundation.

The available record reflects, at most, that Officer Brooks relayed an informant tip that a prostitute ('K.J.') had advance information about an upcoming Staten Island drug case/indictment allegedly received from an unknown 120th Precinct officer (later suspected to be Howard), not that Brooks had knowledge of any 'sexual misconduct' or any substantiated CI-related abuse. (Exhibit E, at D89; Pl.'s 56.1 Ex. 2, at D124).

34.     Specifically, the 2017 sexual misconduct investigation sought to discern whether Defendant Howard had disclosed confidential information to C.I. 1 or otherwise solicited her for sex. (*See* Pl.'s 56.1 Ex. 2, at D90, D221, D256, D266).

**DEFENDANT'S RESPONSE**: **Disputed**. The cited IAB materials reflect that the 2017 IAB matter concerned allegations including "Disclosing Confidential Information" and "Patronizing a prostitute" (among other categories). (Pl.'s 56.1 Ex. 2, at D90). Plaintiff's paragraph is disputed to the extent it characterizes the subject of that investigation as "C.I.

20

1," because the cited pages do not establish that the individual at issue was "C.I. 1" or otherwise identify her as a confidential informant during the relevant period. (D221; *see* Def's. Resp. to Pl.'s 56.1 ¶ 28, *supra*). The cited pages also do not support Plaintiff's assertion that the investigation sought to determine whether Howard "solicited" a confidential informant for sex, as opposed to investigating an allegation of "Patronizing a prostitute" and related allegations as reflected in the IAB summaries. (Pl.'s 56.1 Ex. 2, at D90). To the extent Plaintiff relies on D256 or D266 to supply the "C.I." characterization, those pages are investigator summaries that do not establish CI status during the relevant time and, in any event, record a "prior CI" stating her relationship with Howard was "only professional once she was registered as CI." (*Id.*, at D256; D266). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

35.    In the course of their investigation, the IAB learned of "16,431 calls" made between Defendant Howard and C.I. 1 between July 3, 2016 and January 1, 2018.  (*See* Pl.'s 56.1 Ex. at 2: Investigations into Defendant Howard at D90).

**DEFENDANT'S RESPONSE**: **Disputed**. The cited exhibit states that the "incoming calls, outgoing calls and all text messages combined totaled 16431" between "Det. Howard and K J," and that this total ran from "7/3/2016 at 2:36 AM" through "1/3/2018 at 9:55 pm." (Pl.'s 56.1 Ex. 2, at D90). Plaintiff's paragraph is disputed to the extent it characterizes that figure as "calls" (as opposed to a combined total of calls and text messages) and misstates the end date as "January 1, 2018," because D90 expressly describes a combined total and states the end date as "1/3/2018." (*Id.*). Plaintiff's paragraph is further disputed to the extent it labels the counterparty as "C.I. 1," because D90 refers to the counterparty as "K J" and does not establish that she was a confidential informant

during the relevant period. (*Id.*; *see also* Def's. Resp. to Pl.'s 56.1 ¶ 28, *supra*). Also disputed to the extent that Plaintiff attempts to insinuate that these messages came entirely or primarily from Det. Howard; the same document reports that, between "5/3/2017 and 12/15/2017," the "incoming calls, outgoing calls and all text messages combined totaled 1253," and provides a breakdown of calls and texts during that period. (Pl.'s 56.1 Ex. 2, at D90). That breakdown reflects that "Det. Gregory Howard called K J a total of 15 times," while "K J called Det. Howard a total of 50 times." (*Id.*). The same breakdown reflects that "Det. Howard Texted messages to K J . . . 557 times," while "K J texted messages to Det. Howard . . . 631 times." (*Id.*).

36.    While the 2017 sexual assault investigation was underway, Defendant Howard was handling another female C.I.: Plaintiff. (*See* Pl.'s 56.1 Ex. at 2: Investigations into Defendant Howard at D17-18, D256).

