# Exhibit F

*Additional Pages from Deposition Transcript of Detective Howard*

```
 1    UNITED STATES DISTRICT COURT

 2    EASTERN DISTRICT OF NEW YORK

 3    ----------------------------------------------------

 4    TAKIESHA REID,

 5

 6          Plaintiff,

 7     -vs-                     INDEX NO. 20 CV 3926(FB)(PK)

 8    THE CITY OF NEW YORK,
      GREGORY HOWARD,
 9    JOHN AND JANE DOES 1-5,

10
            Defendants.
11
      ----------------------------------------------------
12           EXAMINATION BEFORE TRIAL OF GREGORY HOWARD

13                   APPEARING REMOTELY FROM

14                  NEW YORK CITY, NEW YORK

15

16

17            Wednesday, October 26th, 2022

18                 10:00 p.m. - 12:10 p.m.

19                    pursuant to notice

20

21    REPORTED BY:

22    Kelly Hairston, Notary Public

23    APPEARING REMOTELY FROM ERIE COUNTY, NEW YORK


                    CONFIDENTIAL PORTIONS REDACTED
```

```
 1
 2              R E M O T E    A P P E A R A N C E S
 3
 4         APPEARING FOR THE PLAINTIFF:
 5                 VIK PAWAR LAW, PLLC,
                   BY:  VIK PAWAR, ESQ.,
 6                 20 Vesey Street, Suite 1410,
                   New York, New York 10007,
 7                 (212) 571-0805.
 8
           APPEARING FOR THE DEFENDANT DETECTIVE GREGORY HOWARD:
 9
                   LAW OFFICES OF PETER TILL,
10                 BY:  PETER W. TILL, ESQ.,
                   105 Morris Avenue,
11                 Springfield Township, New Jersey
                   07081,
12                 (973) 258-0064.
13         APPEARING FOR THE DEFENDANT CITY OF NEW YORK:
14                 NEW YORK CITY LAW DEPARTMENT,
                   FEDERAL LITIGATION DIVISION,
15                 ASSISTANT CORPORATION COUNSEL,
                   BY:  JEFFREY FRANK, ESQ.,
16                 100 Church Street,
                   New York, New York, 10007,
17                 (212) 356-3541.
18
19
20
21
22
23
```

```
 1                         I N D E X

 2

 3    WITNESS              EXAMINATION                    PAGE

 4    Gregory Howard

 5                         by Mr. Pawar                     04

 6                         by Mr. Frank                     96

 7                         by Mr. Pawar                     98

 8

 9

10

11                          EXHIBITS

12    NUMBER               DESCRIPTION                    PAGE

13

14                  NO EXHIBITS WERE MARKED
```

**REPORTED REMOTELY FROM NEW YORK CITY, NEW YORK**

THE REPORTER: Will the attorneys participating in this deposition acknowledge that I will administer the oath remotely, and consent to waive any objections to this manner of reporting?

Please indicate your agreement by stating your name, who you represent and your agreement on the record, starting with the noticing attorney.

MR. PAWAR: Vik Pawar for the plaintiff. Yes, I consent.

MR. TILL: Peter Till for Mr. -- for Detective Howard. Yes, we consent.

MR. FRANK: Jeffrey Frank for the City of New York. We consent.

**DETECTIVE GREGORY HOWARD,**

having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. PAWAR:

Q. Detective Howard, my name is Vik Pawar. I represent plaintiff Takiesha Reid. You and I have never met

1   A. The 120th.
2   Q. 120th.  So when you got promoted from -- when you got
3      promoted to a third grade detective, did you undergo
4      any sort of training when it comes to confidential
5      informants?
6   A. No.
7   Q. So you testified that October 17th is when you started
8      first -- you know what I mean by a CI; right?
9   A. Yes.
10  Q. Okay.  So I'm just going to use the word CI, just so --
11     so October 17th is the first time you started dealing
12     with a CI?
13  A. Yes.
14  Q. And your testimony is that you received no training
15     prior to that?
16  A. No, we have a patrol guide.
17  Q. And did you read the patrol guide?
18  A. At that time, no.
19  Q. So what was your first encounter with the CI in October
20     2017?
21  A. With Ms. Reid?
22  Q. Well, was Ms. Reid your first CI?
23  A. First and only.

1  Q. I apologize.  I was ripping a paper off, so I didn't --
2     was Ms. Reid your first CI?
3  A. Yes, sir.
4  Q. Okay.  And how many other CIs did you have -- by the
5     way, withdraw that.
6       As a detective specialist, are you allowed to have a
7     CI now?
8  A. I can.
9  Q. When was the last time you had one as a detective
10    specialist?
11 A. I haven't.
12 Q. Have you asked for it?
13 A. No.
14 Q. Any reason why?
15 A. At my job at this moment, I'm not in a position to have
16    confidential informants.
17 Q. So it's a decision that's made by people higher than
18    you that you don't have any contact with CI -- CIs?
19 A. That's never been stated.
20 Q. But you just told me that in your position now you're
21    not supposed to have any contact with CI, what made you
22    come to an understanding that that's the case?
23      MR. TILL:  Objection as to form.  Go ahead and

1  Q. Why?
2  A. Overtime.
3  Q. So as a detective specialist, you don't get as much
4     overtime as you would have if you were in the detective
5     squad?
6  A. No, I don't because I'm on patrol.
7  Q. So approximately in 2019, how much of overtime were you
8     getting in the detective squad?
9  A. In 2019?
10 Q. Yes.
11 A. Give or take, 30, 40 hours a month.
12 Q. And on patrol, how many hours of overtime are you
13    getting?
14 A. None.
15 Q. Is there a document in front of you, Detective
16    Howard?
17        MR. TILL: No, just papers on the table. They're my
18    notes.
19
20 BY MR. PAWAR:
21 Q. So from 2017 to 2020 approximately, when you were on
22    the detective squad, besides Ms. Reid, how many other
23    CIs did you have?

