# Exhibit G

*Additional Pages from Deposition Transcript of Takisha Reid*

```
                                                              Page 1

 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------------------X
     TAKISHA REID,
 3
                                    PLAINTIFF,
 4
                      -against-     Index No.:
 5                                  20-CV-3926 (FB)(PK)
 6   THE CITY OF NEW YORK POLICE DEPARTMENT, THE CITY OF NEW
     YORK, NYPD OFFICER GREGORY HOWARD, JOHN DOE AND JANE DOES
 7   1-5,
 8                                  DEFENDANTS.
     ------------------------------------------X
 9
10                        DATE: September 28, 2022
11                        TIME: 11:35 A.M.
12
13
14              EXAMINATION BEFORE TRIAL of the Plaintiff,
15   TAKISHA REID, taken by the Defendants, pursuant to an
16   Order, held at the above date and time, before Alexandra
17   Glasgow, a Notary Public of the State of New York.
18
19
20
21
22
23
24
25
```

```
 1   A P P E A R A N C E S:
 2
 3   PAWAR LAW GROUP, PC
          Attorneys for the Plaintiff
 4        TAKISHA REID
          20 Vesey Street, Suite 1410
 5        New York, New York 10007
          BY: VIKRANT PAWAR, ESQ.
 6            DEVON RADLIN, ESQ.
 7   HON. SYLVIA O. HINDS-RADIX
     CORPORATION COUNSEL
 8   NEW YORK CITY LAW DEPARTMENT
          Attorneys for the Defendant
 9        THE CITY OF NEW YORK POLICE DEPARTMENT, THE CITY OF
          NEW YORK
10        100 Church Street
          New York, New York 10007
11        BY: JEFFREY F. FRANK, ESQ.
     File #: 2020-035235
12        Control #: 22-2455
13   LAW OFFICES OF PETER W. TILL
          Attorneys for the Defendant
14        NYPD OFFICER GREGORY HOWARD
          105 Morris Avenue, Suite 201
15        Springfield, New Jersey 07081
          BY: LOUIS J. KELEHER, ESQ.
16
17   ALSO PRESENT:
          Gregory Howard
18
                  *         *         *
19
20
21
22
23
24
25
```

```
 1           221. UNIFORM RULES FOR THE
                CONDUCT OF DEPOSITIONS
 2   221.1 Objections at Depositions
     (a) Objections in general. No objections shall be made at a
 3   deposition except those which, pursuant to subdivision (b),
     (c) or (d) of Rule 3115 of the Civil Practice Law and
 4   Rules, would be waived if not interposed, and except in
     compliance with subdivision (e) of such rule.  All
 5   objections made at a deposition shall be noted by the
     officer before whom the deposition is taken, and the answer
 6   shall be given and the deposition shall proceed subject to
     the objections and to the right of a person to apply for
 7   appropriate relief pursuant to Article 31 of the CPLR.
     (b) Speaking objections restricted.  Every objection raised
 8   during a deposition shall be stated succinctly and framed
     so as not to suggest an answer to the deponent and, at the
 9   request of the questioning attorney, shall include a clear
     statement as to any defect in form or other basis of error
10   or irregularity.  Except to the extent permitted by CPLR
     Rule 3115 or by this rule, during the course of the
11   examination persons in attendance shall not make statements
     or comments that interfere with the questioning.
12   221.2 Refusal to answer when objection is made. A deponent
     shall answer all questions at a deposition, except (i) to
13   preserve a privilege or right of confidentiality, (ii) to
     enforce a limitation set forth in an order of the court, or
14   (iii) when the question is plainly improper and would, if
     answered, cause significant prejudice to any person.  An
15   attorney shall not direct a deponent not to answer except
     as provided in CPLR Rule 3115 or this subdivision.  Any
16   refusal to answer or direction not to answer shall be
     accompanied by a succinct and clear statement of the basis
17   therefor.  If the deponent does not answer a question, the
     examining party shall have the right to complete the
18   remainder of the deposition.
19
20
21
22
23
24
25
```

