UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TAKISHA REID, * Case No. 20-CV-3926(PK)
*
Plaintiff, * Brooklyn, New York
* February 6, 2026
v. *
*
*
NYPD OFFICER GREGORY HOWARD, *
*
Defendant. *
*
* * * * * * * * * * * * * * * *

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: MATTHEW W. CHRISTIANA, ESQ.
Kopke Christiana & Rastetter
199 Cook Street, Suite 308
Brooklyn, NY 11206

For the Defendant, The City of New York: JOHN McLAUGHLIN, ESQ
New York City Law Department
100 Church Street, Ste 3-183
New York NY 10007

For the Defendant, NYPD Officer Gregory Howard: PETER W. TILL, ESQ.
Law Offices of Peter W. Till
105 Morris Avenue, Suite 201
Springfield, NJ 07081

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

(Proceedings commenced at 11:01 a.m.)

THE CLERK: This is civil clause for motion hearing by telephone, Reid v. Howard, et al., docket no. 20-CV-3926, Magistrate Judge Peggy Kuo presiding.

Will the parties please state their appearances, beginning with the plaintiff.

MR. CHRISTIANA: Good afternoon, Your Honor. Matthew Christiana on behalf of the plaintiff.

MR. TILL: Judge Kuo, good morning. Peter Till on behalf of Mr. Howard.

MR. MCLAUGHLIN: Good morning, Your Honor. John McLaughlin, of the New York City Law Department, on behalf of the City.

THE COURT: All right. Good morning, everyone.

We are having this conference because plaintiff has filed a request at docket no. 131 to reopen discovery so that she can engage in expert discovery and submit an opinion about the actions of individuals who have been victims of sexual assault.

The filing was made January 23rd. I have not seen any opposition filed on the docket as of today.

So, Mr. McLaughlin, are you opposing this motion?

MR. MCLAUGHLIN: Your Honor, as of right now, the City's not taking a position. We weren't under the impression that we were supposed to enter anything on the

docket before this hearing. We were going to reconsider whether we might oppose after this hearing. Our position is more of a -- if this will be granted, there are certain guardrails we would want on it and certain ways we would want it. And also we assumed it would be easier to just talk that over rather than try to put in a premature opposition.

THE COURT: Okay. I'm not sure what you mean by premature, but that's fine. So let me hear -- Mr. Till.

MR. TILL: Well, Judge, I join Mr. McLaughlin in that we would oppose it. I think the argument is very succinct for you. I don't think it would be more than a page and a half opposition, and we would oppose it.

And, Judge, I think having been before the court before, Your Honor gets to the point very quickly. I think the issue is whether or not there's any prejudice to Mr. Howard as a defendant.

I think there is, but I think it should be laid out. I looked at the court's local rules, and that's why I myself did not enter an opposition of substance without further instruction of the court. And that's how I read that.

THE COURT: Okay. I guess I should revisit my individual rules if there is cause for confusion. I don't really know what part of my rules everyone's relying or defendants are relying on.

There is this motion that has been filed on page one of the motion. Plaintiff sets forth some deadlines that she believed were in place and no -- for an opposition due by February 2nd. And I didn't see any defendant say those are incorrect dates.

So I was waiting to hear and see if there was an opposition to be filed by that date and none came in. So I'm not entirely sure what the parties were or the defendants were waiting for.

This was not a pre-motion conference request. It was an actual motion. And the court said that there was going to be a motion hearing on this date. So I perhaps need to revisit what I've written so that it's clear.

MR. CHRISTIANA: No, Judge. I would apologize to the court because I've read the rule that there's -- you know, there's no submission without first clearance from the court. And I will concede I did not write a letter to the court asking for that permission. That's how I've read Your Honor's individual rules.

THE COURT: Okay.

MR. CHRISTIANA: But I can assure the court that I could get a response to the court on this, if the court would allow, by Tuesday noontime, that would be fine.

THE COURT: Well, I don't --

MR. CHRISTIANA: If the court would allow.

THE COURT: Well, I don't -- if your intention was to just argue it today, then let's just do that.

MR. CHRISTIANA: I'm fine with that, Judge.

THE COURT: Okay.

MR. CHRISTIANA: I appreciate the courtesy.

THE COURT: And, Mr. McLaughlin, you said the City does not take a position on this motion, but wants guardrails if it's granted?

