**LAW OFFICES OF PETER W. TILL**
Peter W. Till, Esq. U.S.D.C. NJ Attorney ID No.: 33439
105 Morris Avenue, Suite 201
Springfield, New Jersey 07081
Tel: (973) 258-0064
Fax: (973) 258-0478
pwt@till-law.com
*Attorneys for Defendant,*
  *Gregory Howard*

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TAKISHA REID, | : | Civil Action No. Docket No. 20-CV-3926 (PK) |
| Plaintiff, | : | |
| -against- | : | |
| THE CITY OF NEW YORK POLICE DEPT., THE CITY OF NEW YORK, NYPD OFFICER GREGORY HOWARD, JOHN AND JANE DOES 1-5, | : | **CERTIFICATION OF COUNSEL IN OPPOSITION TO PLAINTIFF'S LETTER MOTION TO STRIKE** |
| Defendants. | : | |

**PETER W. TILL**, hereby certifies as follows:

1.  I am an attorney-at-law of the State of New Jersey, and counsel for the Defendant, Gregory Howard ("Defendant Howard"). As such, I am fully familiar with this matter and the facts and circumstances stated herein.

2. This Certification is now entered into and submitted on behalf of Defendant Howard in opposition to Plaintiff's letter motion (ECF #136) to strike Exhibits E, F and G (ECF #s 135-3, 135-4 and 135-5).

3. In the exercise of every economy, the Defendant Howard joins in the Defendant City's presentation and specifically Defendant Mr. Howard had only one isolated professional undertaking with a CI, which commenced in October 2017. (*See* Howard Deposition, Oct. 26, 2022, p.16, l.19-23; p.17, l.4-11; p.19, l.21-p.20, l.1; p.20, l.7-13; p.20, l.23-p.22, l.6; p. 22, l. 11–p.23, l.18; p.24, l. 4 – p.25, l. 5; p.25, l.9-11) annexed hereto as Exhibit "A".

4. It is crystal clear that the now attempted reporting and characterization of the alleged subject circumstances by the Plaintiff's counsel, does not exist in fact or by inference and certainly there was no discipline imposed as to Defendant Howard, with said allegations found to be utterly empty.

**I CERTIFY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE. I AM AWARE THAT IF ANY OF THE FOREGOING STATEMENTS MADE BY ME ARE WILLFULLY FALSE, I AM SUBJECT TO PUNISHMENT.**

        **LAW OFFICES OF PETER W. TILL**
        *Attorneys for Defendant,*
        *Gregory Howard*

        By: */s/Peter W. Till*
            Peter W. Till

Dated: March 2, 2026

# EXHIBIT A

```
 1    A.  The 120th.
 2    Q.  120th.  So when you got promoted from -- when you got
 3        promoted to a third grade detective, did you undergo
 4        any sort of training when it comes to confidential
 5        informants?
 6    A.  No.
 7    Q.  So you testified that October 17th is when you started
 8        first -- you know what I mean by a CI; right?
 9    A.  Yes.
10    Q.  Okay.  So I'm just going to use the word CI, just so --
11        so October 17th is the first time you started dealing
12        with a CI?
13    A.  Yes.
14    Q.  And your testimony is that you received no training
15        prior to that?
16    A.  No, we have a patrol guide.
17    Q.  And did you read the patrol guide?
18    A.  At that time, no.
19    Q.  So what was your first encounter with the CI in October
20        2017?
21    A.  With Ms. Reid?
22    Q.  Well, was Ms. Reid your first CI?
23    A.  First and only.
```

```
 1    Q. I apologize.  I was ripping a paper off, so I didn't --
 2       was Ms. Reid your first CI?
 3    A. Yes, sir.
 4    Q. Okay.  And how many other CIs did you have -- by the
 5       way, withdraw that.
 6          As a detective specialist, are you allowed to have a
 7       CI now?
 8    A. I can.
 9    Q. When was the last time you had one as a detective
10       specialist?
11    A. I haven't.
12    Q. Have you asked for it?
13    A. No.
14    Q. Any reason why?
15    A. At my job at this moment, I'm not in a position to have
16       confidential informants.
17    Q. So it's a decision that's made by people higher than
18       you that you don't have any contact with CI -- CIs?
19    A. That's never been stated.
20    Q. But you just told me that in your position now you're
21       not supposed to have any contact with CI, what made you
22       come to an understanding that that's the case?
23          MR. TILL:  Objection as to form.  Go ahead and
```

```
 1   Q.  Why?
 2   A.  Overtime.
 3   Q.  So as a detective specialist, you don't get as much
 4       overtime as you would have if you were in the detective
 5       squad?
 6   A.  No, I don't because I'm on patrol.
 7   Q.  So approximately in 2019, how much of overtime were you
 8       getting in the detective squad?
 9   A.  In 2019?
10   Q.  Yes.
11   A.  Give or take, 30, 40 hours a month.
12   Q.  And on patrol, how many hours of overtime are you
13       getting?
14   A.  None.
15   Q.  Is there a document in front of you, Detective
16       Howard?
17           MR. TILL:  No, just papers on the table.  They're my
18       notes.
19
20   BY MR. PAWAR:
21   Q.  So from 2017 to 2020 approximately, when you were on
22       the detective squad, besides Ms. Reid, how many other
23       CIs did you have?
```

```
 1    A. One.
 2    Q. And what was that person's name?
 3       MR. TILL: Objection. I'm directing him not to
 4    answer that.
 5
 6    BY MR. PAWAR:
 7    Q. So besides Ms. Reid, there was another individual who
 8    worked as a CI for you?
 9    A. She didn't work. I was told to make her a CI and then
10    when she was a CI, I was told to deactivate her.
11    Q. Okay. We're not talking about Ms. Reid, you're talking
12    about somebody else; right?
13    A. Someone else.
14    Q. Okay.
15       MR. PAWAR: We'll mark that for -- Peter, we'll mark
16    this for a ruling, for a ruling from the judge
17    regarding the CI's name.
18       MR. FRANK: I'd just like to note my objection to
19    the record as well on the law enforcement privilege and
20    we'll mark it for a ruling.
21
22    BY MR. PAWAR:
23    Q. Detective Howard, this other CI you stated, I take it
```