**DEFENDANT'S RESPONSE**: **Disputed** to the extent that Plaintiff characterizes the 2017 IAB investigation as a "sexual assault investigation." The cited IAB materials reflect that the 2017 matter concerned allegations categorized as "Disclosing Confidential Information," "Criminal Association," and "Prostitution - Patronize," not an investigation into sexual assault or rape. (*See* Pl.'s 56.1 Ex. 2, at D17-18; D90). To the extent Plaintiff is attempting to equate the "Patronizing a prostitute" category with sexual assault, the IAB/ICMS materials reflect that the "Patronize" allegation was investigated and ultimately closed as "Unsubstantiated." (Exhibit E, at D29). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

37. Defendant Howard met with Plaintiff alone every time. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42; Pl.'s 56.1 Ex. 4: Howard Deposition at 31:18-23; Pl.'s 56.1 Ex. 5: Bannon Deposition at 19:3-15).

**DEFENDANT'S RESPONSE**: **Disputed in part**. The cited IAB "Disposition of Charges" reflects only that, "on multiple occasions," Howard "met with a registered confidential informant without a supervisor present," and it does not establish that Howard met with Plaintiff alone every time. (Pl.'s 56.1 Ex. 2, at D42). The IAB Patrol Guide hearing narrative similarly reflects, at most, that Howard met Plaintiff alone on **two** occasions (in a vehicle) and that "no supervisor was aware of the meeting and it is not documented anywhere," not that all meetings were one-on-one. (*Id.*, at D256). The cited deposition testimony of Defendant Howard is merely his recitation of the outcome of the IAB investigation, and the cited portion of Lt. Bannon's deposition testimony does not pertain to this question at all. (Pl.'s 56.1 Ex. 4, Howard Dep. 31:18–23; Pl.'s 56.1 Ex. 5, Bannon Dep. 19:3–15). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

38. Defendant Howard would stalk her. (*See* Pl.'s 56.1 Ex. 1: Reid Deposition at 118:4-20).

**DEFENDANT'S RESPONSE**: **Disputed**. This allegation is supported only by Plaintiff's uncorroborated, self-serving characterization of seeing Detective Howard "rolling around" in her neighborhood and driving by while she was jogging, without any specific dates, frequency, distances, or other objective facts supporting the conclusion that he was

"following" or "stalking" her. (Pl.'s 56.1 Ex. 1, Reid Dep., at 118:9–18). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.


39.    Defendant Howard would repeatedly call and text her on his department phone until that phone broke and the volume of message increased, at which point he switched to his personal phone. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D50; Ex. 4: Howard Deposition at 97:2-9).

**DEFENDANT'S RESPONSE**: **Disputed** to the extent that Plaintiff suggests that Detective Howard was constantly initiating communication with Plaintiff; the record evidence clearly states that Ms. Reid, who had saved Detective Howard's phone number under "bestie" and "babe," "kept texting with Det Howard frequently, when it got to the point where Det Howard was overwhelmed he decided to offer her Google text ap[p] to communicate with." (Additional Deposition Excerpts of Plaintiff Takisha Reid ("Add'l Reid Tr.") annexed to McLaughlin Decl. as "Exhibit G," at 44:6-14) (Pl.'s 56.1 Ex. 2, Inv. Def. Howard at D256). **Undisputed** that Detective Howard's phone broke due to the deluge of messages sent by Plaintiff. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D50; Ex. 4: Howard Deposition at 97:2-9). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

40.    Eventually in April and May 2018, although the reason for the meetup was to gather "intel", Defendant Howard sexually assaulted her, at least one time in his NYPD vehicle. (*See* Pl.'s 56.1 Ex. 1: Reid Deposition at 38:5-10, 40:14-20, 46:1-14, 51:10-25; Ex. 2, at D256; Ex. 4: Howard Dep., at 88:5-20, 89:21-90:3).