1   A. One.
2   Q. And what was that person's name?
3       MR. TILL: Objection. I'm directing him not to
4       answer that.
5
6   BY MR. PAWAR:
7   Q. So besides Ms. Reid, there was another individual who
8       worked as a CI for you?
9   A. She didn't work. I was told to make her a CI and then
10      when she was a CI, I was told to deactivate her.
11  Q. Okay. We're not talking about Ms. Reid, you're talking
12      about somebody else; right?
13  A. Someone else.
14  Q. Okay.
15      MR. PAWAR: We'll mark that for -- Peter, we'll mark
16      this for a ruling, for a ruling from the judge
17      regarding the CI's name.
18      MR. FRANK: I'd just like to note my objection to
19      the record as well on the law enforcement privilege and
20      we'll mark it for a ruling.
21
22  BY MR. PAWAR:
23  Q. Detective Howard, this other CI you stated, I take it

1          it's a female?
2     A.   Yes.
3     Q.   Okay.  And when did you first engage with her?
4     A.   I've known this person for years.
5     Q.   When you say years, can you tell us approximately how
6          many?
7     A.   15 plus.
8     Q.   And you were told to approach her to be a CI, she
9          became a CI and then you had to deactivate her?
10    A.   I wasn't told to approach her.  There was an IAB
11         investigation with her involved.
12    Q.   Okay.  And whose idea was it for this individual to
13         be -- become a CI?
14    A.   Internal affairs.
15    Q.   And they request that you approach her because you've
16         known her for such a long time?
17    A.   Because she gave pertinent information about cases.
18    Q.   No, no, I understand that.  How did you approach this
19         individual, did you give her a phone call, did you
20         approach her in person and say hey, do you want to work
21         with us as a CI, how did that come about?
22    A.   Phone call.
23    Q.   And did she agree to be a CI?

1    A. Yes.
2    Q. And for approximately how long was she working as a CI
3        for you?
4    A. She never worked. She was signed up approximately a
5        month and then internal affairs said to deactivate
6        her.
7    Q. Okay. So when you said that she had given pertinent
8        information about cases, was that the information she'd
9        given to you within that one month period?
10   A. Yes, and before.
11   Q. Before she became a CI?
12   A. Yes.
13   Q. What type of information would she give you?
14   A. People that were involved in shootings, gang members.
15   Q. And why was she doing this?
16   A. She was a friend.
17   Q. And did she get compensated in any way?
18   A. No.
19   Q. How long has she been a friend of yours?
20   A. 15 years plus. I went to school with her family.
21   Q. And she lives in Staten Island?
22   A. Yes.
23   Q. When was the last time you spoke with her?

1  Q. Would you be able to tell from the phone records
2     whether a certain phone call was from Ms. Reid?
3  A. No, I wouldn't.
4  Q. So you said this conversation would last about a
5     minute?
6  A. No, 5 minutes to 10 minutes.
7  Q. I apologize, I misheard it.  Did you ever have a
8     physical relationship with Ms. Reid?
9  A. No.
10 Q. Fair to say you've never physically touched her?
11 A. No.
12 Q. It's fair to say or it's not fair to say?
13 A. It's fair to say I never touched her.
14 Q. Okay.  So it's also fair to say that you've never had
15    any sexual relations with her?
16       MR. TILL:  Objection.
17       THE WITNESS:  Fair to say I never did.
18       MR. TILL:  Objection.  You're getting into an area
19    that unfortunately may trigger the Fifth Amendment.
20       MR. PAWAR:  Well, he can invoke it if he wants.
21
22 BY MR. PAWAR:
23 Q. So Detective Howard, did you have any sexual --

```
STATE OF NEW YORK)
                 )   ss.
COUNTY OF ERIE   )


     I, Kelly S. Hairston, Notary Public, in and for the County
of Erie, State of New York, do hereby certify:


     That the witness whose testimony appears hereinbefore
was, before the commencement of their testimony, duly
sworn to testify the truth, the whole truth and nothing
but the truth; that said testimony was taken pursuant to
notice at the time and place as herein set forth; that
said testimony was taken down by me and thereafter
transcribed into typewriting, and I hereby certify the
foregoing testimony is a full, true and correct
transcription of my shorthand notes so taken.


     I further certify that I am neither counsel for nor
related to any party to said action, nor in any way
interested in the outcome thereof.


     IN WITNESS WHEREOF, I have hereunto subscribed my
name and affixed my seal this 15th day of November, 2022.
```

*[Signature: Kelly Hairston]*

Kelly S. Hairston
Notary Public,
State of New York, County of Erie
My commission expires 08/29/2026.