Page 4

1         221. UNIFORM RULES FOR THE
              CONDUCT OF DEPOSITIONS
2

   221.3 Communication with the deponent
3              An attorney shall not interrupt the deposition
   for the purpose of communicating with the deponent unless
4  all parties consent or the communication is made for the
   purpose of determining whether the question should not be
5  answered on the grounds set forth in section 221.2 of these
   rules and, in such event, the reason for the communication
6  shall be stated for the record succinctly and clearly.
7
               IT IS FURTHER STIPULATED AND AGREED that the
8  transcript may be signed before any Notary Public with the
   same force and effect as if signed before a clerk or a
9  Judge of the court.
10
               IT IS FURTHER STIPULATED AND AGREED that the
11 examination before trial may be utilized for all purposes
   as provided by the CPLR.
12
13             IT IS FURTHER STIPULATED AND AGREED that all
   rights provided to all parties by the CPLR cannot be deemed
14 waived and the appropriate sections of the CPLR shall be
   controlling with respect hereto.
15
16             IT IS FURTHER STIPULATED AND AGREED by and
   between the attorneys for the respective parties hereto
17 that a copy of this examination shall be furnished, without
   charge, to the attorneys representing the witness
18 testifying herein.
19
20
21
22
23
24
25

```
1    T A K I S H A   R E I D, called as a witness, having been
2    first duly sworn by a Notary Public of the State of New
3    York, was examined and testified as follows:
4    EXAMINATION BY
5    MR. KELEHER:
6       Q.      Please state your name for the record.
7       A.      Takisha Reid.
8       Q.      What is your address?
9       A.      323020 Ocean Side Boulevard, Ocean Side,
10   California 92054.
11      Q.      Ms. Reid, I apologize for the delay.  We were on
12   the phone with the court working out some issues before the
13   deposition started.
14              Again, my name is Louis Keleher.  I'm an
15   associate attorney with the Law Office of Peter W. Till.
16   We represent defendant NYPD Officer Gregory Howard in
17   connection to a lawsuit you filed on August 25th, 2020
18   before the United States District Court Eastern District of
19   New York.  We are here virtually for the purposes of your
20   deposition.
21              Have you ever been deposed before?
22      A.      Yes.
23      Q.      When was that?
24      A.      March in 2020.
25      Q.      What was that deposition for?
```

T. REID

Page 14

| | | |
|---|---|---|
| 1 | | keeping the dog under control, and so I sued my job. |
| 2 | Q. | You sued the employer? |
| 3 | A. | Yes. |
| 4 | Q. | For being bit by the dog? |
| 5 | A. | Yes. |
| 6 | Q. | Who was your employer that you sued? |
| 7 | A. | Marriott. |
| 8 | Q. | And do you have any recollection as to what year |
| 9 | | that lawsuit would have been filed? |
| 10 | A. | It was this year. |
| 11 | Q. | In what state was that filed in? |
| 12 | A. | California. |
| 13 | Q. | So if it was filed this year, is that lawsuit |
| 14 | | still pending? |
| 15 | A. | No, it's finished. |
| 16 | Q. | Was it settled? |
| 17 | A. | Yes. |
| 18 | Q. | And did you receive any monetary settlement in |
| 19 | | that, if you're allowed to say? |
| 20 | A. | Yes. |
| 21 | | MR. PAWAR: Just one second, Louis. Ms. |
| 22 | | Reid, if you signed a confidentiality order with |
| 23 | | respect to the settlement then I would not give |
| 24 | | the figure to counsel but if you didn't, and |
| 25 | | you're free to discuss the settlement amount, |

1  Q.  I asked you again, ma'am.
2  A.  I said no.
3  Q.  Your feelings of betrayal towards Greg Howard
4  came before you filed this lawsuit, correct?
5  A.  Yes.
6  Q.  What was Greg Howard's, what was his name in your
7  cellphone?
8  A.  In the beginning his name was Bestie because I
9  didn't want someone to go through my phone and see, so I
10 just gave him like a fake name.  When he told me to get
11 burner phones for him and I so we could continue
12 conversating his name was babe in my phone.
13 Q.  That's how you saved his contact?
14 A.  Yes.
15 Q.  You're the one that acquired those phones?
16 A.  No, I didn't acquire those phones.  He told me to
17 get a burner phone and he got one.  Don't try to trip me
18 up.
19 Q.  I'm not trying to trip you up.  I said you
20 acquired the phone?
21 A.  I acquired my phone and he got his phone.
22 Q.  Thank you for clarifying.  How often are you
23 seeing your doctor in California?
24 A.  I see her once a month.
25 Q.  In regards to your memory condition, have you

| | | |
|---|---|---|
| 1 | A. | This was 5:00 a.m. in the morning. |
| 2 | Q. | What part of the house did the sexual encounter |
| 3 | occur at? | |
| 4 | A. | It didn't happen -- it happened in the front of |
| 5 | my house.  Howie never came into my house.  It was always |
| 6 | in his car but we were parked in front of my house. |
| 7 | Q. | How long did this incident last? |
| 8 | A. | You really want to embarrass your client?  Not |
| 9 | that long.  Not that long, like a few seconds.  He's not |
| 10 | that big. | |
| 11 | Q. | Did you report this incident to the authorities? |
| 12 | A. | Yes, I did.  The first incident, I told Chris |
| 13 | about what Howie did to me. |
| 14 | Q. | You told -- |
| 15 | A. | Chris Guadaluco. |
| 16 | Q. | Chris is the FBI agent? |
| 17 | A. | Yes. |
| 18 | Q. | You were still in contact with Chris at that |
| 19 | time? | |
| 20 | A. | Yes, I was still under Chris at that time. |
| 21 | Q. | Was there overlap with Chris and Detective |
| 22 | Howard? | |
| 23 | A. | Explain more when you say overlap. |
| 24 | Q. | No problem, ma'am.  Were you working for Chris, |
| 25 | the FBI agent, and my client, Detective Howard, at the same |