MR. MCLAUGHLIN: That's correct, Your Honor. We just had some questions about whether certain medical records will be contemplated, because based on my review of the discovery, it seems there were some outstanding medical records that would have required a court order to obtain from a California therapy practice.

I'm not sure if plaintiff has obtained those or if they intend to rely on those. So that's really the only thing that we would want to discuss on this, whether this is granted. Thanks, Your Honor.

THE COURT: All right, thank you. So, Mr. Till, I'll hear what you wanted to argue.

MR. TILL: Very briefly, Judge Kuo.

I agree with Mr. McLaughlin on the guardrails. The prejudice that we have is that there are no medical records that we've been provided in discovery prior to Mr. Christiana coming on board as counsel.

That makes the application, in my view, an application that is so broad and so far afield that we don't have any idea of what the expert is going to go ahead and address.

Right now what has been articulated to the court is that the expert is going to possibly talk about the effects, generally speaking. Well, there's no specificity with regard to Ms. Reid, and there's been no expert report proffer presented. We're really without information.

A broad announcement of what is a terrible thing does not meet the standard of overcoming the prejudice. It becomes guesswork.

I understand Mr. McLaughlin's proposal about guardrails, but I'm not sure we know enough -- we know enough about what is going to be presented by the plaintiff.

So in an effort to exercise every economy with every attention to fairness, I believe the plaintiff has not gone ahead and given us sufficient detail.

Your Honor, among the plaintiff's records that they've produced, there was a report of Jewish Family Service of Central New Jersey. And it says specifically they were -- and this is back in 2020, that the plaintiff was processing trauma caused by the relationship with a police officer whom she felt betrayed by.

And, Judge, this isn't a terribly helpful thing for

me, but I want to be always intellectually honest. And these depression symptoms are interfering with her ability to function normally.

Now if the expert is going to undertake that inquiry, then I would argue to the court, I'm okay with that focus because that has been stated, happened in 2020, but it doesn't state any of the things that this expert has been proposed.

Just so that the court has a complete idea of what I'm talking about at page 89 of the plaintiff's deposition, she says, the basis of the diagnosis that I have is what Detective Howard did. And the question from counsel was only Mr. Power objects to the form.

And she says, yes, none of the other traumas that you testified about today have anything to do with that diagnosis. And she says no, because it was a long, long, long time ago, and I worked through those issues.

So if I follow the proposal of Mr. McLaughlin, then I suggest that this expert be limited to addressing the here and now, which is the subject of this lawsuit.

And unless this expert is going to go into the history, which will now trigger my having to engage an expert as well to counter that expert, that all is complicated, Judge. And I think that's really the prejudice. I am fully aware that we give plaintiffs every opportunity, and that's

what the justice system is about.

But this is, I would suggest, and I'm not saying anything about Mr. Christiana, he's a fine lawyer, but this is a bit of an ambush.

And I think the broad statement by the expert has to be narrowed in order for there to be a fair and balanced approach to this litigation. Right now it's far, far too broad. Is she's going to talk about the abuse of women historically, I don't know, Judge. I really don't know the answer from Mr. Christiana's descriptions and those-- that is the end of my remarks, Judge.

THE COURT: All right. Thank you, Mr. Till.

So I'm just looking at what was filed in the motion, and on page one it talks about expert discovery and specifically about plaintiff's post assault conduct, including, and I just quote, continued interactions with defendant Howard, delayed reporting and constrained responses.

And so the next sentence, or just below it talks about how the expert would give an explanation of, quote, how sexual assault trauma manifests when the perpetrator holds institutional authority over the victim.

So that, to me, is my understanding of what this expert would be talking about, which is to address some of the issues that were brought up by defendants about why did

the plaintiff continue to interact with Mr. Howard?

Why did she interact in a way that -- why would she continue to interact with him if, in fact, he did these horrible things?

And so it seems that that is the limited area that the proposed expert would be talking about.

Mr. Christiana, am I correct in that, or is there more that you're seeking to bring in through Dr. Medlin or some other expert?

MR. CHRISTIANA: Yeah. Hi, Judge. This is Matt Christiana. Yes, that's correct. And I'll just note that one, I'm not entirely sure what Mr. Till is referring to when he says that no medical records have been disclosed. Medical records were disclosed, and he included them in his motion for summary judgment.

So just to that point, and to ease any concerns of any defense counsel, we're not -- whatever we would provide the expert with is documentation that has been disclosed.

So it would still -- there wouldn't be any new document productions or new reports or anything like that. It would be a reliance upon all the documents that have been disclosed, as well as an interview with our client that would necessarily need to occur.