1    it's a female?
2  A. Yes.
3  Q. Okay. And when did you first engage with her?
4  A. I've known this person for years.
5  Q. When you say years, can you tell us approximately how
6     many?
7  A. 15 plus.
8  Q. And you were told to approach her to be a CI, she
9     became a CI and then you had to deactivate her?
10 A. I wasn't told to approach her. There was an IAB
11    investigation with her involved.
12 Q. Okay. And whose idea was it for this individual to
13    be -- become a CI?
14 A. Internal affairs.
15 Q. And they request that you approach her because you've
16    known her for such a long time?
17 A. Because she gave pertinent information about cases.
18 Q. No, no, I understand that. How did you approach this
19    individual, did you give her a phone call, did you
20    approach her in person and say hey, do you want to work
21    with us as a CI, how did that come about?
22 A. Phone call.
23 Q. And did she agree to be a CI?

1  A. Yes.
2  Q. And for approximately how long was she working as a CI
3     for you?
4  A. She never worked. She was signed up approximately a
5     month and then internal affairs said to deactivate
6     her.
7  Q. Okay. So when you said that she had given pertinent
8     information about cases, was that the information she'd
9     given to you within that one month period?
10 A. Yes, and before.
11 Q. Before she became a CI?
12 A. Yes.
13 Q. What type of information would she give you?
14 A. People that were involved in shootings, gang members.
15 Q. And why was she doing this?
16 A. She was a friend.
17 Q. And did she get compensated in any way?
18 A. No.
19 Q. How long has she been a friend of yours?
20 A. 15 years plus. I went to school with her family.
21 Q. And she lives in Staten Island?
22 A. Yes.
23 Q. When was the last time you spoke with her?

1   A. 2018.

2   Q. All right.  Besides this -- so she gave you information
3      prior to her being a CI for a month; correct?

4   A. Yes.

5   Q. And she gave you information about a shooting, gang
6      members, firearm because she wanted to give it to you
7      because you were her friend?

8   A. Yes, and she just wanted to be a good citizen.

9   Q. And did she get anything in return?

10  A. No.

11  Q. Did you have any -- did the department have any
12     problems with her?

13  A. They told me to deactivate her because she had been
14     arrested before.

15  Q. And did you know that?

16  A. One time for domestic.

17  Q. No, but you knew that she had been arrested before?

18  A. Only one time for the domestic incident, that's it.

19  Q. Right.  My question is, before she became a CI for a
20     month, you knew that she was arrested for domestic
21     violence or domestic incident?

22  A. Yes.

23  Q. And did you do any investigation before you signed her

```
 1        up for a month as a CI?
 2              MR. TILL:  Objection as to form.  Go ahead and
 3        answer the question.
 4              THE WITNESS:  Investigation on her?
 5
 6     BY MR. PAWAR:
 7     Q. Yes.
 8     A. No, because internal affairs told me to sign her up.
 9     Q. And at what point did somebody realize that she had a
10        prior arrest?
11     A. I knew she had a prior arrest.  When I called internal
12        affairs back to let them know that I had done what they
13        had told me to do so, they had called me back and
14        stated to deactivate her because of conflict.
15     Q. What conflict was that?
16              MR. TILL:  Objection as to form.  Go ahead and
17        answer the question.
18              THE WITNESS:  I do not know, you'd have to ask
19        IAB.
20
21     BY MR. PAWAR:
22     Q. Who from IAB called you?
23     A. Lieutenant Parisi.
```

1  Q. Can you spell that last name, please?
2  A. P-a-r-i-s-i, and Sergeant Fong, F-o-n-g.
3  Q. So these two individuals from IAB told you to
4     deactivate this new lady who was the CI?
5  A. Yes.
6  Q. And it's because of an arrest that they became aware of
7     or you don't know?
8  A. I do not know what the reason is.
9  Q. Do you know if this CI made any complaint against
10    you?
11 A. That I know of, no.
12 Q. What is your relationship with Lieutenant Bannon?
13 A. My relationship with Lieutenant Bannon?
14 Q. Yes.
15 A. He was my supervisor.
16 Q. From what years?
17 A. He was my detective supervisor and my special
18    operations supervisor. So probably about 7 years he
19    was my supervisor.
20 Q. While you were -- he was supervisor when you were a
21    police officer?
22 A. Yes.
23 Q. And when did he stop supervising you?