**DEFENDANT'S RESPONSE**: **Disputed**. Plaintiff's assertion that Detective Howard "sexually assaulted" her in April/May 2018 rests solely on Plaintiff's own deposition testimony. (Pl.'s 56.1 Ex. 1, Reid Dep. 38:5–10, 40:14–20, 46:1–14, 51:10–25). Plaintiff also testified that Detective Howard did not "rape [her] physically" and did not "hold [her] down." (*Id.* at 51:20–21). Plaintiff further testified that, in her interview with IAB, she stated that she had "consensual sex" with Detective Howard and "never stated that Detective Howard raped her." (Exhibit C: Reid Tr., at 41:2–5, 41:8–10). Plaintiff testified that, in July 2019, she told IAB that she had consensual sex twice with Detective Howard. (Exhibit G: Add'l Reid Tr. 14:2–5). Plaintiff gave inconsistent testimony as to what she reported to FBI Agent Guadaluco regarding these events. (Exhibit G: Add'l Reid Tr., at 47:11–17; 48:25–49:2; 49:8–10). The IAB Patrol Guide hearing narrative reflects, at most, that Howard met Plaintiff alone in a vehicle on two occasions in April/May 2018 and that "no supervisor was aware of the meeting and it is not documented anywhere," and does not itself substantiate any claim of sexual assault. (Pl.'s 56.1 Ex. 2, at D256). Detective Howard denies having any physical or sexual relationship with Plaintiff or ever physically touching her. (Exhibit F: Add'l Howard Tr., at 43:7–17) (Pl.'s 56.1 Ex. 4, Howard Dep., at 88:5–20; 89:21–90:3). To the extent Plaintiff relies solely on her own uncorroborated characterization to establish the asserted "sexual assault," Defendant disputes that such testimony—particularly where contradicted by Plaintiff's own accounts to IAB and Howard's testimony—creates a genuine issue. (Exhibit G: Add'l Reid Tr., at 14:2–5) (Exhibit C: Reid Tr., at 41:2–5, 41:8–10) (Exhibit F: Add'l Howard Tr., at 43:7–17). *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

41.    Although Lt. Banon was Defendant Howard's direct supervisor who supervised Howard's dealing with his confidential informants, he had not been present at any meeting between Howard or any of Howard's C.I.'s. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42; Pl.'s 56.1 Ex. 4: Howard Deposition at 31:18-23; Ex. 5: Bannon Deposition at 19:3-15)

**DEFENDANT'S RESPONSE**: **Undisputed in part and disputed in part**. The IAB disposition reflects that Howard met with a registered confidential informant without a supervisor present on multiple occasions. (Pl.'s 56.1 Ex. 2, at D42; *see also* Def's. Resp. to Pl.'s 56.1 ¶ 37, *supra*). Accordingly, Defendant does not dispute that Lt. Bannon was not physically present at the CI meetings at issue. Defendant disputes any suggestion that the absence of Lt. Bannon from those meetings establishes a lack of supervisory structure or requirements, because the Patrol Guide provisions require supervisor notification and provide that a supervisor "will be physically present" at CI meetings subject to stated exceptions. (Pl.'s 56.1 Ex. 3, Patrol Guide, at D4, D10). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

42.    In June 2018, the IAB launched an investigation into allegations of sexual misconduct by Defendant Howard against Plaintiff pertaining to the April and May assaults (the "IAB investigation in Plaintiff's assaults"). (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D18).

**DEFENDANT'S RESPONSE**: **Undisputed** that an IAB investigation began in June 2018 and encompassed Plaintiff's allegations. Defendant disputes Plaintiff's characterization of C-2018-234 as an "investigation into allegations of sexual misconduct," because the ICMS "Top Allegation" for C-2018-234 is listed as "ASSOCIATION – CRIMINAL – OTHER

26

THAN FAMILY" with an additional allegation of "Fraternize – Non MOS," consistent with an association/fraternization investigation rather than a sexual-assault investigation. (Exhibit E, at D121; D361–D362). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

43.    As part of the IAB investigation in Plaintiff's assaults, the investigators realized that Defendant Howard had a "prior similar allegation" which had given rise to an earlier investigation that was still ongoing—the 2017 sexual misconduct investigation. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D17-18, D90, D124, D356).