1  time?
2     A.     Yes.
3     Q.     During what time was that?  What was the overlap
4  period?  When did you stop working for Chris?
5     A.     I stopped working for Chris December of 2018.  He
6  turned me over to someone else but I was still under FBI.
7  I just was no longer under Chris.
8     Q.     So you stopped working for Chris in December of
9  2018, when did the second incident?
10    A.     May 25th of 2018.
11    Q.     Ma'am, I'm trying to piece your story together.
12    A.     I'm just answering your questions.
13    Q.     That was in May of 2018?
14    A.     Yes.
15    Q.     How did you report that to Chris?
16    A.     I reported the first incident to Chris after the
17 incident with Howie first happened in April.  It bothered
18 me so much I reported it to Chris.  I told Chris what
19 happened.
20    Q.     You previously testified that after the incident
21 in the car, you informed Chris, that's what you said to me.
22 I'm asking you, how did you inform Chris about the incident
23 in the car.  If your previous testimony is not truthful,
24 you can tell me you didn't inform Chris about this.
25    A.     No, my previous testimony is very truthful.  I

1  informed Chris the first incident happened.  Not the second
2  incident.
3      Q.    That was the question I asked you.
4      A.    I misunderstood.
5      Q.    Okay.  I want to clarify.  You didn't inform
6  Chris about the second incident; is that correct?
7          MS. RADLIN:  Objection to form.
8      A.    I informed Chris about the first incident and
9  also the second incident, the second time, yes.  Both
10 incidents, I informed Chris.
11     Q.    How did you inform Chris about --
12     A.    Telephone, telephone.
13     Q.    By telephone.  How long was the conversation?
14     A.    Thirty minutes.
15     Q.    You informed an FBI agent that you were raped,
16 what was his reaction?
17     A.    His reaction -- he asked me what happened, and I
18 told him what happened and he asked me -- he said you need
19 to report it to IAB, and I asked him what was IAB, and he
20 told me it was Internal Affairs Bureau.  He said report him
21 to IAB.
22     Q.    He didn't tell you to make a report at your local
23 precinct?
24     A.    No, he told me to go report it to IAB, and I was
25 scared to go to the precinct because the local precinct is

1   Detective Howard and Ms. Reid communicated via phone call
2   and text messages.
3           The first meeting was on April 13th, 2018.  They
4   visited a bar in Staten Island (cargo Cafe Bar).  Once they
5   left the bar, Detective Howard drove to Prospect Avenue,
6   parked and kissed Ms. Reid.  Ms. Reid stated they did have
7   consensual sex in the back seat of Detective Howard's car
8   (she believed it was his personal vehicle due to the
9   personal items she noticed in the vehicle).
10          Ms. Reid provided the following details:  She
11  remembered climbing into the rear seat of the vehicle
12  without ever exiting the vehicle.  Detective Howard exited
13  the vehicle, opened the rear driver side door and proceeded
14  to have sexual intercourse with Ms. Reid.
15          The second meeting was on May 23rd, 2018.  They
16  had consensual sex around 5:30 a.m.  After the consensual
17  intercourse which took place in the vehicle, Detective
18  Howard stated to Ms. Reid he was cutting her off, meaning
19  to deactivate her as a CI so they can start dating.
20          The next phone contact was around August 2nd,
21  2018 when Ms. Reid informed Detective Howard about her 311
22  complain against him.  Ms. Reid recalled the last phone
23  contact was in January of 2019.  Did I read that correctly?
24      A.    Yeah, there's a little bit of stuff that's not
25  right but, yes.

1                    D E C L A R A T I O N

3         I hereby certify that having been first duly
4   sworn to testify to the truth, I gave the above testimony.

6         I FURTHER CERTIFY that the foregoing transcript
7   is a true and correct transcript of the testimony given by
8   me at the time and place specified hereinbefore.

                        *[signature]*
12                      TAKISHA REID

15  Subscribed and sworn to before me
16  this  3  day of  December   20 22

                   *[signature]*
19                  NOTARY PUBLIC

                Cheyanne Davis
              Notary Public - Michigan
           Eaton County - Com. Ex. 10/10/2027
              Acting in the county of Ingham

T. REID

Page 143

1              C E R T I F I C A T E

2

3    STATE OF NEW YORK         )
                               : SS.:
4    COUNTY OF ORANGE          )

5

6              I, ALEXANDRA GLASGOW, a Notary Public for and
7    within the State of New York, do hereby certify:
8              That the witness whose examination is
9    hereinbefore set forth was duly sworn and that such
10   examination is a true record of the testimony given by that
11   witness.
12             I further certify that I am not related to any
13   of the parties to this action by blood or by marriage and
14   that I am in no way interested in the outcome of this
15   matter.
16             IN WITNESS WHEREOF, I have hereunto set my hand
17   this 6th day of October 2022.
18
19
20                    *Alexandra Glasgow* (signature)
                      ALEXANDRA GLASGOW
21
22
23
24
25