But -- so I just wanted to point that out and then also just reiterate that that is correct, Your Honor. That

what we're looking for essentially is -- and this is, as you pointed out, it's read, I think, within the defendant's motions for summary judgment, there's a sense of, you know, questioning how -- and I'm not saying this, that this is read explicitly, but I think that this could be interpreted from a jury as, you know, quote, unquote, how would a victim really act? You know, why would a victim do this if she sustained this trauma?

And that's precisely the type of scientific expert opinion that we're proposing that it's important for a jury to hear so that any decision by a jury can be based upon a scientific understanding of how trauma manifests, as opposed to just misconceptions of, you know, how somebody would act in a situation where they're experiencing trauma, especially when there's a significant power dynamic like -- that is at play here.

THE COURT: And so the stated area of expertise, Mr. Christiana, would be what? Just state it plainly.

MR. CHRISTIANA: It would be an expert on victim response and sexual assault trauma. I think that would be the cleanest way to place it.

THE COURT: Okay. All right. Mr. Till, does that help narrow the area?

MR. TILL: That does. Yes, it does.

THE COURT: Yeah.

MR. TILL: We understand. We understand.

THE COURT: Okay, great. And then, Mr. McLaughlin, did you want to add anything or ask anything?

MR. MCLAUGHLIN: Yes, Your Honor. The only thing that I would add from the City's perspective is, you know, there was this dispute over these records from North Coastal Mental Health Center, and that was in 2022.

Ad we had received what was, at least from our perspective, a validly executed HIPAA release, and we had sent it to the provider.

And potentially, because it's a California provider and they do have sort of a stricter privacy regime there than the federal regime, they had refused to produce those records without a court order.

And I can't say absolutely with any sort of certainty what was going through counsel's minds at the time, because we had. I was not in this case from the defense perspective -- I know Mr. Christiana was not on this case from the plaintiff's side yet either, but we had flagged that in the first half of 2022.

And then the idea was to draft a proposed order and get it signed to obtain those records. Now, I think there is some -- and I'm happy to hear the scope of the testimony clarified, because that was to some extent, how I read the application. But it's nice to have that confirmed, and it

does help me.

The only thing I think still is that it seemed there was no ever -- counsel never had an agreement over the language of that proposed order.

And it seems that as we were approaching the end of discovery at the time, that was sort of glossed over, perhaps from our perspective on the theory that we wouldn't necessarily need those because there wasn't a medical expert that plaintiff had made any attempt to introduce.

I think going back had we been on notice that there would be an expert to testify on these medical trauma issues, I think we would have certainly written that order, even if we had to draft it ourselves and write it -- not as a joint proposed order, because we would have wanted those records, which I believe predate the incident.

So the only thing outstanding from our perspective is if we're going to have an expert testify based on, I think, only records that post-date the incident, we would want to go back and get the complete medical records, including those therapy records that predate the incident.

THE COURT: All right. Thank you, Mr. McLaughlin. So what I'm hearing you say is that there might be a loose end in terms of the medical records that the City defendant has been able to obtain. And so if you would also like to have that completed --

MR. MCLAUGHLIN: Yes, and you know, I'd be happy to peg the deadline for plaintiff's expert to be in receipt of those, if plaintiff's expert wants to review those. But I think if we're having experts, we'd like a complete record.

THE COURT: Okay, thank you.

So let me just go back to you, Mr. Christiana.

Can you go back into your records and make sure that whatever you're giving to the expert, that the defendants also have access to that, because it sounds like they may not have obtained --been able to obtain everything, and if there are things that still need to be done for them to get that information directly from the provider, perhaps in addition to your providing it, then you should work that out. Can you do that?

MR. CHRISTIANA: Yes, Your Honor. And if I may just ask a clarifying question I -- one, of course, everything that we have -- nothing that we have that hasn't been disclosed will be provided, and we'll work with defense to get any records that they were unable to obtain. And I don't know why these records weren't disclosed.

One question that I have though is, and maybe I'm misunderstanding, my understanding is that the records in question that Mr. McLaughlin is referring to is from a California provider.

I believe it's -- I don't have the name in front of

me, but I don't believe those predate the incident. I believe these post-date the incident.

So I'm not exactly entirely sure what records predate the incident that the City -- I don't know of any that exists. I'm not entirely sure if there was therapy that predates the incident. So it's unclear to me, I guess, what records the City is referring to at this point.