**DEFENDANT'S RESPONSE**: **Undisputed in part and disputed in part**. It is undisputed that, on June 9, 2018, the Group 42 investigator reviewed the active ICMS case C18-95 "containing similar allegations." (Pl.'s 56.1 Ex. 2, at D90) It is disputed that the prior matter was "similar" in the sense Plaintiff implies, because the same worksheet describes C18-95 as involving allegations of "Disclosing Confidential Information, Criminal Association and Patronizing a prostitute," which differ from both the charges in the C18-234 investigation and from Plaintiff's characterization as a sexual assault investigation. (*Id.*) It is further disputed that the prior matter was a "2017 sexual misconduct investigation," because the CPI/round-robin entry for C18-95 lists allegations including "DISCLOSE CONFIDENTIAL INFORMATION – OTHER" and "ASSOCIATION – CRIMINAL – OTHER THAN FAMILY," and reflects an overall disposition of "UNSUBSTANTIATED." (Pl.'s 56.1 Ex. 2, at D17–18). The record further reflects that C18-95 was "case closed" on October 18, 2018. (*Id.*) The conferral worksheet

in the June 2018 case also records that, "[i]n totality, it appears the Group 33 case is not related to the current allegations against Detective Howard in this case." (*Id.* at D124). To the extent Plaintiff attempts to imply that this statement of similarity for investigative purposes has legal meaning, Defendant states this is not a material issue of fact sufficient to defeat summary judgment.

44.    Investigators between the two cases repeatedly conferred and shared information regarding the "similar allegations." (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D17-18, D90, D124, D356).

**DEFENDANT'S RESPONSE**: **Undisputed in part and disputed in part**. It is undisputed that the June 2018 case file reflects review of the active ICMS case C18-95 and describes it as "containing similar allegations." (Pl.'s 56.1 Ex. 2, at D90). It is disputed that the investigators "repeatedly conferred and shared information" in the manner Plaintiff implies, because the same conferral worksheet records the investigator's conclusion that, "[i]n totality, it appears the Group 33 case is not related to the current allegations against Detective Howard in this case." (*Id.* at D124). It is further disputed that any such "similar allegations" were "similar" in the sense Plaintiff suggests. (*See* Def's. Resp. to Pl.'s 56.1 ¶ 43, *supra*). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

45.    Eventually, based upon the allegations brought by Ms. Reid, the NYPD brought and substantiated only three charges: failure to have a supervisor present with C.I. meetings, failure to prepare and complete written reports, a knowingly associating

with a person with a criminal history. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42, D48).

**DEFENDANT'S RESPONSE**: **Undisputed**.

46.    As a result, Defendant Howard was docked 45 vacation days and placed on probation for a year. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42).

**DEFENDANT'S RESPONSE**: **Undisputed**.

47.    The 2017 sexual misconduct investigation closed in October of 2018 and was deemed "unsubstantiated" after Defendant Howard was interviewed and denied the allegations.  (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D18, D356).

**DEFENDANT'S RESPONSE**: **Undisputed** that the relevant allegations in the earlier matter were ultimately recommended/closed as **"**Unsubstantiated." (Exhibit E, at D28–29). **Disputed** to the extent Plaintiff suggests the allegations were closed merely because Detective Howard was interviewed and denied wrongdoing. Investigators evaluated objective factors bearing on the allegations, including that "Ms. K J has never been arrested for prostitution and there is no indication of Ms. J being a prostitute[,]" in recommending the "Patronize" allegation be closed as "Unsubstantiated." (Exhibit E, at D29). The investigation file also reflects that investigators interviewed "Ms. J", who stated her relationship with Howard was "only professional once she was registered as CI." (Pl.'s 56.1 Ex. 2, D266). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

48.      At no point did the NYPD bring charges—let alone discipline—Defendant Howard for engaging in sexual misconduct with Plaintiff. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42, D48; Ex. 4: Howard Deposition at 54:15-22).