MR. MCLAUGHLIN: Your Honor, John McLaughlin for the City. It's possible I'm mistaken on the timeline. My understanding was they predated the incident. I haven't seen them, so I'm not certain.

My understanding, just from sort of piecing it together through correspondence, was that they predated it, but I could be mistaken on that. You may be right.

THE COURT: All right. So just clarify that, because dates are pretty clear. And so take a look at the treatment records, and if there is any question, just make sure everything is complete. Okay? All right, great. Thank you, everybody.

So I think based on consideration of the six factors in terms of whether a trial is imminent, it is not because there's still the summary judgment motion that I need to look at with regard to the City's claims that have been reinstated for now, and the likelihood of relevant evidence being developed through the expert testimony, as well as the

diligence and foreseeability of this issue.

I think the issue was lurking there, but it really came to the forefront in the arguments that were presented during the summary judgment motion, and then any prejudice to the defendants -- I think there is some, but I saw that plaintiff is offering to share in the cost of depositions, and then also the timing of it is not overly onerous, and the scope of the expertise is fairly limited.

I think, on balance, I will grant the motion to reopen discovery for the purpose of developing this expert testimony and report in conjunction with that, as we discussed, make sure that all the medical records and other records that are relevant to this expert's analysis are produced in exchange to both defendants.

And then you should also work diligently to get the report done, because if the defendants want to have their own expert to respond to this proposed expert, Dr. Medlin, they will need to have time to do that as well.

So, Ms. Christiana, are these dates that you proposed, you said that these are the ones that Dr. Medlin has indicated to you are necessary for her.

MR. CHRISTIANA: Yes, Your Honor. These dates work for us. I will do everything in my power to, starting today, to obtain any missing records. I'll speak with the defense after this. I don't think that should interrupt it, because

I don't believe they're that long. So all that to say that, yes, I believe this is ideal. Thank you.

THE COURT: Okay, great. So I'll adopt those deadlines. And the defendants, once you see the report, if you decide you want to have your own expert to rebut this expert, please speak with Mr. Christiana so that you can set up a timeframe for that to happen. You're not obligated to have an expert as well, but if you -- you have the right to certainly.

And then you'll be given an opportunity to engage your own expert if you want, but it's not required, all right? But if you do, please agree on some dates so that the court can take a look at the proposed deadlines and see if that makes sense. All right? And then -- yes, go ahead.

MR. TILL: Judge, Peter Till for the defendant. We understand all that. We appreciate the consideration. We will look at all the documents, and we will cooperate with Mr. Christiana trying to get this done.

THE COURT: Okay, wonderful. Thank you. I'm just looking to see what -- I saw the dates and I'm looking for them. Mr. Christiana, what are the dates that you had proposed?

MR. CHRISTIANA: It is on -- I'll point it out.

THE COURT: Oh, I see. It's on page six. Yes, it's on page six.

MR. CHRISTIANA: Okay. Yes.

THE COURT: All right. Great. So then it will be -- you'll retain the expert within five days of today. Today is February 6th. Five days is next week. By February 11th.

MR. CHRISTIANA: Yeah. Okay. And then within 45 days of today, that will be five weeks. No, sorry. 45 by seven -- about six weeks or so. A month and a half.

MR. CHRISTIANA: Yes. It looks like Monday, March 23rd, is the calculation I get.

THE COURT: Okay. And then 60 days is a little bit easier to calculate -- -will be April 7th and then 90 days. The expert deposition will be 30 days thereafter. So May 7th. Okay. So those are the deadlines.

And that hopefully that will sync up with the decision that I'll be run during the summer judgment motion. And then if there's going to be a rebuttal expert, the parties will inform the court of any further deadlines for that. Otherwise, then we'll be moving forward from that point to set a trial date. All right, very good.

Mr. Christiana, is there anything further from you?

MR. CHRISTIANA: No, Your Honor. Thank you.

THE COURT: Mr. McLaughlin, anything from you?

MR. MCLAUGHLIN: Nothing further, Your Honor. Thank you.

THE COURT: And Mr. Till?

MR. TILL: Nothing further, Your Honor. Thank you.

THE COURT: All right. Thank you, everybody. Have a great weekend.

MR. CHRISTIANA: Thank you.

(Proceedings concluded at 11:29 a.m.)

I, CHRISTINE FIORE, court-approved transcriber and certified electronic reporter and transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

February 15, 2026

Christine Fiore, CERT