**DEFENDANT'S RESPONSE**: **Undisputed in part and disputed in part**. It is undisputed that the NYPD did not bring Patrol Guide charges specifically labeled as "sexual misconduct" against Detective Howard based on Plaintiff's allegations. (Pl.'s 56.1 Ex. 2, at D42; D48). It is disputed to the extent Plaintiff's paragraph suggests that NYPD therefore took no disciplinary action arising out of Plaintiff's allegations, because the same IAB materials reflect that Howard was charged and disciplined for Patrol Guide violations arising from his handling of Plaintiff as a confidential informant, including meeting with a registered confidential informant without a supervisor present and related documentation/reporting failures. (*Id.*). To the extent Plaintiff relies on Howard's deposition testimony for the same point, Defendant does not dispute that the discipline imposed did not include a charge titled "sexual misconduct." (Exhibit G: Add'l Howard Tr. 54:15–22). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

49.      Nor did the NYPD ever provide extra supervision or training. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42, D48; Ex. 4: Howard Deposition at 54:15-22).

**DEFENDANT'S RESPONSE**: **Undisputed** that the IAB disciplinary materials do not reflect that NYPD imposed a formal program of "extra supervision or training" specific to Detective Howard following the discipline imposed in Disciplinary Case No. 2019-20807.

(Pl.'s 56.1 Ex. 2, at D42; D48). Plaintiff's paragraph is **disputed** to the extent it suggests that NYPD therefore provided no supervision or oversight at all, because the Patrol Guide provisions governing confidential informants require immediate supervisor involvement and supervisor notification and provide that a supervisor "will be physically present" at CI meetings, subject to stated exceptions. (Pl.'s 56.1 Ex. 3, Patrol Guide, at D4, D10). The IAB disciplinary record further reflects that Howard was, in fact, charged and disciplined for CI-handling violations (including meeting with a registered confidential informant without a supervisor present and related documentation/reporting failures). (Pl.'s 56.1 Ex. 2, at D42; D48).

50.     Instead, not only does Defendant Howard remain employed by the N.Y.P.D., he is currently ranked a Detective Specialist. *See* Gregory Howard, Shield 706, *Officer Profile*, NYPD ONLINE, https://nypdonline.org/link/officer-profile (last visited Jan. 14, 2026).

**DEFENDANT'S RESPONSE**: Disputed as immaterial and lacking foundation. Plaintiff relies solely on a third-party public website (NYPD Online "Officer Profile") that is not a Bates-stamped record exhibit and does not provide a competent evidentiary foundation to establish Howard's current employment status or rank for purposes of summary judgment. Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

51.     Notwithstanding the above allegations, at no point did the NYPD limit Defendant Howard's authority to work with confidential informants, nor did it provide additional training, supervision, or even the minimal oversight required under its

31

own policies as it pertains to officer and C.I. engagement. (*See* Pl.'s 56.1 Ex. 2: Investigations into Defendant Howard at D42, D48, D90, D124, D256, D266, D356; Ex. 4: Howard Deposition at 54:15-22; Ex. 5: Bannon Deposition at 10:4-18, 11:14-22).

**DEFENDANT'S RESPONSE**: **Undisputed in part and disputed in part**. It is **undisputed** that the IAB disciplinary documents do not reflect that NYPD issued a formal written "ban" on Howard's future CI work or a formal program of "additional training" specific to Howard. (Pl.'s 56.1 Ex. 2, at D42, D48). It is disputed that this omission establishes anything about "limiting authority" or "additional training" because the same IAB file reflects that the discipline imposed addressed CI-handling misconduct during the charged time period—namely, failing to prepare required CI contact reports and meeting with a registered CI without a supervisor present. (*Id.*).

It is also **disputed** that NYPD failed to provide "even the minimal oversight required under its own policies," because the Patrol Guide provisions governing CIs require supervisor involvement and notification and provide that a supervisor "will be physically present" at CI meetings, subject to stated exceptions. (Pl.'s 56.1 Ex. 3, Patrol Guide, at D4, D10). The IAB disciplinary record reflects that Howard was charged and found guilty precisely because he **violated** those supervisory/oversight requirements by meeting with a registered confidential informant without a supervisor present and by failing to prepare required written reports regarding each CI contact. (Pl.'s 56.1 Ex. 2, at D42, D48). The IAB investigative materials further reflect that Howard did not notify a supervisor regarding the meetings at issue and that "no supervisor was aware of the meeting and it is not documented anywhere," underscoring that the absence of supervisory presence was the

product of Howard's noncompliance with required procedures rather than the absence of "minimal oversight" policies. (Pl.'s 56.1 Ex. 2, at D51, D256).

   Finally, Plaintiff's broad assertion that NYPD "at no point" limited Howard's CI authority is, at minimum, overstated as a practical matter because, in fact, Detective Howard never handled another CI after the Plaintiff. (Exhibit G: Add'l Howard Tr., at 16:22–17:16). The cited disciplinary materials concern CI handling during a defined period and do not establish any subsequent CI engagements requiring additional "limits" beyond the supervisory and reporting regime already imposed by policy. (Pl.'s 56.1 Ex. 2, at D42, D48; Pl.'s 56.1 Ex. 3, Patrol Guide, at D4, D10). Defendant further states this is not a material issue of fact sufficient to defeat summary judgment.

   52. Between 2017 through 2019, Lt. Bannon also supervised another Detective in the 120th Precinct: Brooks Ingram. (*See* Pl.'s 56.1 Ex. 5: Bannon Deposition at 5:17-23, 8:1-13; Ex. 6 to Decl. of Matthew Christiana in Supp. of Pl.'s Counterstatement of Undisputed Facts (hereinafter "Pl.'s 56.1 Ex. 6: Final Order of Dismissal of Police Officer Brooks Ingram"), at p.7).

**DEFENDANT'S RESPONSE**: **Undisputed in part and disputed in part**. It is undisputed that Lt. Bannon testified that, depending on unit structure, he could be the commanding officer as a lieutenant with detectives (and sometimes sergeants) under him in the chain of command. (Pl.'s 56.1 Ex. 5, Bannon Dep. 5:17–23, 8:1–13). It is also undisputed that the Final Order reflects that an investigation "revealed" that Ingram was involved in a sexual relationship with "K.S." that began when he pulled her over in "2017 or 2018." (Pl.'s 56.1 Ex. 6, Final Order at 2). Defendant disputes Plaintiff's apparent use

of Ingram's later-adjudicated misconduct as evidence that Lt. Bannon was negligent (or "on notice") as to Detective Howard, because the Final Order does not mention Lt. Bannon and does not address what Lt. Bannon knew or when he knew it, nor does it relate in any way to Det. Howard's conduct or propensity for such conduct. (*Id.* at 7–12). Defendant further disputes that the Final Order supplies evidence relevant to municipal notice as to Howard, because the Final Order describes charges stemming from an IAB probe into Ingram's allegedly improper relationships "between September 2021 and June 2023," which post-dates the events at issue here. (*Id.* at 7–8).

53.    Brooks Ingram, under Lt. Bannon's supervision had sexual relationships with multiple female witnesses, including an informant, which began around 2017 and continued on for years. (*See* Pl.'s 56.1 Ex. 6: Final Order of Dismissal of Police Officer Brooks Ingram, at p. 7, 8, 9, 10, 11-12).

**DEFENDANT'S RESPONSE**: **Disputed** to the extent Plaintiff asserts that this conduct occurred "under Lt. Bannon's supervision" in a manner that establishes negligent supervision as to Howard, because the Final Order does not identify Lt. Bannon or describe any contemporaneous notice to Lt. Bannon of Ingram's alleged conduct. (Pl.'s 56.1 Ex. 6, Final Order at 7–12). It is further disputed to the extent Plaintiff offers Ingram's alleged misconduct as evidence that the City was on notice of Howard's alleged misconduct, because the Final Order does not address Howard and does not establish any facts bearing on what the City knew or should have known about Howard at the relevant time. (*Id.* at 7–12).

Dated:        New York, New York
              February 13, 2026

STEVEN BANKS
Corporation Counsel - City of New York
*Attorney for Defendant City of New York*
100 Church Street
New York, New York 10007
(212) 356-2670

By:    /s/ *John McLaughlin*
      John McLaughlin
      *Special Federal Litigation Division*

To:    **VIA ECF**
      *All Counsel of Record*

35